JOHN W. BERRY (Cal. Bar No. 295760)
Email: berryj@sec.gov
GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov
JACOB A. REGENSTREIF (Cal. Bar No. 234734)
E-mail: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
John W. Berry, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Southern Division**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

CHARLES C. LIU;
XIN WANG a/k/a LISA WANG;
PACIFIC PROTON THERAPY REGIONAL CENTER, LLC;
PACIFIC PROTON EB-5 FUND, LLC;
and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,

Defendants.

Case No. SACV16-00974-CJC (AGRx)

**DECLARATION OF GARY Y. LEUNG IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS LIU AND WANG**

I, Gary Y. Leung, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney admitted to practice law by the State Bar of California and by this Court. I am a Senior Trial Counsel with Plaintiff Securities and Exchange Commission's ("SEC") Los Angeles Regional Office. I have personal knowledge of the matters set forth below, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2. I submit this declaration in support of the SEC's motion for summary judgment against defendants Charles C. Liu and Xin (Lisa) Wang.

3. A true and accurate copy of the SEC's First Set of Requests for Admission to Defendant Liu is attached hereto as Exhibit 1.

4. A true and accurate copy of the SEC's First Set of Requests for Admission to Defendant Wang is attached hereto as Exhibit 2.

5. A true and accurate copy of the SEC's February 4, 2016 investigative subpoena to defendant Charles C. Liu is attached hereto as Exhibit 3.

6. A true and accurate copy of transcript excerpts from the November 10, 2016 deposition of defendant Charles C. Liu is attached hereto as Exhibit 4.

7. A true and accurate copy of transcript excerpts from the November 9, 2016 deposition of defendant Xin (Lisa) Wang is attached hereto as Exhibit 5.

8. A true and accurate copy of the SEC's First Set of Interrogatories to Defendant Liu is attached hereto as Exhibit 6.

9. A true and accurate copy of the SEC's First Set of Interrogatories to Defendant Wang is attached hereto as Exhibit 7.

10. I calculated the prejudgment interest owed on the disgorgement amount the SEC recommends in its motion – the $26,733,018.81 in ill-gotten gains received by defendants Liu and Wang ($26,967,918 in gross offering proceeds less the $234,899.19 remaining in the corporate defendants' bank accounts). I calculated that interest on a quarterly basis over the period from April 30, 2016 to June 1, 2016. As of April 30, 2016, defendants had raised at least $26,967,918 in investor proceeds.

June 1, 2016 is the date that the SEC brought this civil injunctive action. The interest rate I used is the same rate used by the Internal Revenue Service to calculate underpayment penalties, and is defined as the federal short term rate (also known as the "period rate") plus three percentage points (also known as the "annual rate"). See 26 U.S.C. § 6621(a)(2). When calculating the prejudgment interest, I ignored any partial months at the beginning and the end of the period.

11. I determined that the prejudgment interest on the recommended disgorgement amount of $$26,733,018.81 is $89,110.06. In making this calculation, I utilized a computer program maintained by the SEC to calculate prejudgment interest in SEC enforcement actions.

12. Therefore, the total of amounts of disgorgement and prejudgment interest that the SEC is recommending the Court to order the defendant to pay is $26,822,128.87. A true and correct copy of the Report of Prejudgment Interest generated by the SEC prejudgment interest calculator reflecting this information is attached as Exhibit 8.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of January, 2017 in Los Angeles, California.

*/s/ Gary Y. Leung*
GARY Y. LEUNG

# Exhibit 1

JOHN W. BERRY (Cal. Bar No. 295760)
Email: berryj@sec.gov
GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov
JACOB A. REGENSTREIF (Cal. Bar No. 234734)
E-mail: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Southern Division**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,<br><br>Defendants. | Case No. SACV16-00974-CJC (AGRx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT CHARLES C. LIU** |

PROPOUNDING PARTY: SECURITIES AND EXCHANGE COMMISSION

RESPONDING PARTY: CHARLES C. LIU

SET NO.: ONE (Nos. 1-47)

In accordance with Rule 36 of the Federal Rules of Civil Procedure, the Securities and Exchange Commission ("SEC") hereby requests that defendant

Charles C. Liu respond to the following requests for admission within 30 days of the date of service hereof.

# I. <u>INSTRUCTIONS & DEFINITIONS</u>

## A. Definitions

1. The term "SEC" means the U.S. Securities and Exchange Commission.

2. The term "document(s)" is synonymous in meaning and equal in scope to the usage of the term "documents" in Rule 34(a) of the Federal Rules of Civil Procedure and the term "writings and recordings" in Rule 1001(l) of the Federal Rules of Evidence, and shall include any drafts, originals, and non-identical copies of any kind, written, typewritten, printed, recorded, computer-generated or graphic material, however produced, reproduced or compiled, including, but not limited to, any correspondence, memoranda, letters, notes, instructions, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, invoices, articles, diaries, minutes, calendars, analyses, projections, transcripts, declarations, witness statements, interview reports, summaries, notes of personal or telephonic conversations, e-mail, summaries or notes of any meetings or conferences, and all electronically stored information including electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "communication(s)" means any written, oral, telephonic or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two and/or more persons, including, but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, e-mail, consultations, negotiations, agreements, understandings, meetings, letters, notations, telegrams, advertisements, declarations, transcripts, interviews, interview reports, blogs, chat room or other Internet postings, and all other documents. A draft or non-identical copy is a separate communication within the meaning of this term.

4. The term "identify" means to describe with particularity, in full detail,

all relevant facts about the subject matter, including, but not limited to, names, dates, relationships, functions, addresses, purposes, objectives, results and other information which could lead to the discovery of admissible evidence.

5. The term "identify" when used with respect to a document or communication means to identify the document or communication by exhibit number or bates number(s) if previously produced in this action or the SEC's non-public investigation that preceded this action; or if the document or communication has not been previously produced in this action or the SEC's prior investigation, to set forth the following information: (a) the nature or type of document or communication (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) the date the document or communication was made: (c) the author(s) of the document or communication; (d) each person who received a copy of the document or communication or was informed of its contents; (e) the person who now has the document or communication or was last known to have it; and (f) the general subject matter and, if applicable, the title of the document or communication.

6. The term "concerning" shall mean discussing, reflecting, evidencing, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, describing, supporting, contradicting, contravening, touching upon or summarizing.

7. The term "person(s)" means any natural individual(s) and/or natural person(s), in any capacity whatsoever, or any entity or organization including divisions, subsidiaries, departments, and other units thereof, and shall include, but not be limited to, a public or private corporation(s), partnership(s), professional corporation(s), limited liability company(ies), business trust(s), banking institution(s), firm(s), joint venture(s), voluntary or unincorporated association(s), organizations(s), proprietorship(s), trust(s), estate(s), governmental agency(ies), commission(s), bureau(s) and/or department(s), and/or any other legal entity.

8. The terms "you" and "your" mean defendant Charles C. Liu, and all persons, agents, attorneys, representatives or other persons or entities acting or

purporting to act on his behalf, including, but not limited to, your spouse or Lance Gong, Richard Zheng and Stan Lam at Marcum, LLP.

9. The term "your spouse" means defendant Xin (Lisa) Wang, and all persons, agents, attorneys, representatives or other persons or entities acting or purporting to act on her behalf.

10. The term "your children" means any of your children, including, but not limited to, [redacted].

11. The term "Beverly Proton" means defendant Beverly Proton Center, LLC f/k/a Los Angeles County Proton Therapy, LLC.

12. The term "Pacific Proton" means defendant Pacific Proton Therapy Regional Center, LLC.

13. The term "PPEB5 Fund" means Pacific Proton EB-5 Fund, LLC.

14. The term "Overseas Chinese" means Overseas Chinese Immigration Consulting Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

15. The term "UDG Entities" means United Damei Group, United Damei Investment Company, Ltd., Beijing Pacific Damei Consulting Co. Ltd., and/or United Damei US, and any and all of their U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on their behalf.

16. The term "Delsk" means Hong Kong Delsk Business Co., Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

17. The term "Identified Entities" means the following:

a. Pacific Proton Therapy Regional Center LLC;

b. Pacific Proton EB-5 Fund LLC;

c. Beverly Proton Center LLC;

d. Los Angeles County Proton Therapy, LLC;

e. Overseas Chinese Immigration Consulting Ltd.;

f. United Damei Group;

g. United Damei Investment Company, Ltd.;

h. Beijing Pacific Damei Consulting Co. Ltd.;

i. United Damei US;

j. United MPH Ventures LLC;

k. MP Medical Hotel Inc.;

l. SP MPH Fund LP;

m. SC MPH Management LLC;

n. Pacific Medical Regional Center LLC;

o. Beverly MP Hotel, Inc.;

p. Beverly Medical Hotel;

q. COH Beverly Cancer Center;

r. Root Medical Peace Corp (U.S.A.);

s. Southern California Medical/Proton/Hotel Center, LLC CLCC International Inc.;

t. USREDA Law, Inc.;

u. Root International Peace Corps;

v. Beverly International Cancer Center, LLC; and/or

w. JC Oriental Pearl, Inc.

18. The term "Pacific Proton offering memorandum" means the "Private Offering Memoranda" attached as Exhibit 5 to the Declaration of Jacob A. Regenstreif in Support of Plaintiff Securities and Exchange Commission's *Ex Parte* Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents (dated May 26, 2016 and Dkt. No. 7 in this action), and attached as

Exhibit 15 hereto.

19. The term "Pacific Proton offering" means the offering of membership units in PPEB5 Fund, as described in the Pacific Proton offering memorandum.

20. The term "Pacific Proton offering proceeds" means the total amount of money raised from or delivered by investors who subscribed to the Pacific Proton offering or who otherwise delivered money in response to that offering.

21. The term "account" shall mean all financial accounts of every nature (including, but not limited, to checking, savings, trust, money market, brokerage, investment, securities and other financial accounts).

22. The term "control" (including the terms "controlling" or "controlled by") means possessing, directly or indirectly, the power to direct or cause the direction of, or the power over the decision-making concerning the management, operation and policies of the entity in question, whether through the ownership of voting securities, by contract or otherwise.

**B. Instructions**

1. In responding to these requests for admission, you are required to obtain all responsive information that is available to you and to any of your representatives, agents, employees or attorneys, and to obtain all such responsive information that is in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees or attorneys.

2. These requests for admission are continuing in nature and you are required to promptly supplement or amend your responses to the requests for admission if, after the time of your initial responses, you learn that any response is or has become, in some material respect, incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e).

3. If you object to a request for admission, and that objection pertains to only a part of the request for admission, or word, phrase or clause in it, then you are

required to state your objection to that portion only and to respond to the remainder of the request for admission, using your best efforts to do so. No part of an request for admission shall be left unanswered merely because you interpose an objection to another part of a request for admission.

4. For requests for admission regarding the authenticity or accuracy of a copy of a document or communication, each document or communication identified and described in the particular request for admissions consists of one or more individual pages. Should you deny any request, state with specificity whether your denial is to the entire document or communication, or solely to certain pages, sections or other aspects (such as markings or annotations) contained within the document or communication. Also, if your denial is only with respect to certain pages, sections, or other aspects (such as markings or annotations) contained within the document or communication, specify, by bates number and by description of the page, sections or other aspects as appropriate, those specific pages, sections or other aspects that you refuse to admit are authentic and/or and true and correct copies of "records of a regularly conducted activity" or "business records" within the meaning of Rule 803(6) of the Federal Rules of Evidence.

5. If you withhold any information, or documents or communications asked to be identified, which is responsive to a request for admission, based on a claim of privilege or any other reason, then provide the following information concerning the withheld information, document or communication: (a) the nature or type of information that is being withheld (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) a general description of the subject matter of the information that is being withheld; (c) the date the responsive information was made; (d) the name, address, and telephone number and occupation of each person who (i) made or authored the information or (ii) received (or was intended to receive) the information, or was otherwise informed about the information; and (e) a statement of the privilege or other reason claimed to withhold the information or otherwise object to the request

for admission.

6. If you identify any document(s) or communication(s) in your responses to these requests for admission that no longer exist, cannot be located or are not in your possession, custody or control, then in your response, identify those document(s) or communication(s), as well as: (a) the author(s); (b) the date the responsive material was created; (c) each person who received a copy of the responsive material or was informed of its contents; (d) the person who now has the responsive material or was last known to have it; (e) the general subject matter and, if applicable, the title of the responsive material; (f) the type of such responsive material (*e.g.*, telephone communication, letter, e-mail or memorandum); (g) the size of the material (*e.g.*, number of pages); (h) a detailed description of the responsive material; and (i) a detailed and complete explanation of why such responsive material is no longer in your possession, custody, or control.

7. For each of the requests for admission below, in order to make the request inclusive rather than exclusive, the past tense shall be construed to include the present tense, and vice versa. Moreover, "and" and "or" as used herein are both conjunctive and disjunctive, and "any" includes the word "all" and vice versa.

8. No agreement by the SEC or its staff purporting to modify, limit, or otherwise vary these requests for admission is binding on the SEC or its staff unless confirmed or acknowledged in writing by the SEC or its staff.

## II. REQUESTS FOR ADMISSION

**Request for Admission No. 1:**

(a) Admit that from about 2010 to at least April 2016 you held at least a 75% membership interest in Pacific Proton.

(b) Admit that after April 2016 you held, and continue to hold, at least a 37.5% membership interest in Pacific Proton.

**Request for Admission No. 2:**

(a) Admit that from about 2010 to at least April 2016 you held a controlling

membership interest in Pacific Proton.

(b) Admit that from about 2010 to at least April 2016 you controlled Pacific Proton.

(c) Admit that after April 2016 you held, and continue to hold, a controlling membership interest in Pacific Proton.

(d) Admit that after April 2016 you controlled and continue to control Pacific Proton.

**Request for Admission No. 3:**

Admit that Pacific Proton is the manager of, has a controlling interest in, and controls PPEB5 Fund.

**Request for Admission No. 4:**

(a) Admit that from about 2010 to at least April 2016 you held at least a 75% membership interest in Beverly Proton.

(b) Admit that after April 2016 you held, and continue to hold, at least a 75% membership interest in Beverly Proton.

**Request for Admission No. 5:**

(a) Admit that from about 2010 to at least April 2016 you held a controlling membership interest in Beverly Proton.

(b) Admit that from about 2010 to at least April 2016 you controlled Beverly Proton.

(c) Admit that after April 2016 you held, and continue to hold, a controlling membership interest Beverly Proton.

(d) Admit that after April 2016 you controlled and continue to control Beverly Proton.

**Request for Admission No. 6:**

Admit that you held the title of president of Pacific Proton from about 2010 to at least April 2016.

**Request for Admission No. 7:**

Admit that defendant Xin (Lisa) Wang held the title of secretary of Pacific Proton from at least January 2016 to at least April 2016.

**Request for Admission No. 8:**

(a) Admit that you held the titles of president and treasurer of Beverly Proton from about 2010 to at least sometime in 2016.

(b) Admit that you were the managing member of Beverly Proton from in or about 2010 to at least sometime in 2016.

(c) Admit that you and defendant Xin (Lisa) Wang were the sole directors of Beverly Proton from at least January 2016 to at least April 2016 .

(d) Admit that defendant Xin (Lisa) Wang holds and/or held the title of Vice President of Marketing of Asia for Beverly Proton.

**Request for Admission No. 9:**

(a) Admit that defendant Xin (Lisa) Wang held the title of chairman for at least one of the UDG Entities.

(b) Admit that defendant Xin (Lisa) Wang currently holds the title of chairman for at least one of the UDG Entities.

(c) Admit that defendant Xin (Lisa) Wang held the title of chief executive officer for at least one of the UDG Entities.

(d) Admit that defendant Xin (Lisa) Wang currently holds the title of chief executive officer for at least one of the UDG Entities.

**Request for Admission No. 10:**

(a) Admit that from about 2010 to at least April 2016 you controlled at least one of the UDG Entities.

(b) Admit that from about 2010 to at least April 2016 defendant Xin (Lisa) Wang controlled at least one of the UDG Entities.

(c) Admit that from about 2010 to at least April 2016 Wenli Yao controlled at least one of the UDG Entities.

**Request for Admission No. 11:**

(a) Admit that Wenli Yao is your mother-in-law.

(b) Admit that Wenli Yao is the mother of defendant Xin (Lisa) Wang.

**Request for Admission No. 12:**

Admit that Exhibit 1 attached hereto is a genuine, true and correct copy of a list of investors in the PPEB5 Fund produced to the SEC by your counsel in the SEC's investigation.

**Request for Admission No. 13:**

(a) Admit that there were at least 58 investors who invested in the Pacific Proton offering.

(b) Admit that the total amount of Pacific Proton offering proceeds was at least $31,610,000.

**Request for Admission No. 14:**

(a) Admit that, in order to qualify for the federal EB-5 program, investors in the Pacific Proton offering had to invest capital, the capital had to be at risk, and the investment had to be made for the purpose of generating a return on the capital invested.

(b) Admit that investors in the Pacific Proton offering depended on the entrepreneurial or managerial skills of you or others involved in the Pacific Proton offering for returns to be generated on the investors' investments.

(c) Admit that investors in the Pacific Proton offering had an expectation of profits or returns on their investments and that these profits would depend on others, including yourself.

**Request for Admission No. 15:**

(a) Admit that the total amount of Pacific Proton offering proceeds during the period from October 2014 to April 2016 was at least $26,967,918.

(b) Admit that, of the total amount of Pacific Proton offering proceeds during the period from October 2014 to April 2016, at least $24,712,217 came in the form

of, or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that, of the total amount of Pacific Proton offering proceeds during the period from October 2014 to April 2016, at least $2,255,701 came in the form of, or were designated as or considered "Administrative Fees," as that term is defined and described in the Pacific Proton offering memorandum.

**Request for Admission No. 16**:

(a) Admit that you received Pacific Proton offering proceeds.

(b) Admit that you received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, you received at least $6,714,580 from the Pacific Proton offering proceeds.

(d) Admit that the $6,714,580 described above in subsection (c) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that during the period from February to March 2016, you received at least $4,270,000 from the Pacific Proton offering proceeds.

(f) Admit that the $4,270,000 described above in subsection (e) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**Request for Admission No. 17**:

(a) Admit that defendant Xin (Lisa) Wang received Pacific Proton offering proceeds.

(b) Admit that defendant Xin (Lisa) Wang received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered

"Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, defendant Xin (Lisa) Wang received at least $1,538,000 from the Pacific Proton offering proceeds.

(d) Admit that the $1,538,000 described above in subsection (c) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that during March 2016, defendant Xin (Lisa) Wang received at least $996,000 from the Pacific Proton offering proceeds.

(f) Admit that the $996,000 described above in subsection (e) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**Request for Admission No. 18:**

(a) Admit that Overseas Chinese received Pacific Proton offering proceeds.

(b) Admit that Overseas Chinese received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, Overseas Chinese received at least $7,722,000 from the Pacific Proton offering proceeds.

(d) Admit that the $7,722,000 described above in subsection (c) primarily, if not entirely, came from funds designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that Overseas Chinese was responsible for securing the investments of eleven investors who invested in the Pacific Proton offering.

**<u>Request for Admission No. 19</u>:**

(a) Admit that one or more of the UDG Entities Pacific Proton offering proceeds.

(b) Admit that one or more of the UDG Entities received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, one or more of the UDG Entities received at least $3,815,000 from the Pacific Proton offering proceeds.

(d) Admit that the $3,815,000 described above in subsection (c) primarily, if not entirely, came from funds designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that one or more of the UDG Entities was responsible for securing the investments of ten investors who invested in the Pacific Proton offering.

**<u>Request for Admission No. 20</u>:**

(a) Admit that Delsk received Pacific Proton offering proceeds.

(b) Admit that Delsk received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, Delsk received at least $1,387,500 from the Pacific Proton offering proceeds.

(d) Admit that the $1,387,500 described above in subsection (c) primarily, if not entirely, came from funds designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that Delsk was responsible for securing the investments of 37 investors who invested in the Pacific Proton offering.

**<u>Request for Admission No. 21</u>:**

(a) Admit that you transferred at least $3,250,000 from your personal bank account(s) to China Merchants Bank from February to April 2016.

(b) Admit that all of the $3,250,000 that you transferred to China Merchants Bank from February to April 2016 came from Pacific Proton offering proceeds that primarily, if not entirely, came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Request for Admission No. 22</u>:**

(a) Admit that at least $500,000 was transferred from the bank account(s) of the PPEB5 Fund to China Merchants Bank in October 2015.

(b) Admit that all of the $500,000 that was transferred from the PPEB5 Fund to China Merchants Bank in October 2015 came from Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Request for Admission No. 23</u>:**

(a) Admit that you transferred at least $118,605.11 from your personal bank account(s) to Bank of America, N.A. A/0959 A/C: Grenada Co-operative Bank Limited (hereinafter, "Grenada Bank") in March 2016.

(b) Admit that all of the $118,605.11 that you transferred to Grenada Bank in March 2016 came from Pacific Proton offering proceeds that primarily, if not entirely, came in the form of, or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Request for Admission No. 24</u>:**

Admit that the descriptions of the transactions in paragraph 48, sub-paragraphs (a) though (e) of the Supplemental Declaration of Lorraine Pearson in Support of Plaintiff Securities and Exchange Commission's Motion for Orders Requiring the

Repatriation of Assets and Accountings (dated June 3, 2016 and Dkt. No. 16 in this case), which is attached hereto as Exhibit 2, are accurate.

**Request for Admission No. 25:**

Admit that the Pacific Proton offering proceeds were not used or expended in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum.

**Request for Admission No. 26:**

Admit that you intended to have the Pacific Proton offering proceeds used or expended in a manner that was inconsistent with the terms and disclosures of the Pacific Proton offering memorandum.

**Request for Admission No. 27:**

(a) Admit that you intended not to disclose to investors that the Pacific Proton offering proceeds would be used expended in a manner that was inconsistent with the terms and disclosures of the Pacific Proton offering memorandum.

(b) Admit that you made false statements concerning the Pacific Proton offering and the use of proceeds from that offering to investors in the Pacific Proton.

(c) Admit that the descriptions of how the Pacific Proton offering proceeds would be used in the Pacific Proton offering memorandum were false.

(d) Admit that you knew or recklessly disregarded that the descriptions of how the Pacific Proton offering proceeds would be used in the Pacific Proton offering memorandum were false.

(e) Admit that you should have known that the descriptions of how the Pacific Proton offering proceeds would be used in the Pacific Proton offering memorandum were false.

(f) Admit that you knew or recklessly disregarded that false statements concerning the Pacific Proton offering and the use of proceeds from that offering were being made to investors in the Pacific Proton offering.

(g) Admit that you should have known that false statements concerning the

Pacific Proton offering and the use of proceeds from that offering were being made to investors in the Pacific Proton offering.

**<u>Request for Admission No. 28</u>:**

Admit that you are able to transfer or cause to be transferred the sum of $26,967,818.00 as called for by the "Repatriation Order" provision, section VIII, of the Amended and Restated Injunction dated and entered October 17, 2016 in this case, and attached as <u>Exhibit 3</u> hereto.

**<u>Request for Admission No. 29</u>:**

Admit that you are able to transfer or cause to be transferred at least $6,714,580 to the account of the Court-appointed Monitor.

**<u>Request for Admission No. 30</u>:**

Admit that defendant Xin (Lisa) Wang is able to transfer or cause to be transferred at least $1,538,000 to the account of the Court-appointed Monitor.

**<u>Request for Admission No. 31</u>:**

Admit that you can cause Overseas Chinese to repatriate the Pacific Proton offering proceeds that it received.

**<u>Request for Admission No. 32</u>:**

Admit that you can cause one or more of the UDG Entities to repatriate the Pacific Proton offering proceeds that any of them received.

**<u>Request for Admission No. 33:</u>**

(a) Admit that <u>Exhibit 4</u> attached hereto is a genuine, true and correct copy of an "Engagement Agreement" between United Damei Investment Company, Ltd. and Beverly Proton.

(b) Admit that Exhibit 4 attached hereto is a genuine, true and correct copy of a contract that is signed by Wenli Yao on behalf of United Damei Investment Company, Ltd. as "It's Director," with a date of August 15, 2013.

**<u>Request for Admission No. 34:</u>**

(a) Admit that <u>Exhibit 5</u> attached hereto is a genuine, true and correct copy of a

page from the website of one or more of the UDG Entities from May 2016.

(b) Admit that Exhibit 5 attached hereto contains a photograph of defendant Xin (Lisa) Wang in the middle of the page marked "Exhibit 32, Page 631," directly under the heading "Management Team."

**<u>Request for Admission No. 35:</u>**

(a) Admit that <u>Exhibit 6</u> attached hereto is a genuine, true and correct copy of a pages from the website of one or more of the UDG Entities from May 2016.

(b) Admit that Exhibit 6 attached hereto contains a photograph of you and defendant Xin (Lisa) Wang on the bottom half of the page marked "Exhibit 33, Page 640."

(c) Admit that Exhibit 6 attached hereto contains two photographs of defendant Xin (Lisa) Wang on the page marked "Exhibit 33, Page 641."

**<u>Request for Admission No. 36:</u>**

(a) Admit that <u>Exhibit 7</u> attached hereto is a genuine, true and correct copy of pages from the website of one or more of the UDG Entities from May 2016.

(b) Admit that Exhibit 7 attached hereto contains a photograph of you and defendant Xin (Lisa) Wang on the page marked "Exhibit 35, Page 661."

(c) Admit that the caption under the photograph on the page marked "Exhibit 35, Page 661" of Exhibit 7 attached hereto accurately identifies you in the photograph, accurately identifies defendant Xin (Lisa) Wang in the photograph, and accurately identifies defendant Xin (Lisa) Wang as "United Damei Group CEO."

**<u>Request for Admission No. 37:</u>**

(a) Admit that <u>Exhibit 8</u> attached hereto is a genuine, true and correct copy of a business card for defendant Xin (Lisa) Wang for United Damei Group.

(b) Admit that Exhibit 8 attached hereto accurately identifies the title of defendant Xin (Lisa) Wang as "Chairman" of United Damei Group.

**<u>Request for Admission No. 38:</u>**

(a) Admit that <u>Exhibit 9</u> attached hereto is a genuine, true and correct copy of

an email from you to Harlan Levine, dated March 21, 2016.

(b) Admit that in the email that is Exhibit 9 attached hereto, you accurately describe "UDG" as "my wife's company."

**Request for Admission No. 39:**

(a) Admit that Exhibit 10 attached hereto is a genuine, true and correct copy of pages from the website the Grenada Embassy – Commercial Attaché Office regarding a May 2015 event in Shanghai, China.

(b) Admit that defendant Xin (Lisa) Wang attended the May 2015 event described in Exhibit 10 attached hereto.

(c) Admit that Exhibit 10 attached hereto contains a photograph of defendant Xin (Lisa) Wang on the page marked "Exhibit 10, Page 62."

(d) Admit that the caption under the photograph on the page marked "Exhibit 10, Page 62" of Exhibit 10 attached hereto accurately identifies defendant Xin (Lisa) Wang as "President of United Damei Group Ms. WANG Xin."

(e) Admit that Exhibit 10 attached hereto contains a photograph of defendant Xin (Lisa) Wang on the page marked "Exhibit 10, Page 64."

(d) Admit that the caption under the photograph on the page marked "Exhibit 10, Page 64" of Exhibit 10 attached hereto accurately identifies defendant Xin (Lisa) Wang as "the President of United Damei Group."

**Request for Admission No. 40:**

(a) Admit that Exhibit 11 attached hereto is a genuine, true and correct copy of an email from you to Edison Zahn, dated October 7, 2014.

(b) Admit that attached to Exhibit 11 is a list of invitees to an event in Beijing, China in December 2014, which accurately identifies Xiaojun Chen as the Director of the New China Insurance Company.

**Request for Admission No. 41:**

(a) Admit that Exhibit 12 attached hereto is a genuine, true and correct copy of an email from you to Edison Zahn, dated October 21, 2015.

(b) Admit that, as of October 21, 2015, you were president, chief executive officer and sole owner of United MPH Ventures, LLC.

(c) Admit that, as of October 21, 2015, United MPH Ventures, LLC was the 100% shareholder of United Damei US.

**Request for Admission No. 42:**

(a) Admit that Exhibit 13 attached hereto is a genuine, true and correct copy of a printout of registration information concerning United Damei Investment Company, Ltd. from the official Chinese government website containing registration information filed by Chinese companies, found at http://gsxt.saic.gov.cn/.

(b) Admit that Exhibit 14 attached hereto is a correct, in all material terms, translation of Exhibit 13.

(c) Admit that Wenli Yao was the "Legal Representative" of United Damei Investment Company, Ltd. before May 19, 2016.

(d) Admit that Wenli Yao was the "Executive Director" and "Manager" of United Damei Investment Company, Ltd. before May 19, 2016.

(e) Admit that Wenli Yao and Zhongshen Wang were the two "Natural person shareholders" of United Damei Investment Company, Ltd. before May 19, 2016.

**Request for Admission No. 43:**

(a) Admit that Exhibit 15 attached hereto is a genuine, true and correct copy of the private offering memorandum for the offer for sale of membership interests or units in the PPEB5 Fund.

(b) Admit that you reviewed and approved the content of Exhibit 15 attached hereto.

(c) Admit that Exhibit 15 was sent to investors who invested in the Pacific Proton offering.

**Request for Admission No. 44:**

Admit that Exhibit 16 attached hereto is a genuine, true and correct copy of a letter, dated March 22, 2016, which you received from counsel for Loma Linda

University and Loma Linda University Medical Center.

**Request for Admission No. 45:**

Admit that Exhibit 17 attached hereto is a genuine, true and correct copy of a letter, dated March 18, 2016, which you received from counsel for Optivus Proton Therapy, Inc.

**Request for Admission No. 46:**

(a) Admit that Exhibit 18 attached hereto is a genuine, true and correct copy of a letter, dated May 3, 2016, from your counsel, copying you, to counsel for the SEC.

(b) Admit that Exhibit 18 attached hereto includes a genuine, true and correct copy (on the page marked "Exh 1 Page 6") of an agreement between Los Angeles County Proton Therapy, LLC and Overseas Chinese regarding the return of "marketing fees" to Los Angeles County Proton Therapy, LLC, which you signed on behalf of Los Angeles County Proton Therapy, LLC.

(c) Admit that Beverly Proton was formerly known as Los Angeles County Proton Therapy, LLC.

**Request for Admission No. 47:**

(a) Admit that Exhibit 19 attached hereto is a genuine, true and correct copy of a letter, dated May 18, 2016, from your counsel, copying you, to counsel for the SEC.

(b) Admit that Exhibit 19 attached hereto includes a genuine, true and correct copies of the English translation and Chinese version (on the pages marked "Exh 2 Page 12" and "Exh 2 Page 13") of an agreement by Beijing Pacific Damei Consulting Co., Ltd. regarding the return of "agent fees" to "your company," Los Angeles County Proton Therapy, LLC.

Dated: October 18, 2016

*/s/ John W. Berry*
John W. Berry
Attorney for Plaintiff

Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 19, 2016, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT CHARLES C. LIU** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☒ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 19, 2016

*/s/ Joseph Law*
Joseph Law

**_SEC v. Liu et al._**
**United States District Court—Central District of California**
**Case No. SACV16-00974-CJC (AGRx)**

**SERVICE LIST**

*Counsel for Defendants Charles C. Liu and Xin Wang a/k/a Lisa Wang*:

Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

*Defendants Pacific Proton Therapy Regional Center, LLC and Beverly Proton Center, LLC:*

(*on counsel for Charles C. Liu¸ the controlling shareholder of each*)
Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

(*on Charles C. Liu¸ controlling shareholder of each*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677

Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

*Defendant Pacific Proton EB-5 Fund, LLC*:

(*on the registered agent*)
c/o Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

(*on Charles C. Liu¸ controlling shareholder of the manager*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677
Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

# Exhibit 2

JOHN W. BERRY (Cal. Bar No. 295760)
Email: berryj@sec.gov
GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov
JACOB A. REGENSTREIF (Cal. Bar No. 234734)
E-mail: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Southern Division**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,<br><br>Defendants. | Case No. SACV16-00974-CJC (AGRx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT XIN (LISA) WANG** |

PROPOUNDING PARTY: SECURITIES AND EXCHANGE COMMISSION

RESPONDING PARTY: XIN (LISA) WANG

SET NO.: ONE (Nos. 1-47)

In accordance with Rule 36 of the Federal Rules of Civil Procedure, the Securities and Exchange Commission ("SEC") hereby requests that defendant

Charles C. Liu respond to the following requests for admission within 30 days of the date of service hereof.

# I. <u>INSTRUCTIONS & DEFINITIONS</u>

## A. Definitions

1. The term "SEC" means the U.S. Securities and Exchange Commission.

2. The term "document(s)" is synonymous in meaning and equal in scope to the usage of the term "documents" in Rule 34(a) of the Federal Rules of Civil Procedure and the term "writings and recordings" in Rule 1001(l) of the Federal Rules of Evidence, and shall include any drafts, originals, and non-identical copies of any kind, written, typewritten, printed, recorded, computer-generated or graphic material, however produced, reproduced or compiled, including, but not limited to, any correspondence, memoranda, letters, notes, instructions, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, invoices, articles, diaries, minutes, calendars, analyses, projections, transcripts, declarations, witness statements, interview reports, summaries, notes of personal or telephonic conversations, e-mail, summaries or notes of any meetings or conferences, and all electronically stored information including electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "communication(s)" means any written, oral, telephonic or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two and/or more persons, including, but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, e-mail, consultations, negotiations, agreements, understandings, meetings, letters, notations, telegrams, advertisements, declarations, transcripts, interviews, interview reports, blogs, chat room or other Internet postings, and all other documents. A draft or non-identical copy is a separate communication within the meaning of this term.

4. The term "identify" means to describe with particularity, in full detail,

all relevant facts about the subject matter, including, but not limited to, names, dates, relationships, functions, addresses, purposes, objectives, results and other information which could lead to the discovery of admissible evidence.

5. The term "identify" when used with respect to a document or communication means to identify the document or communication by exhibit number or bates number(s) if previously produced in this action or the SEC's non-public investigation that preceded this action; or if the document or communication has not been previously produced in this action or the SEC's prior investigation, to set forth the following information: (a) the nature or type of document or communication (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) the date the document or communication was made: (c) the author(s) of the document or communication; (d) each person who received a copy of the document or communication or was informed of its contents; (e) the person who now has the document or communication or was last known to have it; and (f) the general subject matter and, if applicable, the title of the document or communication.

6. The term "concerning" shall mean discussing, reflecting, evidencing, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, describing, supporting, contradicting, contravening, touching upon or summarizing.

7. The term "person(s)" means any natural individual(s) and/or natural person(s), in any capacity whatsoever, or any entity or organization including divisions, subsidiaries, departments, and other units thereof, and shall include, but not be limited to, a public or private corporation(s), partnership(s), professional corporation(s), limited liability company(ies), business trust(s), banking institution(s), firm(s), joint venture(s), voluntary or unincorporated association(s), organizations(s), proprietorship(s), trust(s), estate(s), governmental agency(ies), commission(s), bureau(s) and/or department(s), and/or any other legal entity.

8. The terms "you" and "your" mean defendant Xin (Lisa) Wang, and all persons, agents, attorneys, representatives or other persons or entities acting or

purporting to act on her behalf, including, but not limited to, your spouse or Lance Gong, Richard Zheng and Stan Lam at Marcum, LLP.

9. The term "your spouse" means defendant Charles C. Liu, and all persons, agents, attorneys, representatives or other persons or entities acting or purporting to act on her behalf.

10. The term "your children" means any of your children, including, but not limited to, [redacted].

11. The term "Beverly Proton" means defendant Beverly Proton Center, LLC f/k/a Los Angeles County Proton Therapy, LLC.

12. The term "Pacific Proton" means defendant Pacific Proton Therapy Regional Center, LLC.

13. The term "PPEB5 Fund" means Pacific Proton EB-5 Fund, LLC.

14. The term "Overseas Chinese" means Overseas Chinese Immigration Consulting Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

15. The term "UDG Entities" means United Damei Group, United Damei Investment Company, Ltd., Beijing Pacific Damei Consulting Co. Ltd., and/or United Damei US, and any and all of their U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on their behalf.

16. The term "Delsk" means Hong Kong Delsk Business Co., Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

17. The term "Identified Entities" means the following:

a. Pacific Proton Therapy Regional Center LLC;

b. Pacific Proton EB-5 Fund LLC;

c. Beverly Proton Center LLC;

d. Los Angeles County Proton Therapy, LLC;

e. Overseas Chinese Immigration Consulting Ltd.;

f. United Damei Group;

g. United Damei Investment Company, Ltd.;

h. Beijing Pacific Damei Consulting Co. Ltd.;

i. United Damei US;

j. United MPH Ventures LLC;

k. MP Medical Hotel Inc.;

l. SP MPH Fund LP;

m. SC MPH Management LLC;

n. Pacific Medical Regional Center LLC;

o. Beverly MP Hotel, Inc.;

p. Beverly Medical Hotel;

q. COH Beverly Cancer Center;

r. Root Medical Peace Corp (U.S.A.);

s. Southern California Medical/Proton/Hotel Center, LLC CLCC International Inc.;

t. USREDA Law, Inc.;

u. Root International Peace Corps;

v. Beverly International Cancer Center, LLC; and/or

w. JC Oriental Pearl, Inc.

18. The term "Pacific Proton offering memorandum" means the "Private Offering Memoranda" attached as Exhibit 5 to the Declaration of Jacob A. Regenstreif in Support of Plaintiff Securities and Exchange Commission's *Ex Parte* Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents (dated May 26, 2016 and Dkt. No. 7 in this action), and attached as

Exhibit 15 hereto.

19. The term "Pacific Proton offering" means the offering of membership units in PPEB5 Fund, as described in the Pacific Proton offering memorandum.

20. The term "Pacific Proton offering proceeds" means the total amount of money raised from or delivered by investors who subscribed to the Pacific Proton offering or who otherwise delivered money in response to that offering.

21. The term "account" shall mean all financial accounts of every nature (including, but not limited, to checking, savings, trust, money market, brokerage, investment, securities and other financial accounts).

22. The term "control" (including the terms "controlling" or "controlled by") means possessing, directly or indirectly, the power to direct or cause the direction of, or the power over the decision-making concerning the management, operation and policies of the entity in question, whether through the ownership of voting securities, by contract or otherwise.

**B. Instructions**

1. In responding to these requests for admission, you are required to obtain all responsive information that is available to you and to any of your representatives, agents, employees or attorneys, and to obtain all such responsive information that is in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees or attorneys.

2. These requests for admission are continuing in nature and you are required to promptly supplement or amend your responses to the requests for admission if, after the time of your initial responses, you learn that any response is or has become, in some material respect, incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e).

3. If you object to a request for admission, and that objection pertains to only a part of the request for admission, or word, phrase or clause in it, then you are

required to state your objection to that portion only and to respond to the remainder of the request for admission, using your best efforts to do so. No part of an request for admission shall be left unanswered merely because you interpose an objection to another part of a request for admission.

4. For requests for admission regarding the authenticity or accuracy of a copy of a document or communication, each document or communication identified and described in the particular request for admissions consists of one or more individual pages. Should you deny any request, state with specificity whether your denial is to the entire document or communication, or solely to certain pages, sections or other aspects (such as markings or annotations) contained within the document or communication. Also, if your denial is only with respect to certain pages, sections, or other aspects (such as markings or annotations) contained within the document or communication, specify, by bates number and by description of the page, sections or other aspects as appropriate, those specific pages, sections or other aspects that you refuse to admit are authentic and/or and true and correct copies of "records of a regularly conducted activity" or "business records" within the meaning of Rule 803(6) of the Federal Rules of Evidence.

5. If you withhold any information, or documents or communications asked to be identified, which is responsive to a request for admission, based on a claim of privilege or any other reason, then provide the following information concerning the withheld information, document or communication: (a) the nature or type of information that is being withheld (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) a general description of the subject matter of the information that is being withheld; (c) the date the responsive information was made; (d) the name, address, and telephone number and occupation of each person who (i) made or authored the information or (ii) received (or was intended to receive) the information, or was otherwise informed about the information; and (e) a statement of the privilege or other reason claimed to withhold the information or otherwise object to the request

for admission.

6. If you identify any document(s) or communication(s) in your responses to these requests for admission that no longer exist, cannot be located or are not in your possession, custody or control, then in your response, identify those document(s) or communication(s), as well as: (a) the author(s); (b) the date the responsive material was created; (c) each person who received a copy of the responsive material or was informed of its contents; (d) the person who now has the responsive material or was last known to have it; (e) the general subject matter and, if applicable, the title of the responsive material; (f) the type of such responsive material (*e.g.*, telephone communication, letter, e-mail or memorandum); (g) the size of the material (*e.g.*, number of pages); (h) a detailed description of the responsive material; and (i) a detailed and complete explanation of why such responsive material is no longer in your possession, custody, or control.

7. For each of the requests for admission below, in order to make the request inclusive rather than exclusive, the past tense shall be construed to include the present tense, and vice versa. Moreover, "and" and "or" as used herein are both conjunctive and disjunctive, and "any" includes the word "all" and vice versa.

8. No agreement by the SEC or its staff purporting to modify, limit, or otherwise vary these requests for admission is binding on the SEC or its staff unless confirmed or acknowledged in writing by the SEC or its staff.

## II. REQUESTS FOR ADMISSION

**Request for Admission No. 1:**

(a) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu held at least a 75% membership interest in Pacific Proton.

(b) Admit that after April 2016 defendant Charles C. Liu held, and continues to hold, at least a 37.5% membership interest in Pacific Proton.

**Request for Admission No. 2:**

(a) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu

held a controlling membership interest in Pacific Proton.

(b) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu controlled Pacific Proton.

(c) Admit that after April 2016 defendant Charles C. Liu held, and continues to hold, a controlling membership interest in Pacific Proton.

(d) Admit that after April 2016 defendant Charles C. Liu controlled and continues to control Pacific Proton.

**Request for Admission No. 3:**

Admit that Pacific Proton is the manager of, has a controlling interest in, and controls PPEB5 Fund.

**Request for Admission No. 4:**

(a) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu held at least a 75% membership interest in Beverly Proton.

(b) Admit that after April 2016 defendant Charles C. Liu held, and continues to hold, at least a 75% membership interest in Beverly Proton.

**Request for Admission No. 5:**

(a) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu held a controlling membership interest in Beverly Proton.

(b) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu controlled Beverly Proton.

(c) Admit that after April 2016 defendant Charles C. Liu held, and continues to hold, a controlling membership interest Beverly Proton.

(d) Admit that after April 2016 defendant Charles C. Liu controlled and continue to control Beverly Proton.

**Request for Admission No. 6:**

Admit that defendant Charles C. Liu held the title of president of Pacific Proton from about 2010 to at least April 2016.

**Request for Admission No. 7:**

Admit that defendant you held the title of secretary of Pacific Proton from at least January 2016 to at least April 2016.

**Request for Admission No. 8:**

(a) Admit that defendant Charles C. Liu held the titles of president and treasurer of Beverly Proton from about 2010 to at least sometime in 2016.

(b) Admit that defendant Charles C. Liu was the managing member of Beverly Proton from in or about 2010 to at least sometime in 2016.

(c) Admit that defendant Charles C. Liu and you were the sole directors of Beverly Proton from at least January 2016 to at least April 2016 .

(d) Admit that you hold and/or held the title of Vice President of Marketing of Asia for Beverly Proton.

**Request for Admission No. 9:**

(a) Admit that you held the title of chairman for at least one of the UDG Entities.

(b) Admit that you currently hold the title of chairman for at least one of the UDG Entities.

(c) Admit that you held the title of chief executive officer for at least one of the UDG Entities.

(d) Admit that you currently hold the title of chief executive officer for at least one of the UDG Entities.

**Request for Admission No. 10:**

(a) Admit that from about 2010 to at least April 2016 defendant Charles C. Liu controlled at least one of the UDG Entities.

(b) Admit that from about 2010 to at least April 2016 you controlled at least one of the UDG Entities.

(c) Admit that from about 2010 to at least April 2016 Wenli Yao controlled at least one of the UDG Entities.

**<u>Request for Admission No. 11:</u>**

(a) Admit that Wenli Yao is your mother.

(b) Admit that Wenli Yao is the mother-in-law of defendant Charles C. Liu.

**<u>Request for Admission No. 12:</u>**

Admit that <u>Exhibit 1</u> attached hereto is a genuine, true and correct copy of a list of investors in the PPEB5 Fund produced to the SEC by counsel for defendant Charles C. Liu in the SEC's investigation.

**<u>Request for Admission No. 13</u>:**

(a) Admit that there were at least 58 investors who invested in the Pacific Proton offering.

(b) Admit that the total amount of Pacific Proton offering proceeds was at least $31,610,000.

**<u>Request for Admission No. 14</u>:**

(a) Admit that, in order to qualify for the federal EB-5 program, investors in the Pacific Proton offering had to invest capital, the capital had to be at risk, and the investment had to be made for the purpose of generating a return on the capital invested.

(b) Admit that investors in the Pacific Proton offering depended on the entrepreneurial or managerial skills of defendant Charles C. Liu or others involved in the Pacific Proton offering for returns to be generated on the investors' investments.

(c) Admit that investors in the Pacific Proton offering had an expectation of profits or returns on their investments and that these profits would depend on others, including defendant Charles C. Liu.

**<u>Request for Admission No. 15</u>:**

(a) Admit that the total amount of Pacific Proton offering proceeds during the period from October 2014 to April 2016 was at least $26,967,918.

(b) Admit that, of the total amount of Pacific Proton offering proceeds during the period from October 2014 to April 2016, at least $24,712,217 came in the form

of, or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that, of the total amount of Pacific Proton offering proceeds during the period from October 2014 to April 2016, at least $2,255,701 came in the form of, or were designated as or considered "Administrative Fees," as that term is defined and described in the Pacific Proton offering memorandum.

**Request for Admission No. 16**:

(a) Admit that defendant Charles C. Liu received Pacific Proton offering proceeds.

(b) Admit that defendant Charles C. Liu received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, defendant Charles C. Liu received at least $6,714,580 from the Pacific Proton offering proceeds.

(d) Admit that the $6,714,580 described above in subsection (c) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that during the period from February to March 2016, defendant Charles C. Liu received at least $4,270,000 from the Pacific Proton offering proceeds.

(f) Admit that the $4,270,000 described above in subsection (e) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**Request for Admission No. 17**:

(a) Admit that defendant you received Pacific Proton offering proceeds.

(b) Admit that you received funds from the Pacific Proton offering proceeds

that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, you received at least $1,538,000 from the Pacific Proton offering proceeds.

(d) Admit that the $1,538,000 described above in subsection (c) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that during March 2016, you received at least $996,000 from the Pacific Proton offering proceeds.

(f) Admit that the $996,000 described above in subsection (e) came from, primarily, if not entirely, funds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**Request for Admission No. 18:**

(a) Admit that Overseas Chinese received Pacific Proton offering proceeds.

(b) Admit that Overseas Chinese received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, Overseas Chinese received at least $7,722,000 from the Pacific Proton offering proceeds.

(d) Admit that the $7,722,000 described above in subsection (c) primarily, if not entirely, came from funds designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that Overseas Chinese was responsible for securing the investments of eleven investors who invested in the Pacific Proton offering.

**<u>Request for Admission No. 19</u>:**

(a) Admit that one or more of the UDG Entities Pacific Proton offering proceeds.

(b) Admit that one or more of the UDG Entities received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, one or more of the UDG Entities received at least $3,815,000 from the Pacific Proton offering proceeds.

(d) Admit that the $3,815,000 described above in subsection (c) primarily, if not entirely, came from funds designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that one or more of the UDG Entities was responsible for securing the investments of ten investors who invested in the Pacific Proton offering.

**<u>Request for Admission No. 20</u>:**

(a) Admit that Delsk received Pacific Proton offering proceeds.

(b) Admit that Delsk received funds from the Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(c) Admit that during the period from October 2014 to April 2016, Delsk received at least $1,387,500 from the Pacific Proton offering proceeds.

(d) Admit that the $1,387,500 described above in subsection (c) primarily, if not entirely, came from funds designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

(e) Admit that Delsk was responsible for securing the investments of 37 investors who invested in the Pacific Proton offering.

**<u>Request for Admission No. 21</u>:**

(a) Admit that defendant Charles C. Liu transferred at least $3,250,000 from your personal bank account(s) to China Merchants Bank from February to April 2016.

(b) Admit that all of the $3,250,000 that defendant Charles C. Liu transferred to China Merchants Bank from February to April 2016 came from Pacific Proton offering proceeds that primarily, if not entirely, came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Request for Admission No. 22</u>:**

(a) Admit that at least $500,000 was transferred from the bank account(s) of the PPEB5 Fund to China Merchants Bank in October 2015.

(b) Admit that all of the $500,000 that was transferred from the PPEB5 Fund to China Merchants Bank in October 2015 came from Pacific Proton offering proceeds that came in the form of or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Request for Admission No. 23</u>:**

(a) Admit that defendant Charles C. Liu transferred at least $118,605.11 from his personal bank account(s) to Bank of America, N.A. A/0959 A/C: Grenada Co-operative Bank Limited (hereinafter, "Grenada Bank") in March 2016.

(b) Admit that all of the $118,605.11 that defendant Charles C. Liu transferred to Grenada Bank in March 2016 came from Pacific Proton offering proceeds that primarily, if not entirely, came in the form of, or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Request for Admission No. 24</u>:**

Admit that the descriptions of the transactions in paragraph 48, sub-paragraphs (a) though (e) of the Supplemental Declaration of Lorraine Pearson in Support of

Plaintiff Securities and Exchange Commission's Motion for Orders Requiring the Repatriation of Assets and Accountings (dated June 3, 2016 and Dkt. No. 16 in this case), which is attached hereto as Exhibit 2, are accurate.

**Request for Admission No. 25:**

Admit that the Pacific Proton offering proceeds were not used or expended in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum.

**Request for Admission No. 26:**

Admit that you obtained money, in the form of Pacific Proton offering proceeds, by means of false statements made to investors in the Pacific Proton offering concerning the Pacific Proton offering and the use of proceeds from that offering.

**Request for Admission No. 27:**

(a) Admit that the descriptions of how the Pacific Proton offering proceeds would be used in the Pacific Proton offering memorandum were false.

(b) Admit that you knew or recklessly disregarded that the descriptions of how the Pacific Proton offering proceeds would be used in the Pacific Proton offering memorandum were false.

(c) Admit that you should have known that the descriptions of how the Pacific Proton offering proceeds would be used in the Pacific Proton offering memorandum were false.

(d) Admit that you knew or recklessly disregarded that false statements concerning the Pacific Proton offering and the use of proceeds from that offering were being made to investors in the Pacific Proton offering.

(e) Admit that you should have known that false statements concerning the Pacific Proton offering and the use of proceeds from that offering were being made to investors in the Pacific Proton offering.

**<u>Request for Admission No. 28</u>:**

Admit that you are able to transfer or cause to be transferred the sum of $26,967,818.00 as called for by the "Repatriation Order" provision, section VIII, of the Amended and Restated Injunction dated and entered October 17, 2016 in this case, and attached as <u>Exhibit 3</u> hereto.

**<u>Request for Admission No. 29</u>:**

Admit that defendant Charles C. Liu is able to transfer or cause to be transferred at least $6,714,580 to the account of the Court-appointed Monitor.

**<u>Request for Admission No. 30</u>:**

Admit that you are able to transfer or cause to be transferred at least $1,538,000 to the account of the Court-appointed Monitor.

**<u>Request for Admission No. 31</u>:**

Admit that you can cause Overseas Chinese to repatriate the Pacific Proton offering proceeds that it received.

**<u>Request for Admission No. 32</u>:**

Admit that you can cause one or more of the UDG Entities to repatriate the Pacific Proton offering proceeds that any of them received.

**<u>Request for Admission No. 33:</u>**

(a) Admit that <u>Exhibit 4</u> attached hereto is a genuine, true and correct copy of an "Engagement Agreement" between United Damei Investment Company, Ltd. and Beverly Proton.

(b) Admit that Exhibit 4 attached hereto is a genuine, true and correct copy of a contract that is signed by Wenli Yao on behalf of United Damei Investment Company, Ltd. as "It's Director," with a date of August 15, 2013.

**<u>Request for Admission No. 34:</u>**

(a) Admit that <u>Exhibit 5</u> attached hereto is a genuine, true and correct copy of a page from the website of one or more of the UDG Entities from May 2016.

(b) Admit that Exhibit 5 attached hereto contains a photograph of you in the

middle of the page marked "Exhibit 32, Page 631," directly under the heading "Management Team."

**<u>Request for Admission No. 35:</u>**

(a) Admit that <u>Exhibit 6</u> attached hereto is a genuine, true and correct copy of a pages from the website of one or more of the UDG Entities from May 2016.

(b) Admit that Exhibit 6 attached hereto contains a photograph of you and defendant Charles C. Liu on the bottom half of the page marked "Exhibit 33, Page 640."

(c) Admit that Exhibit 6 attached hereto contains two photographs of you on the page marked "Exhibit 33, Page 641."

**<u>Request for Admission No. 36:</u>**

(a) Admit that <u>Exhibit 7</u> attached hereto is a genuine, true and correct copy of pages from the website of one or more of the UDG Entities from May 2016.

(b) Admit that Exhibit 7 attached hereto contains a photograph of you and defendant Charles C. Liu on the page marked "Exhibit 35, Page 661."

(c) Admit that the caption under the photograph on the page marked "Exhibit 35, Page 661" of Exhibit 7 attached hereto accurately identifies defendant Charles C. Liu in the photograph, accurately identifies you in the photograph, and accurately identifies you as "United Damei Group CEO."

**<u>Request for Admission No. 37:</u>**

(a) Admit that <u>Exhibit 8</u> attached hereto is a genuine, true and correct copy of your business card for United Damei Group.

(b) Admit that Exhibit 8 attached hereto accurately identifies your title as "Chairman" of United Damei Group.

**<u>Request for Admission No. 38:</u>**

(a) Admit that <u>Exhibit 9</u> attached hereto is a genuine, true and correct copy of an email from defendant Charles C. Liu to Harlan Levine, dated March 21, 2016.

(b) Admit that in the email that is Exhibit 9 attached hereto, defendant Charles

C. Liu accurately describes "UDG" as "my wife's company."

**Request for Admission No. 39:**

(a) Admit that Exhibit 10 attached hereto is a genuine, true and correct copy of pages from the website the Grenada Embassy – Commercial Attaché Office regarding a May 2015 event in Shanghai, China.

(b) Admit that you attended the May 2015 event described in Exhibit 10 attached hereto.

(c) Admit that Exhibit 10 attached hereto contains a photograph of you on the page marked "Exhibit 10, Page 62."

(d) Admit that the caption under the photograph on the page marked "Exhibit 10, Page 62" of Exhibit 10 attached hereto accurately identifies you as "President of United Damei Group Ms. WANG Xin."

(e) Admit that Exhibit 10 attached hereto contains a photograph of you on the page marked "Exhibit 10, Page 64."

(d) Admit that the caption under the photograph on the page marked "Exhibit 10, Page 64" of Exhibit 10 attached hereto accurately identifies you as "the President of United Damei Group."

**Request for Admission No. 40:**

(a) Admit that Exhibit 11 attached hereto is a genuine, true and correct copy of an email from defendant Charles C. Liu to Edison Zahn, dated October 7, 2014.

(b) Admit that attached to Exhibit 11 is a list of invitees to an event in Beijing, China in December 2014, which accurately identifies Xiaojun Chen as the Director of the New China Insurance Company.

**Request for Admission No. 41:**

(a) Admit that Exhibit 12 attached hereto is a genuine, true and correct copy of an email from defendant Charles C. Liu to Edison Zahn, dated October 21, 2015.

(b) Admit that, as of October 21, 2015, defendant Charles C. Liu was president, chief executive officer and sole owner of United MPH Ventures, LLC.

(c) Admit that, as of October 21, 2015, United MPH Ventures, LLC was the 100% shareholder of United Damei US.

**Request for Admission No. 42:**

(a) Admit that Exhibit 13 attached hereto is a genuine, true and correct copy of a printout of registration information concerning United Damei Investment Company, Ltd. from the official Chinese government website containing registration information filed by Chinese companies, found at http://gsxt.saic.gov.cn/.

(b) Admit that Exhibit 14 attached hereto is a correct, in all material terms, translation of Exhibit 13.

(c) Admit that Wenli Yao was the "Legal Representative" of United Damei Investment Company, Ltd. before May 19, 2016.

(d) Admit that Wenli Yao was the "Executive Director" and "Manager" of United Damei Investment Company, Ltd. before May 19, 2016.

(e) Admit that Wenli Yao and Zhongshen Wang were the two "Natural person shareholders" of United Damei Investment Company, Ltd. before May 19, 2016.

**Request for Admission No. 43:**

(a) Admit that Exhibit 15 attached hereto is a genuine, true and correct copy of the private offering memorandum for the offer for sale of membership interests or units in the PPEB5 Fund.

(b) Admit that defendant Charles C. Liu reviewed and approved the content of Exhibit 15 attached hereto.

(c) Admit that Exhibit 15 was sent to investors who invested in the Pacific Proton offering.

**Request for Admission No. 44:**

Admit that Exhibit 16 attached hereto is a genuine, true and correct copy of a letter, dated March 22, 2016, which defendant Charles C. Liu received from counsel for Loma Linda University and Loma Linda University Medical Center.

**<u>Request for Admission No. 45:</u>**

Admit that <u>Exhibit 17</u> attached hereto is a genuine, true and correct copy of a letter, dated March 18, 2016, which defendant Charles C. Liu received from counsel for Optivus Proton Therapy, Inc.

**<u>Request for Admission No. 46:</u>**

(a) Admit that <u>Exhibit 18</u> attached hereto is a genuine, true and correct copy of a letter, dated May 3, 2016, from defendant Charles C. Liu's counsel to counsel for the SEC.

(b) Admit that Exhibit 18 attached hereto includes a genuine, true and correct copy (on the page marked "Exh 1 Page 6") of an agreement between Los Angeles County Proton Therapy, LLC and Overseas Chinese regarding the return of "marketing fees" to Los Angeles County Proton Therapy, LLC, which defendant Charles C. Liu signed on behalf of Los Angeles County Proton Therapy, LLC.

(c) Admit that Beverly Proton was formerly known as Los Angeles County Proton Therapy, LLC.

**<u>Request for Admission No. 47:</u>**

(a) Admit that <u>Exhibit 19</u> attached hereto is a genuine, true and correct copy of a letter, dated May 18, 2016, from defendant Charles C. Liu's counsel to counsel for the SEC.

(b) Admit that Exhibit 19 attached hereto includes a genuine, true and correct copies of the English translation and Chinese version (on the pages marked "Exh 2 Page 12" and "Exh 2 Page 13") of an agreement by Beijing Pacific Damei Consulting Co., Ltd. regarding the return of "agent fees" to "your [defendant Charles C. Liu's] company," Los Angeles County Proton Therapy, LLC.

Dated: October 18, 2016

*/s/ John W. Berry*
John W. Berry

Attorney for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 19, 2016, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT XIN (LISA) WANG** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☒ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 19, 2016

*/s/ Joseph Law*
Joseph Law

***SEC v. Liu et al.***
**United States District Court—Central District of California**
**Case No. SACV16-00974-CJC (AGRx)**

**SERVICE LIST**

*Counsel for Defendants Charles C. Liu and Xin Wang a/k/a Lisa Wang*:

Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

*Defendants Pacific Proton Therapy Regional Center, LLC and Beverly Proton Center, LLC:*

(*on counsel for Charles C. Liu¸ the controlling shareholder of each*)

Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

(*on Charles C. Liu¸ controlling shareholder of each*)

c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677

Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

*Defendant Pacific Proton EB-5 Fund, LLC*:

(*on the registered agent*)
c/o Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

*(on Charles C. Liu¸ controlling shareholder of the manager*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677
Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

# Exhibit 3

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
LOS ANGELES REGIONAL OFFICE
444 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CA 90071

DIRECT DIAL: (323) 965-3985
FACSIMILE: (213) 443-1905
EMAIL: REGENSTREIFJ@SEC.GOV

February 4, 2016

**VIA UPS OVERNIGHT**

Mr. Charles C. Liu
28202 Cabot Road Suite 640
Laguna Niguel, California 92677

**Re: In the Matter of Pacific Proton Therapy Regional Center, LLC (LA-4639)**

Dear Mr. Liu:

The staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to Mr. Charles C. Liu as part of this investigation. The subpoena requires you to give us documents and provide sworn testimony. **Please note that if you comply with the instructions for producing documents, you will not need to appear for testimony at the indicated time.**

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. You must comply with the subpoena. You may be subject to a fine and/or imprisonment if you do not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to give us the documents described in the attachment to the subpoena. You must provide these documents by **February 17, 2016**. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you prefer, you may send us photocopies of the originals. The Commission cannot reimburse you for the copying costs. The copies must be identical to the originals, including even faint marks or print. If you choose to send copies, you must keep the originals in a safe place. The staff will accept the copies for now, but may require you to produce the originals later.

If you do send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number

do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

Copies of documents and information provided in electronic formats must comply with the technical requirements set out in the attached copy of the SEC's Data Delivery Standards. You should contact me prior to production in an electronic format other than those identified in the Data Delivery Standards.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state which paragraph(s) in the subpoena attachment each item responds to. **A copy of the subpoena should be included with the documents that are produced**.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

I have attached a Declaration Certifying Records; execution of the declaration may allow the Commission to introduce documents that you provide in any subsequent judicial proceeding, without requiring the testimony of your custodian of records.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send all the materials described in it. If, for any reason -- including a claim of attorney-client privilege -- you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

*Where should I send the materials?*

Please send the materials to:

**ENF-CPU**
**United States Securities and Exchange Commission**
**100 F St., N.E., Mailstop 5973**
**Washington, DC 20549-5973**

For smaller electronic productions that are less than 10 MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

**Testifying**

*Where and when do I testify?*

The subpoena requires you to come to the Commission's offices at 444 S. Flower St., 9th Floor, Los Angeles, California 90071, on **February 17, 2016 at 9:00 a.m.**, to testify under oath in the matter identified on the subpoena. Your testimony will be recorded by stenographic means. ***But, as noted above, if you comply with all the directions for producing documents, we will not require you to testify at the indicated time.*** We may require your testimony later, however.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. Your lawyer may also advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (323) 965-3985. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Tony Regenstreif
Senior Counsel

Enclosures: Subpoena
Attachment to Subpoena
SEC Form 1662
SEC Data Delivery Standards
Certification of Business Records

# UNITED STATES OF AMERICA

## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Pacific Proton Therapy Regional Center, LLC (LA-4639)**

To: Mr. Charles C. Liu
28202 Cabot Road Suite 640
Laguna Niguel, California 92677

☑ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date, and time specified below.

**ENF-CPU, United States Securities and Exchange Commission, F St., N.E., Mailstop 5973, Washington, DC 20549-5973, or ENF-CPU@sec.gov, February 17, 2016, at 9:00 a.m.**

☑ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date, and time specified below.

**444 S. Flower St., 9th Floor, Los Angeles, California 90071, February 17, 2016, at 9:00 a.m.**

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: ____________________ Date: February 4, 2016
Tony Regenstreif, Senior Counsel

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT TO SUBPOENA ISSUED TO**
**Mr. Charles C. Liu**
**IN THE MATTER OF PACIFIC PROTON THERAPY REGIONAL CENTER, LLC (LA-4639)**

February 4, 2016

## A. DEFINITIONS

1. "**Document**" includes any written, printed, or typed matter including, but not limited to agreements and amendments thereto, letters and correspondence, electronic mail, instant messages, text messages, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, computer files, spreadsheets, websites, information posted on social networking sites, or other electronically stored information stored in any medium from which information can be retrieved, obtained, manipulated, or translated (including computer hard drives, servers, compact discs or other removable media, archives, and backup tapes).

2. "**Communication**" means and includes, without limitation, any and all written, oral, telephonic, electronic, or other utterances of any nature whatsoever, shared, shown, transferred between or among any two or more persons or entities, including, but not limited to, correspondence, memoranda, notes, e-mail, instant messages, chat, discussion forums, telephone conversations, and other conversations, conferences or meetings, statements, inquiries, discussions, dialogues, consultations, negotiations, agreements, understandings, meetings, letters, notations, telegrams, advertisements, or interviews.

3. "**PPTRC**" means **Mr. Charles C. Liu** and any of its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

4. "**EB-5 Fund**" means **Pacific Proton EB-5 Fund, LLC** and any of its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

5. "**LA Proton Therapy**" means **Los Angeles County Proton Therapy LLC** and any of its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

6. "**Payment**" means an offer, transfer of anything of value, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to any person, body, party, or entity.

7. Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

8. Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

9. Documents or communications "relating to," "relate to," "regarding," or "concerning" a given subject matter means any document or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, alludes to, refers to, deals with, comments on, responds to, describes, analyzes, or is in any way pertinent to that subject, including, but not limited to, documents concerning the presentation of other documents.

10. To "**identify**" a person or entity means to provide that person's or entity's full legal name, nicknames, residential address(es), business address(es), nationality, telephone number(s), e-mail address(es), and state of incorporation, if applicable.

11. To the extent necessary to bring within the scope of this request any information or documents that might otherwise be construed to be outside its scope:

   (a) the word "or" means "and/or";

   (b) the word "and" means "and/or";

   (c) the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

   (d) any gender pronouns used should be read expansively to include both male and female pronouns;

   (e) the singular includes the plural and the plural includes the singular;

   (f) the words "including" and "includes" mean "without limitation"; and

   (g) the past tense includes the present tense and vice versa.

12. Unless otherwise stated, produce documents dated, written, generated, received, or existing during the period from **October 1, 2014, through present** (the "Subpoena Period").

## B. INSTRUCTIONS

1. You must produce all documents and communications sought in this subpoena that are in your possession or control, be it actual or constructive, including but not limited to your documents and communications that are in the possession of any third-party vendor.

2. Unless otherwise specified, this subpoena calls for production of the original documents and all copies and drafts of same. You may provide original documents or copies of original documents, at your expense, with the understanding that the staff has the right to compel production of the original documents at a later date. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents. All electronic documents responsive to the document request, including all metadata, must also be secured and retained in their native software format and stored in a safe place. The staff may later request or require that you produce the native format. **All electronic productions must comply with the Commission's Data Delivery Standards (attached).**

3. Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4. All documents must be produced in the manner in which they were maintained. For example, if documents are maintained loose in a file folder, the documents are to be produced in that same manner and not reorganized and/or put into a binder. On the other hand, if documents are maintained in a binder, the documents are to be produced in the same manner. Produce the entirety of each and every document described below, without alteration, deletion or obliteration of any information contained therein, even though such information is not specifically requested.

5. If any of the documents called for are not produced, for whatever reason, submit a list of the documents not produced and state for each document:

   (a) the identity and position of the creator(s);

   (b) the creation date;

   (c) its present or last known custodian;

(d) a brief description, including the subject matter;

(e) the identity and position of all persons or entities known to have been furnished the document or a copy of the document, or informed of its substance

(f) the reason the document is not being produced;

(g) the specific request in **Paragraph C** to which the document relates;

(h) in the case of a claim of attorney-client privilege, the attorney(s) and the client(s) involved; and

(i) in the case of a claim of the work product doctrine, the litigation for which the document was prepared in anticipation and the first date that the subject litigation was anticipated.

Additionally, if the document is no longer in existence, please state the actual or approximate date it ceased to exist, the circumstances under which it ceased to exist, and the identity of all persons having knowledge of the circumstances under which it ceased to exist or having knowledge of the contents thereof.

6. All documents produced **must** be legible.

7. **Documents should be labeled with sequential numbering (*i.e.*, bates-stamped).**

8. For business records, provide a certification from the custodian of records or other qualified person that the documents produced are records of regularly conducted business activities (**see attached exemplars**).

## C. REQUIRED DOCUMENTS

1. DOCUMENTS sufficient to identify all officers, directors, principals, owners shareholders, employees, and all others acting on behalf of PPRTC, and DOCUMENTS sufficient to disclose, for each individual identified in response to this Item:
(a) title;
(b) dates of affiliation with PPRTC;
(c) current or last known home address and telephone number;
(d) current or last known employment address and telephone number; and
(e) salary or other compensation for each year from January 1, 2014 to the present;

2. DOCUMENTS sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held by or on behalf of PPRTC, EB-5 Fund, and LA Proton Therapy from January 1, 2014 to the present;

3. DOCUMENTS sufficient to identify all EB-5 Fund investors by name, address, and telephone number;

4. For each investor identified in response to Item 3 above, Documents sufficient to disclose:
   a. the amount invested,
   b. the date(s) of investments, and
   c. whether, when, and how much of each investors' principal has been returned to them;

5. For each investor identified in response to Item 3 above, all DOCUMENTS CONCERNING agreements or contracts between EB-5 Fund and the investor and all DOCUMENTS CONCERNING the terms of investments;

6. For each investor identified in response to Item 3 above, all periodic or other account statements;

7. For each investor identified in response to Item 3 above, all DOCUMENTS CONCERNING the investment of (or other use of) their funds by EB-5 Fund that were provided to the investor, including without limitation:
   a. Offering memoranda, confidential offering memoranda, information memoranda, prospectuses; and private placement memoranda;
   b. Brochures and any other promotional materials;
   c. Presentations, including without limitation PowerPoint and video presentations;
   d. COMMUNICATIONS, including without limitation letters and e-mails;

8. All DOCUMENTS CONCERNING COMMUNICATIONS between PPRTC, EB-5 Fund, and investors or potential investors in EB-5 Fund;

9. All agreements between YOU and any PERSON to offer or sell EB-5 Fund investments, including without limitation sales agents and brokers;

10. All financial books and records of EB-5 Fund, including without limitation any electronic financial books and records, such as QuickBooks; and

11. All DOCUMENTS CONCERNING agreements, including without limitation leases and letters of intent, between EB-5 Fund and any other party.

[FOR DOMESTIC UNITED STATES RECORDS]

**DECLARATION OF [*Insert Name*] CERTIFYING RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by [*insert name of company*] as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

   (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

   (b) kept in the course of regularly conducted business activity; and

   (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on [*date*].

____________________________
[*Name*]

[FOR FOREIGN RECORDS]

**DECLARATION OF [*Insert Name*] CERTIFYING RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, [*insert name*], declare that:

1. I am employed by [*insert name of company*] as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

   (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

   (b) kept in the course of regularly conducted business activity; and

   (c) made by the regularly conducted business activity as a regular practice.

3. I understand that a false statement in this declaration could subject me to criminal penalty under the laws of [*country where declaration is signed*].

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on [*date*] at [*place of execution*].

______________________________
[*Name*]

**SECURITIES AND EXCHANGE COMMISSION**

**Washington, D.C. 20549**

**Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena**

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
> (1) falsifies, conceals or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record*. Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*. You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*. Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: Provided, however, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*. Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and

> contrary to such oath states or subscribes any material matter which he does not believe to be true; or
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

**C. Submissions and Settlements**

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

**D. Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a

stamped, self-addressed envelope.

**E. Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F. Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G. Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H. Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight

Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-

18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business..

# U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC). *****Any proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.*****

General Instructions ........ 1
Delivery Formats ........ 2
I. *Concordance®* Imaged Productions ........ 2
1. Images ........ 2
2. *Concordance Image®* or Opticon Cross-Reference File ........ 2
3. *Concordance®* Data File ........ 3
4. Text ........ 3
5. Linked Native Files ........ 3
II. Native File Productions without loadfiles ........ 3
III. Adobe PDF File Productions ........ 3
IV. Audio Files ........ 4
V. Video Files ........ 4
VI. Electronic Trade and Bank Records ........ 4
VII. Electronic Phone Records ........ 4

### General Instructions

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. ***(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)***

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
    a. A list of each piece of media included in the production with its unique production volume number
    b. A list of custodians, identifying the Bates range for each custodian.
    c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted.
10. All data productions must be produced using industry standard self-extracting encryption software.
11. Passwords for documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
12. All productions should be produced free of computer viruses.
13. Additional technical descriptions can be found in the addendum to this document.

*Please note that productions that come via United States Postal Service are subject to Mail Irradiation, as a result electronic productions may be damaged.*

**Delivery Formats**

**I. *Concordance®* Imaged Productions**

The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

**1. Images**

a. Black and white images must be 300 DPI Group IV single-page TIFF files.
b. Color images must be produced in JPEG format.
b. File names cannot contain embedded spaces or special characters (including the comma).
c. Folder names cannot contain embedded spaces or special characters (including the comma).
d. All TIFF image files must have a unique file name, i.e. Bates number.
e. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
f. The number of TIFF files per folder should not exceed 500 files.
g. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
h. AUTOCAD/photograph files should be produced as a single page JPEG file.

2. **Concordance Image® OR Opticon Cross-Reference File**
The image cross-reference file to link the images to the database should be a comma- delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,Pag*

3. ***Concordance*® Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance*® database.

a. The first line of the .DAT file must be a header row identifying the field names.
b. The .DAT file must use the following *Concordance*® default delimiters:
Comma ¶ ASCII character (020)
Quote þ ASCII character (254)
c. Date fields should be provided in the format: mm/dd/yyyy
d. Date and time fields must be two separate fields.
e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
f. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
g. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.
h. BEGATT and ENDATT fields must be two separate fields.
i. A complete list of metadata fields is available in **Addendum A** to this document.

4. **Text**
Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. (Please note in the cover letter if any non-ANSI text files are included in the production.) Extracted text must be in a separate folder, one text file per document. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
a. Native file documents must be named per the FIRSTBATES number.
b. The full path of the native file must be provided in the .DAT file for the LINK field.
c. The number of native files per folder should not exceed 500 files.

**II. Native File Production without Loadfiles**
With prior approval, native files may be produced without loadfiles. The files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

**III. Adobe PDF File Production**
With prior approval, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document.
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV. Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name: Caller's name or account/identification number
2) Originating Number: Caller's phone number
3) Called Party Name: Called party's name
4) Terminating Number: Called party's phone number
5) Date: Date of call
6) Time: Time of call
7) Filename: Filename of audio file

**V. Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI. Electronic Trade and Bank Records**

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII. Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a. The metadata that must be included is outline in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field; |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |

| | | |
|---|---|---|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Loadfile:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| | | |
|---|---|---|
| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
| BIXEL LIQUOR AND CONVENIENCE | THE UPS STORE | UNION LIQUOR |
| 467 S BIXEL ST | 645 W 9TH ST | 1703 BEVERLY BLVD |
| LOS ANGELES ,CA 90017 | LOS ANGELES ,CA 90015 | LOS ANGELES ,CA 90026 |

FOLD HERE

ADRIANE WILLIAMS
(323) 965-3971
SEC-LOS ANGELES
444 S. FLOWER STREET
LOS ANGELES CA 90071

0.0 LBS LTR 1 OF 1

**SHIP TO:**
CHARLES C. LIU
SUITE #640
28202 CABOT ROAD
**LAGUNA NIGUEL CA 92677-1260**

**CA 926 9-11**

**UPS NEXT DAY AIR 1**
TRACKING #: 1Z A37 5F9 01 9315 9754

BILLING: P/P

Reference #1: 66211

CS 18.0.22. WNTIE100 72.0A 01/2016

66211

# Exhibit 4

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - - - - - - - - - - - - - - -

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | ) |
| v. | ) CASE NO. 8:16-cv-00974-CJC-AGR |
| CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a/ LOS ANGELES COUNTY PROTON THERAPY, LLC, Defendants. | ) |

- - - - - - - - - - - - - - - -

VIDEOTAPED DEPOSITION OF CHARLES C. LIU

THURSDAY, NOVEMBER 10, 2016

BEHMKE REPORTING AND VIDEO SERVICES, INC.
BY: GRACE CHUNG, CSR NO. 6246, RMR, CRR
160 SPEAR STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94105
(415) 597-5600

Videotaped Deposition of CHARLES C. LIU, taken on behalf of Defendant, at 444 South Flower Street Suite 900, Los Angeles, California, via videoconference, commencing at 7:59 A.M., on THURSDAY, NOVEMBER 10, 2016, before Grace Chung, CSR No. 6246, RMR, CRR, CLR.

answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it your intention to assert your Fifth Amendment privilege in response to any questions I may ask you concerning your ability to cause UDG to return Pacific Proton investor funds?

MR. GOURAIGE: I advise the witness to answer yes.

A. The answer is yes.

BY MR. LEUNG:

Q. Mr. Liu, do you control UDG?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.

A. Based on my Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Mr. Liu, do you have the authority to direct UDG's decision-making on its management, operations, and policies?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it your intention to assert your Fifth Amendment privilege in response to any questions I may ask you concerning your control of UDG?

MR. GOURAIGE: I'm going to advise the witness to answer yes.

A. The answer is yes.

BY MR. LEUNG:

Q. Does Ms. Wang, your spouse, control UDG?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.

A. Based on my Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did Ms. Wang ever control UDG?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Does Ms. Wang have the ability to direct

UDG's decision-making concerning its management, operations, and policies?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did Ms. Wang ever have the authority to direct UDG's decision-making concerning its management, operations, and policies?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Was Ms. Wang ever UDG's chief executive officer?

MR. GOURAIGE: Based on his Fifth Amendment realty, I advise the witness not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Was Ms. Wang ever UDG's president?
MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.
A. Based on the Fifth Amendment right, I'm not going to answer.
BY MR. LEUNG:
Q. Was Ms. Wang ever UDG's chairman of the board?
MR. GOURAIGE: Based on his Fifth Amendment right, I advise the witness not to answer.
A. Based on the Fifth Amendment right, I'm not going to answer.
BY MR. LEUNG:
Q. Is it your intention to assert your Fifth Amendment privilege in response to any questions I may ask you about Ms. Wang's control of UDG?
MR. GOURAIGE: I advise the witness to answer yes.
A. The answer is yes.
BY MR. LEUNG:
Q. Mr. Liu, please identify for the last 20 years each and every bank in which you had an account, use of an account, or had a financial or

know, I -- I'm still entitled to get additional compensation.

Even the funds -- even the company does not have enough funds because we are still in the middle of raising more capital. If we raise more capital, and then I guess the company still is going to pay me.

Q. Is it true that more than $20 million of the capital that you had raised today was paid either to you, your wife, or the overseas marketers?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that in order to receive your million-dollar bonus, you needed to raise additional capital because the corporate defendants did not have enough money?

A. That's the right logic.

Q. And, Mr. Liu, do you have any interest -- an interest in any type of trust?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

Amendment privilege in response to any questions I may ask you concerning money or assets held by another person on your behalf?

MR. GOURAIGE: I am going to advise him to say yes.

A. The answer is yes.

BY MR. LEUNG:

Q. Were there at least 58 investors that invested in the Pacific Proton EB-5 Fund?

MR. GOURAIGE: I -- based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Was the total amount of money that you raised in connection with the Pacific Proton Regional Center and the Pacific Proton EB-5 Fund and Beverly Proton at least 31,160,000 dollars U.S.?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on my Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did investors in the Pacific Proton

offering depend on the entrepreneurial or managerial skills of you or others involved in the offering in order for them to return -- generate returns on their investment?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did Pacific Proton investors have an expectation of profit or return on their investments?

MR. GOURAIGE: Could you repeat the question, please?

BY MR. LEUNG:

Q. Did Pacific Proton investors have an expectation of profit in connection with the investments that they made in the Pacific Proton EB-5 Fund?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did you transfer at least 3.25 million

dollars U.S. from your personal bank accounts in the United States to China Merchants Bank from February to April 2016?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that the offering proceeds from the Pacific Proton offering weren't used or expended in a way consistent with the terms and disclosures of the Pacific Proton offering memorandum?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did you engage in a scheme to misappropriate Pacific Proton investor funds by failing to disclose to those investors the true uses of those funds?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm

not going to answer.
BY MR. LEUNG:
Q. Did you engage in that scheme with fraudulent intents?
MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.
A. Based on the Fifth Amendment right, I'm not going to answer.
BY MR. LEUNG:
Q. Did you deal directly with the Pacific Proton investors?
MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.
A. Based on the Fifth Amendment right, I'm not going to answer.
BY MR. LEUNG:
Q. Did you communicate with Pacific Proton investors about their investment in the Pacific Proton EB-5 Fund?
MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.
A. Based on my Fifth Amendment right, I'm not going to answer.
BY MR. LEUNG:
Q. Is it true that investors in the Pacific

Proton EB-5 Fund would have considered it to be a significant piece of information had they known that you were using their funds in the manner in which you did?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Did you know that false statements concerning the Pacific Proton offering and the use of proceeds from that offering were being made to investors?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Please identify all personal property currently in your possession having a value greater than $500.

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Do you own any paintings?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that Pacific Proton offering proceeds weren't used or expended in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I am not going to answer.

BY MR. LEUNG:

Q. Is it true that you intended to have the Pacific Proton offering proceeds used or expended in a manner that was inconsistent with the terms and disclosures of the Pacific Proton offering memoranda?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that you intended not to disclose to investors in the Pacific Proton offering that offering proceeds would be used or expended in a manner that was inconsistent with the terms and disclosures of the Pacific Proton offering memoranda?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that you made false statements concerning the Pacific Proton offering and the use of proceeds from that offering to investors in Pacific Proton?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that the Pacific Proton offering memorandum's description of how Pacific Proton offering proceeds would be used were false?

MR. GOURAIGE: Based on his Fifth Amendment, I advise him not to answer.

A. Based on the Fifth Amendment, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that you should have known, under a reasonable standard of care, that the descriptions of how the Pacific Proton offering proceeds would be used that are in the Pacific Proton offering memorandum were false?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm not going to answer.

BY MR. LEUNG:

Q. Is it true that you knew false statements concerning the Pacific Proton offering and the use of proceeds from that offering were being made to investors in the Pacific Proton offering?

MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.

A. Based on the Fifth Amendment right, I'm

not going to answer.
BY MR. LEUNG:
Q. Is it true that you recklessly disregarded that false statements were being made to investors in the Pacific Proton offering memorandum?
MR. GOURAIGE: Based on his Fifth Amendment right, I advise him not to answer.
A. Based on the Fifth Amendment right, I'm not going to answer.
BY MR. LEUNG:
Q. Do you drive a car?
MR. GOURAIGE: What was the question?
BY MR. LEUNG:
Q. Do you drive a car, Mr. Liu?
A. Here or U.S.?
Q. In Beijing, sir.
A. No.
Q. Do you own cars?
A. No.
Q. Do you own or have a financial interest in any boats?
A. Boats?
Q. Boats.
A. Oh, boats. No.
Q. Do you own or have a financial interest in

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I hereby certify that the witness in the foregoing deposition, CHARLES C. LIU, was by me duly sworn to testify to the truth, the whole truth and nothing but the truth, in the within-entitled cause; that said deposition was taken at the time and place herein named; and that the deposition is a true record of the witness's testimony as reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting by computer.

I further certify that I am not interested in the outcome of the said action, nor connected with nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of November, 2016.

Reading and Signing was:

_X_ requested ___ waived ___ not requested



GRACE CHUNG, CSR NO. 6246

# Exhibit 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

- - - - - - - - - - - - - - - -

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| Plaintiff, | ) CASE NO. |
| V. | ) 8:16-cv-00974-CJC-AGR |
| CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a/ LOS ANGELES COUNTY PROTON THERAPY, LLC, | ) |
| Defendants. | ) |

- - - - - - - - - - - - - - - -

VIDEOTAPED DEPOSITION OF XIN WANG
WEDNESDAY, NOVEMBER 9, 2016

BEHMKE REPORTING AND VIDEO SERVICES, INC.
BY: CHRISTINA VALERY, CSR NO. 14140
160 SPEAR STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94105
(415) 597-5600

Videotaped Deposition of XIN WANG, taken on behalf of Plaintiff, at 444 South Flower Street, Suite 900, Los Angeles, California, commencing at 8:25 A.M., WEDNESDAY, NOVEMBER 9, 2016, before Christina Valery, Certified Shorthand Reporter No. 14140, pursuant to Notice of Videotaped Deposition.

based on her 5th amendment right.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you caused UDG to return at least -- strike that.

Is it true that you caused UDG to agree to return at least $3.15 million in fees paid by Beverly Proton to UDG?

MR. GOURAIGE: I advise the witness not to answer based on her 5th amendment right.

THE WITNESS: I'm not going to answer this question based on 5th amendment.

BY MR. LEUNG:

Q. Is it your intention to assert your 5th amendment privilege in response to any questions I may ask you about your ability to cause UDG to return Pacific Proton investor funds?

MR. GOURAIGE: I advise the witness to answer yes to the question.

THE WITNESS: Yes.

BY MR. LEUNG:

Q. Ms. Wang, do you control UDG?

MR. GOURAIGE: I advise the witness not to answer based on her 5th --

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Ms. Wang, do you have the authority to direct UDG's decision making concerning its management, operations, and policies?

MR. GOURAIGE: I advise the witness not to answer based on her 5th amendment right.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Ms. Wang, were you UDG's chief executive officer?

MR. GOURAIGE: I advise the witness not to answer based on her 5th amendment right.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Mr. Wang, were you UDG's chairman of the board?

MR. GOURAIGE: I advise the witness not to answer based on her 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it your intention to assert your 5th

amendment privilege in response to any questions I may ask you about your control of UDG?

MR. GOURAIGE: I advise the witness to answer yes.

THE WITNESS: Yes. Sorry.

MR. LEUNG: Yes is the witness's answer?

THE INTERPRETER: Yes.

BY MR. LEUNG:

Q. Ms. Wang, does Mr. Liu control UDG?

MR. GOURAIGE: I advise the witness not to answer based on her 5th amendment right.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Ms. Wang, is it your intention to assert your 5th amendment privilege in response to any question I may ask you concerning Mr. Liu's control of UDG?

MR. GOURAIGE: I advise the witness to answer yes.

THE WITNESS: Yes.

BY MR. LEUNG:

Q. Ms. Wang, for the last 20 years, identify every bank in which you had an account, use of an account, or financial interest in an account?

MR. GOURAIGE: I advise the witness not to answer based on her 5th amendment right.

THE WITNESS: I'm not going to answer this question

MR. LEUNG: Did you get that?

THE WITNESS: Well, I was also responsible for Chinese patients to go to overseas such as U.S. I -- I was helping them to promote that. That included to contact doctors in China and also communication with patients. Well, we were preparing for a center for Chinese patients to go to these centers in the U.S. and we were promoting and hoping to build a green channel for these patients to go to these -- to this center in the U.S.

BY MR. LEUNG:

Q. Are you referring to your work for Beverly Proton? Are you referring to your work for Beverly Proton?

MR. GOURAIGE: Witness may answer the question.

THE WITNESS: Yes.

BY MR. LEUNG:

Q. Were you an officer of Beverly Proton?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: Not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Did you have control over Beverly Proton's bank accounts at any point between 2010 and 2016? And by

2016, I mean the current day.

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Did you control the bank accounts for Pacific Proton Therapy Regional Center LLC at any point in time between 2010 to the present day?

THE INTERPRETER: The interpreter would ask counsel to repeat the question.

BY MR. LEUNG:

Q. I'll repeat the question. Did you control the bank accounts for Pacific Proton Regional Center -- strike that?

Did you control the bank accounts for Pacific Proton Therapy Regional Center LLC at any point in time from the beginning of 2010 through the present day?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the a 5th amendment.

BY MR. LEUNG:

Q. Did you have control over the bank accounts of Pacific Proton EB-5 Fund LLC at any point in time from

the beginning of 2010 to the present day?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm got going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you control the corporate bank accounts of the corporate defendants in this case from 2010 to the present day?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you control the bank -- what was the answer?

THE WITNESS: I'm not going to answer this question.

BY MR. LEUNG:

Q. Based on the 5th amendment?

A. Yes -- Yes, based on the 5th amendment.

Q. Is it true that you control the bank accounts of the corporate defendants during the time periods in which they were raising investor funds?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you caused the corporate defendants to misappropriate investor funds?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it your intention to assert your 5th amendment privilege in response to any question I may ask you, Ms. Wang, concerning the use and misappropriation of investor funds by the corporate defendants in this case?

MR. GOURAIGE: I advise the witness to answer yes.

THE WITNESS: Yes.

BY MR. LEUNG:

Q. What amount of income have you received in each of the last 15 years in connection with your professional work?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Please identify all of your current sources of

income.

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you misappropriated funds invested by investors in the Pacific Proton EB-5 Fund?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you engaged in a scheme to misappropriate investor money by failing to disclose to investors in the Pacific Proton EB-5 Fund the true use of their money?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you acted with fraudulent intent when engaging in that scheme to misappropriate?

MR. GOURAIGE: I advise the witness not to answer

based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you, Mr. Liu, and the corporate defendants in this case raised at least -- at least $26,967,918 from investors in the form of capital contributions to the Pacific Proton EB-5 Fund and administrative fees paid to Beverly Proton?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that you directly --

A. I'm not going to answer this question based on the 5th amendment.

Q. Is it true that you directly interacted with investors when soliciting their investment in the Pacific Proton EB-5 Fund?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Based on your interaction with Pacific Proton EB-5 Fund investors, do you know that they would have

found the misappropriation of their money to be a significant piece of information relevant to their investment?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Is it true that investors in the Pacific Proton EB-5 Fund invested with an expectation of profit?

MR. GOURAIGE: I advise the witness not to answer based on the 5th amendment.

THE WITNESS: I'm not going to answer this question based on the 5th amendment.

BY MR. LEUNG:

Q. Are you currently employed?

MR. GOURAIGE: Witness may answer the question.

THE WITNESS: Yes.

BY MR. LEUNG:

Q. Where are you currently employed?

MR. GOURAIGE: Witness may answer the question.

THE INTERPRETER: Okay. I did not hear -- the interpreter did not hear the witness. Can the witness repeat it again?

THE WITNESS: I am currently employee at the

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I hereby certify that the witness in the foregoing deposition, XIN WANG, was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth, in the within-entitled cause; that said deposition was taken at the time and place herein named; that the deposition is a true record of the witness's testimony as reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting by computer.

I further certify that I am not interested in the outcome of the said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of November, 2016.

Reading and Signing was:
_X_ requested ___ waived ___ not requested

C. Valery

CHRISTINA VALERY, CSR NO. 14140
STATE OF CALIFORNIA

# Exhibit 6

JOHN W. BERRY (Cal. Bar No. 295760)
Email: berryj@sec.gov
GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov
JACOB A. REGENSTREIF (Cal. Bar No. 234734)
E-mail: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Southern Division**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,

Defendants.

Case No. SACV16-00974-CJC (AGRx)

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHARLES C. LIU**

PROPOUNDING PARTY: SECURITIES AND EXCHANGE COMMISSION

RESPONDING PARTY: CHARLES C. LIU

SET NO.: ONE (Nos. 1-18)

In accordance with Rule 33 of the Federal Rules of Civil Procedure, the Securities and Exchange Commission ("SEC") hereby requests that defendant

Charles C. Liu respond to the following interrogatories within 30 days of the date of service hereof.

**I. <u>INSTRUCTIONS & DEFINITIONS</u>**

**A. Definitions**

1. The term "SEC" means the U.S. Securities and Exchange Commission.

2. The term "document(s)" is synonymous in meaning and equal in scope to the usage of the term "documents" in Rule 34(a) of the Federal Rules of Civil Procedure and the term "writings and recordings" in Rule 1001(l) of the Federal Rules of Evidence, and shall include any drafts, originals, and non-identical copies of any kind, written, typewritten, printed, recorded, computer-generated or graphic material, however produced, reproduced or compiled, including, but not limited to, any correspondence, memoranda, letters, notes, instructions, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, invoices, articles, diaries, minutes, calendars, analyses, projections, transcripts, declarations, witness statements, interview reports, summaries, notes of personal or telephonic conversations, e-mail, summaries or notes of any meetings or conferences, and all electronically stored information including electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "communication(s)" means any written, oral, telephonic or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two and/or more persons, including, but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, e-mail, consultations, negotiations, agreements, understandings, meetings, letters, notations, telegrams, advertisements, declarations, transcripts, interviews, interview reports, blogs, chat room or other Internet postings, and all other documents. A draft or non-identical copy is a separate communication within the meaning of this term.

4. The term "identify" means to describe with particularity, in full detail,

all relevant facts about the subject matter, including, but not limited to, names, dates, relationships, functions, addresses, purposes, objectives, results and other information which could lead to the discovery of admissible evidence.

5. The term "identify" when used with respect to a document or communication means to identify the document or communication by exhibit number or bates number(s) if previously produced in this action or the SEC's non-public investigation that preceded this action; or if the document or communication has not been previously produced in this action or the SEC's prior investigation, to set forth the following information: (a) the nature or type of document or communication (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) the date the document or communication was made: (c) the author(s) of the document or communication; (d) each person who received a copy of the document or communication or was informed of its contents; (e) the person who now has the document or communication or was last known to have it; and (f) the general subject matter and, if applicable, the title of the document or communication.

6. The term "concerning" shall mean discussing, reflecting, evidencing, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, describing, supporting, contradicting, contravening, touching upon or summarizing.

7. The term "person(s)" means any natural individual(s) and/or natural person(s), in any capacity whatsoever, or any entity or organization including divisions, subsidiaries, departments, and other units thereof, and shall include, but not be limited to, a public or private corporation(s), partnership(s), professional corporation(s), limited liability company(ies), business trust(s), banking institution(s), firm(s), joint venture(s), voluntary or unincorporated association(s), organizations(s), proprietorship(s), trust(s), estate(s), governmental agency(ies), commission(s), bureau(s) and/or department(s), and/or any other legal entity.

8. The terms "you" and "your" mean defendant Charles C. Liu, and all persons, agents, attorneys, representatives or other persons or entities acting or

purporting to act on his behalf, including, but not limited to, your spouse or Lance Gong, Richard Zheng and Stan Lam at Marcum, LLP.

9. The term "your spouse" means defendant Xin (Lisa) Wang, and all persons, agents, attorneys, representatives or other persons or entities acting or purporting to act on her behalf.

10. The term "your children" means any of your children, including, but not limited to, [redacted].

11. The term "Beverly Proton" means defendant Beverly Proton Center, LLC f/k/a Los Angeles County Proton Therapy, LLC.

12. The term "Pacific Proton" means defendant Pacific Proton Therapy Regional Center, LLC.

13. The term "PPEB5 Fund" means Pacific Proton EB-5 Fund, LLC.

14. The term "Overseas Chinese" means Overseas Chinese Immigration Consulting Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

15. The term "UDG Entities" means United Damei Group, United Damei Investment Company, Ltd., Beijing Pacific Damei Consulting Co. Ltd., and/or United Damei US, and any and all of their U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on their behalf.

16. The term "Delsk" means Hong Kong Delsk Business Co., Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

17. The term "Identified Entities" means the following:

a. Pacific Proton Therapy Regional Center LLC;

b. Pacific Proton EB-5 Fund LLC;

c. Beverly Proton Center LLC;

d. Los Angeles County Proton Therapy, LLC;

e. Overseas Chinese Immigration Consulting Ltd.;

f. United Damei Group;

g. United Damei Investment Company, Ltd.;

h. Beijing Pacific Damei Consulting Co. Ltd.;

i. United Damei US;

j. United MPH Ventures LLC;

k. MP Medical Hotel Inc.;

l. SP MPH Fund LP;

m. SC MPH Management LLC;

n. Pacific Medical Regional Center LLC;

o. Beverly MP Hotel, Inc.;

p. Beverly Medical Hotel;

q. COH Beverly Cancer Center;

r. Root Medical Peace Corp (U.S.A.);

s. Southern California Medical/Proton/Hotel Center, LLC CLCC International Inc.;

t. USREDA Law, Inc.;

u. Root International Peace Corps;

v. Beverly International Cancer Center, LLC; and/or

w. JC Oriental Pearl, Inc.

18. The term "Pacific Proton offering memorandum" means Exhibit 5 to the Declaration of Jacob A. Regenstreif in Support of Plaintiff Securities and Exchange Commission's *Ex Parte* Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents (Dkt. No. 7 in this action).

19. The term "Pacific Proton offering" means the offering of membership

units in PPEB5 Fund, as described in the Pacific Proton offering memorandum.

20. The term "Pacific Proton offering proceeds" means the total amount of money raised from or delivered by investors who subscribed to the Pacific Proton offering or who otherwise delivered money in response to that offering.

21. The term "account" shall mean all financial accounts of every nature (including, but not limited, to checking, savings, trust, money market, brokerage, investment, securities and other financial accounts).

22. The term "control" (including the terms "controlling" or "controlled by") means possessing, directly or indirectly, the power to direct or cause the direction of, or the power over the decision-making concerning the management, operation and policies of the entity in question, whether through the ownership of voting securities, by contract or otherwise.

**B. Instructions**

1. In responding to these interrogatories, you are required to obtain and furnish all responsive information that is available to you and to any of your representatives, agents, employees or attorneys, and to obtain and furnish all such responsive information that is in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees or attorneys.

2. These interrogatories are continuing in nature and you are required to promptly supplement or amend your responses to the interrogatories if, after the time of your initial responses, you learn that any response is or has become, in some material respect, incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e).

3. You are requested to answer each interrogatory separately and completely in writing under oath. Your written response to the interrogatories is to be signed and verified by the person making it, and the objections signed by the attorney making them, as required by Federal Rule of Civil Procedure 33(b).

4. If you object to an interrogatory, and that objection pertains to only a part of the interrogatory, or word, phrase or clause in it, then you are required to state your objection to that portion only and to respond to the remainder of the interrogatory, using your best efforts to do so. No part of an interrogatory shall be left unanswered merely because you interpose an objection to another part of an interrogatory.

5. If you withhold any information, or documents or communications asked to be identified, which is responsive to an interrogatory, based on a claim of privilege or any other reason, then provide the following information concerning the withheld information, document or communication: (a) the nature or type of information that is being withheld (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) a general description of the subject matter of the information that is being withheld; (c) the date the responsive information was made; (d) the name, address, and telephone number and occupation of each person who (i) made or authored the information or (ii) received (or was intended to receive) the information, or was otherwise informed about the information; and (e) a statement of the privilege or other reason claimed to withhold the information or otherwise object to the interrogatory.

6. If you identify any document(s) or communication(s) in your responses to these interrogatories that no longer exist, cannot be located or are not in your possession, custody or control, then in your response, identify those document(s) or communication(s), as well as: (a) the author(s); (b) the date the responsive material was created; (c) each person who received a copy of the responsive material or was informed of its contents; (d) the person who now has the responsive material or was last known to have it; (e) the general subject matter and, if applicable, the title of the responsive material; (f) the type of such responsive material (*e.g.*, telephone communication, letter, e-mail or memorandum); (g) the size of the material (*e.g.*, number of pages); (h) a detailed description of the responsive material; and (i) a detailed and complete explanation of why such responsive material is no longer in

your possession, custody, or control.

7. For each of the interrogatories below, in order to make the interrogatory inclusive rather than exclusive, the past tense shall be construed to include the present tense, and vice versa. Moreover, "and" and "or" as used herein are both conjunctive and disjunctive, and "any" includes the word "all" and vice versa.

8. No agreement by the SEC or its staff purporting to modify, limit, or otherwise vary these interrogatories is binding on the SEC or its staff unless confirmed or acknowledged in writing by the SEC or its staff.

## II. INTERROGATORIES

**Interrogatory No. 1:**

State the nature of your direct or indirect financial interest (such as percentage of ownership of equity or membership interests), if any, in each of the Identified Entities, as of January 1, 2014, January 1, 2015, January 1, 2016, July 1, 2016, and the date of your written response to this interrogatory.

**Interrogatory No. 2:**

Identify the title, if any, you have held as an employee, officer, manager or director for each of the Identified Entities, as of January 1, 2014, January 1, 2015, January 1, 2016, July 1, 2016, and the date of your written response to this interrogatory.

**Interrogatory No. 3:**

State (a) the total amount of Pacific Proton offering proceeds; (b) how much of the total amount of Pacific Proton offering proceeds came in the form of, or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum; and (c) how much of the total amount of Pacific Proton offering proceeds came in the form of, or were designated as or considered "Administrative Fees," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Interrogatory No. 4</u>:**

State the total amount of Pacific Proton offering proceeds that were distributed or transferred, directly or indirectly, to (a) you, (b) your spouse, (c) Wenli Yao or (d) your children.

**<u>Interrogatory No. 5</u>:**

State the total amount of Pacific Proton offering proceeds that were distributed or transferred, directly or indirectly, to (a) Overseas Chinese, (b) one or more of the UDG Entities or (c) Delsk.

**<u>Interrogatory No. 6</u>:**

State the total amount of Pacific Proton offering proceeds that were expended or otherwise used to develop, construct, manage or operate the cancer treatment facility described in the Pacific Proton offering memorandum.

**<u>Interrogatory No. 7</u>:**

State the total amount of Pacific Proton offering proceeds that you caused to be transferred, directly or indirectly, to accounts held outside of the United States.

**<u>Interrogatory No. 8</u>:**

State whether all of the Pacific Proton offering proceeds were expended or otherwise used in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum. If the answer is in the affirmative, explain how that was the case.

**<u>Interrogatory No. 9</u>:**

State whether you, your spouse or Wenli Yao currently has or used to have a financial interest, whether through the ownership of voting securities, by contract or otherwise, in any of the UDG Entities. If the answer is that you, your wife or Wenli Yao had or has no such financial interest, explain how that is or was the case; if the answer is that you, your wife or Wenli Yao has or had such financial interest, identify the time period and the nature of those interests.

**<u>Interrogatory No. 10</u>:**

State whether you, your spouse or Wenli Yao currently has or used to have any control over any of the UDG Entities. If the answer is that you, your wife or Wenli Yao has or had no such control, explain how that is or was the case; if the answer is that you, your wife or Wenli Yao has or had such financial interest, identify the time period and the nature of that control.

**<u>Interrogatory No. 11</u>:**

State whether you intended that the Pacific Proton offering proceeds would be used in a manner inconsistent with the terms and disclosures of the Pacific Proton offering memorandum, and if so, approximately when you formed that intent.

**<u>Interrogatory No. 12</u>:**

State whether you intended to disclose to investors investing in the Pacific Proton offering that the Pacific Proton offering proceeds would not be expended or otherwise used in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum, and if so, approximately when you formed that intent.

**<u>Interrogatory No. 13</u>:**

State how the full amount of Pacific Proton offering proceeds were disbursed and, in doing so, identify the date of each disbursement, the amount of the disbursement and the recipient of the disbursement.

**<u>Interrogatory No. 14</u>:**

State whether you have the ability or financial means to cause the sum of $26,967,818.00 to be transferred to the account of the Court-appointed Monitor in this case, as set forth in the "Repatriation Order" provision, section VIII, of the Amended and Restated Injunction dated and entered October 17, 2016 in this case (Dkt. No. 179). If your answer is no, identify all facts and evidence supporting that assertion.

**<u>Interrogatory No. 15</u>:**

(a) State whether you can cause Overseas Chinese to repatriate the Pacific

Proton offering proceeds that it received. If your answer is no, identify all facts and evidence supporting that assertion.

(b) State whether you can cause one or more of the UDG Entities to repatriate the Pacific Proton offering proceeds that any of them received. If your answer is no, identify all facts and evidence supporting that assertion.

**Interrogatory No. 16:**

Identify all documents or communications that you contend demonstrate (a) that you did not defraud any investors in the Pacific Proton offering, (b) that you did not misappropriate any Pacific Proton offering proceeds, (c) that that you did not obtain money by means of false statements made to the investors in the Pacific Proton offering, (d) that the allegations in the SEC's complaint in this action are not true, or (e) that you do not have the ability or financial means to satisfy a potential monetary judgment in this case or the Repatriation Order referenced in Interrogatory No. 14 above.

**Interrogatory No. 17:**

Identify all witnesses whom you contend could or would testify in support of a contention (a) that you did not defraud any investors in the Pacific Proton offering, (b) that you did not misappropriate any Pacific Proton offering proceeds, (c) that the allegations in the SEC's complaint in this action are not true, or (d) that you do not have the ability or financial means to satisfy a potential monetary judgment in this case or the Repatriation Order referenced in Interrogatory No. 14 above.

**Interrogatory No. 18:**

Identify all financial accounts of every nature (including, but not limited, to checking, savings, trust, money market, brokerage, investment, securities and other financial accounts) held in your name or in which you have any direct or indirect beneficial interest, and for each such account, identify: (a) the financial institution or brokerage firm; (b) the address of the branch where the account is held; (c) the account number; and (d) the type of account.

Dated: October 19, 2016

*/s/ John W. Berry*
John W. Berry
Attorney for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 18, 2016, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHARLES C. LIU** on all the parties to this action addressed as stated on the attached service list:

☒ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 18, 2016

*/s/ Joseph Law*
Joseph Law

***SEC v. Liu et al.***
**United States District Court—Central District of California**
**Case No. SACV16-00974-CJC (AGRx)**

**SERVICE LIST**

*Counsel for Defendants Charles C. Liu and Xin Wang a/k/a Lisa Wang*:

Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

*Defendants Pacific Proton Therapy Regional Center, LLC and Beverly Proton Center, LLC:*

(*on counsel for Charles C. Liu¸ the controlling shareholder of each*)
Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

(*on Charles C. Liu¸ controlling shareholder of each*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677

Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

*Defendant Pacific Proton EB-5 Fund, LLC*:

(*on the registered agent*)
c/o Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

*(on Charles C. Liu¸ controlling shareholder of the manager*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677
Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

# Exhibit 7

JOHN W. BERRY (Cal. Bar No. 295760)
Email: berryj@sec.gov
GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov
JACOB A. REGENSTREIF (Cal. Bar No. 234734)
E-mail: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Southern Division**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,<br><br>Defendants. | Case No. SACV16-00974-CJC (AGRx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF INTERROGATORIES TO DEFENDANT XIN (LISA) WANG** |

PROPOUNDING PARTY: SECURITIES AND EXCHANGE COMMISSION

RESPONDING PARTY: XIN (LISA) WANG

SET NO.: ONE (Nos. 1-18)

In accordance with Rule 33 of the Federal Rules of Civil Procedure, the Securities and Exchange Commission ("SEC") hereby requests that defendant Xin

(Lisa) Wang respond to the following interrogatories within 30 days of the date of service hereof.

# I. INSTRUCTIONS & DEFINITIONS

## A. Definitions

1. The term "SEC" means the U.S. Securities and Exchange Commission.

2. The term "document(s)" is synonymous in meaning and equal in scope to the usage of the term "documents" in Rule 34(a) of the Federal Rules of Civil Procedure and the term "writings and recordings" in Rule 1001(l) of the Federal Rules of Evidence, and shall include any drafts, originals, and non-identical copies of any kind, written, typewritten, printed, recorded, computer-generated or graphic material, however produced, reproduced or compiled, including, but not limited to, any correspondence, memoranda, letters, notes, instructions, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, invoices, articles, diaries, minutes, calendars, analyses, projections, transcripts, declarations, witness statements, interview reports, summaries, notes of personal or telephonic conversations, e-mail, summaries or notes of any meetings or conferences, and all electronically stored information including electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "communication(s)" means any written, oral, telephonic or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two and/or more persons, including, but not limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, e-mail, consultations, negotiations, agreements, understandings, meetings, letters, notations, telegrams, advertisements, declarations, transcripts, interviews, interview reports, blogs, chat room or other Internet postings, and all other documents. A draft or non-identical copy is a separate communication within the meaning of this term.

4. The term "identify" means to describe with particularity, in full detail,

all relevant facts about the subject matter, including, but not limited to, names, dates, relationships, functions, addresses, purposes, objectives, results and other information which could lead to the discovery of admissible evidence.

5. The term "identify" when used with respect to a document or communication means to identify the document or communication by exhibit number or bates number(s) if previously produced in this action or the SEC's non-public investigation that preceded this action; or if the document or communication has not been previously produced in this action or the SEC's prior investigation, to set forth the following information: (a) the nature or type of document or communication (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) the date the document or communication was made: (c) the author(s) of the document or communication; (d) each person who received a copy of the document or communication or was informed of its contents; (e) the person who now has the document or communication or was last known to have it; and (f) the general subject matter and, if applicable, the title of the document or communication.

6. The term "concerning" shall mean discussing, reflecting, evidencing, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, describing, supporting, contradicting, contravening, touching upon or summarizing.

7. The term "person(s)" means any natural individual(s) and/or natural person(s), in any capacity whatsoever, or any entity or organization including divisions, subsidiaries, departments, and other units thereof, and shall include, but not be limited to, a public or private corporation(s), partnership(s), professional corporation(s), limited liability company(ies), business trust(s), banking institution(s), firm(s), joint venture(s), voluntary or unincorporated association(s), organizations(s), proprietorship(s), trust(s), estate(s), governmental agency(ies), commission(s), bureau(s) and/or department(s), and/or any other legal entity.

8. The terms "you" and "your" mean defendant Xin (Lisa) Wang, and all persons, agents, attorneys, representatives or other persons or entities acting or

purporting to act on her behalf, including, but not limited to, your spouse or Lance Gong, Richard Zheng and Stan Lam at Marcum, LLP.

9. The term "your spouse" means defendant Charles C. Liu, and all persons, agents, attorneys, representatives or other persons or entities acting or purporting to act on his behalf.

10. The term "your children" means any of your children, including, but not limited to, [redacted].

11. The term "Beverly Proton" means defendant Beverly Proton Center, LLC f/k/a Los Angeles County Proton Therapy, LLC.

12. The term "Pacific Proton" means defendant Pacific Proton Therapy Regional Center, LLC.

13. The term "PPEB5 Fund" means Pacific Proton EB-5 Fund, LLC.

14. The term "Overseas Chinese" means Overseas Chinese Immigration Consulting Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

15. The term "UDG Entities" means United Damei Group, United Damei Investment Company, Ltd., Beijing Pacific Damei Consulting Co. Ltd., and/or United Damei US, and any and all of their U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on their behalf.

16. The term "Delsk" means Hong Kong Delsk Business Co., Ltd., and any and all of its U.S. and non-U.S. parents, subsidiaries, affiliates, predecessors or successors, or any other persons or entities acting or purporting to act on its behalf.

17. The term "Identified Entities" means the following:

a. Pacific Proton Therapy Regional Center LLC;

b. Pacific Proton EB-5 Fund LLC;

c. Beverly Proton Center LLC;

d. Los Angeles County Proton Therapy, LLC;

e. Overseas Chinese Immigration Consulting Ltd.;

f. United Damei Group;

g. United Damei Investment Company, Ltd.;

h. Beijing Pacific Damei Consulting Co. Ltd.;

i. United Damei US;

j. United MPH Ventures LLC;

k. MP Medical Hotel Inc.;

l. SP MPH Fund LP;

m. SC MPH Management LLC;

n. Pacific Medical Regional Center LLC;

o. Beverly MP Hotel, Inc.;

p. Beverly Medical Hotel;

q. COH Beverly Cancer Center;

r. Root Medical Peace Corp (U.S.A.);

s. Southern California Medical/Proton/Hotel Center, LLC CLCC International Inc.;

t. USREDA Law, Inc.;

u. Root International Peace Corps;

v. Beverly International Cancer Center, LLC; and/or

w. JC Oriental Pearl, Inc.

18. The term "Pacific Proton offering memorandum" means Exhibit 5 to the Declaration of Jacob A. Regenstreif in Support of Plaintiff Securities and Exchange Commission's *Ex Parte* Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents (Dkt. No. 7 in this action).

19. The term "Pacific Proton offering" means the offering of membership

units in PPEB5 Fund, as described in the Pacific Proton offering memorandum.

20. The term "Pacific Proton offering proceeds" means the total amount of money raised from or delivered by investors who subscribed to the Pacific Proton offering or who otherwise delivered money in response to that offering.

21. The term "account" shall mean all financial accounts of every nature (including, but not limited, to checking, savings, trust, money market, brokerage, investment, securities and other financial accounts).

22. The term "control" (including the terms "controlling" or "controlled by") means possessing, directly or indirectly, the power to direct or cause the direction of, or the power over the decision-making concerning the management, operation and policies of the entity in question, whether through the ownership of voting securities, by contract or otherwise.

**B. Instructions**

1. In responding to these interrogatories, you are required to obtain and furnish all responsive information that is available to you and to any of your representatives, agents, employees or attorneys, and to obtain and furnish all such responsive information that is in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees or attorneys.

2. These interrogatories are continuing in nature and you are required to promptly supplement or amend your responses to the interrogatories if, after the time of your initial responses, you learn that any response is or has become, in some material respect, incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e).

3. You are requested to answer each interrogatory separately and completely in writing under oath. Your written response to the interrogatories is to be signed and verified by the person making it, and the objections signed by the attorney making them, as required by Federal Rule of Civil Procedure 33(b).

4. If you object to an interrogatory, and that objection pertains to only a part of the interrogatory, or word, phrase or clause in it, then you are required to state your objection to that portion only and to respond to the remainder of the interrogatory, using your best efforts to do so. No part of an interrogatory shall be left unanswered merely because you interpose an objection to another part of an interrogatory.

5. If you withhold any information, or documents or communications asked to be identified, which is responsive to an interrogatory, based on a claim of privilege or any other reason, then provide the following information concerning the withheld information, document or communication: (a) the nature or type of information that is being withheld (*e.g.*, telephone communication, letter, e-mail or memorandum); (b) a general description of the subject matter of the information that is being withheld; (c) the date the responsive information was made; (d) the name, address, and telephone number and occupation of each person who (i) made or authored the information or (ii) received (or was intended to receive) the information, or was otherwise informed about the information; and (e) a statement of the privilege or other reason claimed to withhold the information or otherwise object to the interrogatory.

6. If you identify any document(s) or communication(s) in your responses to these interrogatories that no longer exist, cannot be located or are not in your possession, custody or control, then in your response, identify those document(s) or communication(s), as well as: (a) the author(s); (b) the date the responsive material was created; (c) each person who received a copy of the responsive material or was informed of its contents; (d) the person who now has the responsive material or was last known to have it; (e) the general subject matter and, if applicable, the title of the responsive material; (f) the type of such responsive material (*e.g.*, telephone communication, letter, e-mail or memorandum); (g) the size of the material (*e.g.*, number of pages); (h) a detailed description of the responsive material; and (i) a detailed and complete explanation of why such responsive material is no longer in

your possession, custody, or control.

7. For each of the interrogatories below, in order to make the interrogatory inclusive rather than exclusive, the past tense shall be construed to include the present tense, and vice versa. Moreover, "and" and "or" as used herein are both conjunctive and disjunctive, and "any" includes the word "all" and vice versa.

8. No agreement by the SEC or its staff purporting to modify, limit, or otherwise vary these interrogatories is binding on the SEC or its staff unless confirmed or acknowledged in writing by the SEC or its staff.

## II. INTERROGATORIES

**Interrogatory No. 1:**

State the nature of your direct or indirect financial interest (such as percentage of ownership of equity or membership interests), if any, in each of the Identified Entities, as of January 1, 2014, January 1, 2015, January 1, 2016, July 1, 2016, and the date of your written response to this interrogatory.

**Interrogatory No. 2:**

Identify the title, if any, you have held as an employee, officer, manager or director for each of the Identified Entities, as of January 1, 2014, January 1, 2015, January 1, 2016, July 1, 2016, and the date of your written response to this interrogatory.

**Interrogatory No. 3:**

State (a) the total amount of Pacific Proton offering proceeds; (b) how much of the total amount of Pacific Proton offering proceeds came in the form of, or were designated as or considered "Capital Contributions," as that term is defined and described in the Pacific Proton offering memorandum; and (c) how much of the total amount of Pacific Proton offering proceeds came in the form of, or were designated as or considered "Administrative Fees," as that term is defined and described in the Pacific Proton offering memorandum.

**<u>Interrogatory No. 4</u>:**

State the total amount of Pacific Proton offering proceeds that were distributed or transferred, directly or indirectly, to (a) you, (b) your spouse, (c) Wenli Yao or (d) your children.

**<u>Interrogatory No. 5</u>:**

State the total amount of Pacific Proton offering proceeds that were distributed or transferred, directly or indirectly, to (a) Overseas Chinese, (b) one or more of the UDG Entities or (c) Delsk.

**<u>Interrogatory No. 6</u>:**

State the total amount of Pacific Proton offering proceeds that were expended or otherwise used to develop, construct, manage or operate the cancer treatment facility described in the Pacific Proton offering memorandum.

**<u>Interrogatory No. 7</u>:**

State the total amount of Pacific Proton offering proceeds that you caused to be transferred, directly or indirectly, to accounts held outside of the United States.

**<u>Interrogatory No. 8</u>:**

State whether all of the Pacific Proton offering proceeds were expended or otherwise used in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum. If the answer is in the affirmative, explain how that was the case.

**<u>Interrogatory No. 9</u>:**

State whether you, your spouse or Wenli Yao currently has or used to have a financial interest, whether through the ownership of voting securities, by contract or otherwise, in any of the UDG Entities. If the answer is that you, your spouse or Wenli Yao had or has no such financial interest, explain how that is or was the case; if the answer is that you, your spouse or Wenli Yao has or had such financial interest, identify the time period and the nature of those interests.

**<u>Interrogatory No. 10</u>:**

State whether you, your spouse or Wenli Yao currently has or used to have any control over any of the UDG Entities. If the answer is that you, your spouse or Wenli Yao has or had no such control, explain how that is or was the case; if the answer is that you, your spouse or Wenli Yao has or had such financial interest, identify the time period and the nature of that control.

**<u>Interrogatory No. 11</u>:**

State whether you intended that the Pacific Proton offering proceeds would be used in a manner inconsistent with the terms and disclosures of the Pacific Proton offering memorandum, and if so, approximately when you formed that intent.

**<u>Interrogatory No. 12</u>:**

State whether you intended to disclose to investors investing in the Pacific Proton offering that the Pacific Proton offering proceeds would not be expended or otherwise used in a manner consistent with the terms and disclosures of the Pacific Proton offering memorandum, and if so, approximately when you formed that intent.

**<u>Interrogatory No. 13</u>:**

State how the full amount of Pacific Proton offering proceeds were disbursed and, in doing so, identify the date of each disbursement, the amount of the disbursement and the recipient of the disbursement.

**<u>Interrogatory No. 14</u>:**

State whether you have the ability or financial means to cause the sum of $26,967,818.00 to be transferred to the account of the Court-appointed Monitor in this case, as set forth in the "Repatriation Order" provision, section VIII, of the Amended and Restated Injunction dated and entered October 17, 2016 in this case (Dkt. No. 179). If your answer is no, identify all facts and evidence supporting that assertion.

**<u>Interrogatory No. 15</u>:**

(a) State whether you can cause Overseas Chinese to repatriate the Pacific

Proton offering proceeds that it received. If your answer is no, identify all facts and evidence supporting that assertion.

(b) State whether you can cause one or more of the UDG Entities to repatriate the Pacific Proton offering proceeds that any of them received. If your answer is no, identify all facts and evidence supporting that assertion.

**Interrogatory No. 16:**

Identify all documents or communications that you contend demonstrate (a) that you did not defraud any investors in the Pacific Proton offering, (b) that you did not misappropriate any Pacific Proton offering proceeds, (c) that the allegations in the SEC's complaint in this action are not true, or (d) that you do not have the ability or financial means to satisfy a potential monetary judgment in this case or the Repatriation Order referenced in Interrogatory No. 14 above.

**Interrogatory No. 17:**

Identify all documents or communications that you contend demonstrate (a) that you did not defraud any investors in the Pacific Proton offering, (b) that you did not misappropriate any Pacific Proton offering proceeds, (c) that that you did not obtain money by means of false statements made to the investors in the Pacific Proton offering, (d) that the allegations in the SEC's complaint in this action are not true, or (e) that you do not have the ability or financial means to satisfy a potential monetary judgment in this case or the Repatriation Order referenced in Interrogatory No. 14 above.

**Interrogatory No. 18:**

Identify all financial accounts of every nature (including, but not limited, to checking, savings, trust, money market, brokerage, investment, securities and other financial accounts) held in your name or in which you have any direct or indirect beneficial interest, and for each such account, identify: (a) the financial institution or brokerage firm; (b) the address of the branch where the account is held; (c) the account number; and (d) the type of account.

Dated: October 19, 2016

*/s/ John W. Berry*

John W. Berry
Attorney for Plaintiff
Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 19, 2016, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S FIRST SET OF INTERROGATORIES TO DEFENDANT XIN (LISA) WANG** on all the parties to this action addressed as stated on the attached service list:

☒ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 19, 2016

*/s/ Joseph Law*
Joseph Law

***SEC v. Liu et al.***
**United States District Court—Central District of California**
**Case No. SACV16-00974-CJC (AGRx)**

**SERVICE LIST**

*Counsel for Defendants Charles C. Liu and Xin Wang a/k/a Lisa Wang*:

Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

*Defendants Pacific Proton Therapy Regional Center, LLC and Beverly Proton Center, LLC:*

(*on counsel for Charles C. Liu¸ the controlling shareholder of each*)
Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

(*on Charles C. Liu¸ controlling shareholder of each*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677

Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

*Defendant Pacific Proton EB-5 Fund, LLC*:

(*on the registered agent*)
c/o Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

*(on Charles C. Liu¸ controlling shareholder of the manager*)
c/o Charles C. Liu
[redacted]
Laguna Niguel, CA 92677
Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

# Exhibit 8

# U.S. Securities and Exchange Commission

# Division of Enforcement

# Prejudgment Interest Report

## Liu and Wang Prejudgment Interest

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| Violation Amount | | | | $26,733,018.81 |
| 05/01/2016-05/31/2016 | 4% | 0.33% | $89,110.06 | $26,822,128.87 |

| Prejudgment Violation Range | Quarter Interest Total | Prejudgment Total |
|---|---|---|
| **05/01/2016-05/31/2016** | **$89,110.06** | **$26,822,128.87** |

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On January 4, 2017, I caused to be served the document entitled **DECLARATION OF GARY Y. LEUNG IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS LIU AND WANG** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: January 4, 2017

*/s/ Gary Y. Leung*
Gary Y. Leung

***SEC v. Liu et al.***
**United States District Court—Central District of California**
**Case No. SACV16-00974-CJC (AGRx)**

**SERVICE LIST**

*Counsel for Defendants Charles C. Liu and Xin Wang a/k/a Lisa Wang*:

Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

*Defendants Pacific Proton Therapy Regional Center, LLC and Beverly Proton Center, LLC:*

(*on counsel for Charles C. Liu, the controlling shareholder of each*)
Hervé Gouraige, Esq.
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

(*on Charles C. Liu, controlling shareholder of each*)
c/o Charles C. Liu
[redacted]

[redacted]
Beijing, China 100125Email: charlesliul26@gmail.com
Email: charlesliu@me.com
Email: liu@pptus.com

*Defendant Pacific Proton EB-5 Fund, LLC*:

*(on Charles C. Liu, controlling shareholder of the manager)*
c/o Charles C. Liu
[redacted]
Beijing, China 100125