DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
PETER A. GRIFFIN (BAR NO. 306201)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mfarrell@allenmatkins.com
        pgriffin@allenmatkins.com

Attorneys for Receiver
MICHAEL A. GRASSMUECK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>       v.<br><br>CHARLES C. LIU; XIN WANG a/k/a LISA WANG; PACIFIC PROTON THERAPY REGIONAL CENTER, LLC; PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,<br><br>              Defendants. | Case No. SACV16-00974-CJC (AGRx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER TERMINATING RECEIVERSHIP; DISCHARGING AND RELEASING RECEIVER UPON COMPLETION OF FINAL CLOSING TASKS; AND GRANTING AUTHORITY TO COMPENSATE THE RECEIVER AND HIS PROFESSIONALS<br><br>[Notice of Motion and Motion; Declaration of Michael A. Grassmueck; Declaration of Michael R. Farrell; Declaration of Ira J. Kurzban; and [Proposed] Order filed concurrently herewith]<br><br>Date:   August 14, 2017<br>Time:   1:30 p.m.<br>Ctrm:   9B<br>Judge:  Hon. Cormac J. Carney |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND .............................................................................2

   A.  The Commission's Complaint, the Asset Freeze, and the Appointment of the Receiver ..............................................................2

   B.  The Receiver's Activities and Conclusions............................................3

III. FINAL CLOSING TASKS .................................................................................5

   A.  Preparation and Filing of the Receivership Entities' Tax Returns .....................................................................................................5

   B.  Entry of a Consent Judgment Against the Receivership Entities.....................................................................................................6

   C.  Turnover of Documents and Equipment.................................................6

   D.  Payment of Fees and Costs of Receiver and His Professionals ...........................................................................................6

   E.  Final Accounting......................................................................................7

IV. THE COURT MAY TERMINATE THE RECEIVERSHIP, DISCHARGE AND RELEASE THE RECEIVER, AND ORDER OTHER EQUITABLE RELIEF ....................................................7

   A.  Approval to Terminate the Receivership ................................................7

   B.  Approval of Invoices and Anticipated Fees and Expenses....................8

V.  CONCLUSION ..................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*First Empire Bank-New York v. FDIC*,
    572 F.2d 1361 (9th Cir. 1978) .......................................................................... 8

*Gaskill v. Gordon*,
    27 F.3d 248 (7th Cir. 1994) .............................................................................. 8

*In re Imperial 400 Nat'l, Inc.*,
    432 F.2d 232 (3d Cir. 1970) ............................................................................. 9

*SEC v. Elliot*,
    953 F.2d 1560 (11th Cir. 1992)
    (rev'd in part on other grounds, 998 F.2d 922 (11th Cit. 1993) ..................... 8

*SEC v. Hardy*,
    803 F.2d 1034 (9th Cir. 1986) .......................................................................... 8

*SEC v. W.L. Moody & Co., Bankers (Unincorporated)*,
    374 F. Supp. 465 (S.D. Tex. 1974) ................................................................... 9

*States v. Code Prods. Corp.*,
    362 F.2d 669 (3d Cir. 1966) ............................................................................. 9

# MEMORANDUM OF POINTS AND AUTHORITIES

Michael A. Grassmueck, the Court-appointed Receiver ("Receiver") for Pacific Proton Therapy Regional Center, LLC ("Pacific Proton"), Pacific Proton EB-5 Fund, LLC ("EB-5 Fund"), and Beverly Proton Center, LLC f/k/a Los Angeles County Proton Therapy, LLC ("Beverly Proton") (collectively, the "Receivership Entities"), seeks an order from this Court terminating the instant receivership, discharging and releasing the Receiver, and for other related relief.

## I. INTRODUCTION

The Receiver respectfully requests the Court discharge the Receiver and terminate the receivership, effective upon the following: (1) Preparation and filing of tax returns for the Receivership Entities; (2) Entry of a consent judgment against the Receivership Entities; (3) Turn-over of business records and equipment to Plaintiff Securities and Exchange Commission ("Commission"); (4) Payment of the fees and costs of the Receiver and his Professionals[1]; and (5) Filing of a declaration from the Receiver confirming completion of these tasks and attaching a final accounting for the estate ("Estate") of the Receivership Entities (collectively, the "Final Closing Tasks"). The Receiver anticipates completing the Final Closing Tasks within 60-90 days of the entry of an order on this Motion.[2]

Aside from the Final Closing Tasks, the Receiver has fulfilled his responsibilities as set forth in this Court's February 6, 2017 Order Appointing Receiver and Terminating Monitorship ("Appointment Order"). Further, as detailed in the Receiver's Report and Recommendation (the "Receiver Report") (Dkt.

---

[1] The Receiver, his attorneys (general counsel Allen Matkins Leck Gamble Mallory & Natsis LLP, and immigration counsel Kurzban Kurzban, et al.), his tax accountant, Peterson Sullivan LLP, and his forensic accountant, Financial Forensics, are referred to herein, collectively, as the "Receiver and his Professionals."

[2] As detailed below, the completion of certain tasks will require time and/or the cooperation of others. For example, the Receiver must obtain from the former accountants for the Receivership Entities all relevant tax documents, which he has sought for two months, before he can prepare and file tax returns. Also, entry of a consent judgment requires approval by the Commission.

No. 244), the Receiver, in his reasonable business judgment, has determined that the additional cost of continuing the instant receivership is not justified, given the difficulties, uncertainties and costs of pursuing completion of the proton therapy project, and the uncertainty of recovery and lack of financial resources to further investigate, pursue or recover additional assets.

## II.  FACTUAL BACKGROUND

### A.  The Commission's Complaint, the Asset Freeze, and the Appointment of the Receiver

On May 26, 2016, the Commission commenced an action against the Receivership Entities and Defendants Charles C. Liu ("Liu") and Xin Wang a/k/a Lisa Wang ("Wang") (collectively, with the Receivership Entities, "Defendants") for exploiting the EB-5 investment and immigration program to defraud investors. (*See* Dkt. No. 1.) The Commission alleged the Defendants misappropriated or diverted approximately $17.4 million of investor funds. (*Id.*)

In conjunction with filing its Complaint, on May 26, 2016, the Commission filed an *Ex Parte* Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; and (4) Prohibiting the Destruction of Documents (the "*Ex Parte* Application"). (*See* Dkt. No. 4.) The Commission sought, among other things, a freeze of the Defendants' assets to preserve them for possible restitution to injured investors. (*Id.*) On July 1, 2016, the Commission filed its Motion for the Appointment of a Monitor ("Motion for Monitor"), seeking the appointment of a temporary monitor to take specific actions as to the Receivership Entities. (*See* Dkt. No. 63.)

On May 31, 2016, the Court granted the *Ex Parte* Application and entered a temporary restraining order. (*See* Dkt. No. 14). The Court held its Show Cause hearing on July 11, 2016, where it also heard the Motion for Monitor. Finding good

cause existed, the Court entered the Preliminary Injunction and appointed Michael A. Grassmueck as monitor for the Receivership Entities. (*See* Dkt. Nos. 76, 79.)

On January 4, 2017, the Commission filed its Motion for Order Appointing Receiver and Terminating Monitorship, requesting that the Court convert the monitorship to an equitable receivership and appoint Michael A. Grassmueck as receiver. (*See* Dkt. No. 202.) The Court granted the motion and appointed Michael A. Grassmueck as permanent receiver for the Receivership Entities on February 6, 2017 ("Appointment Order"). (*See* Dkt. No. 219.)

Pursuant to the Appointment Order and the law governing federal equity receivers, the Receiver's responsibilities included: (1) assuming control over the Receivership Entities and their assets (the "Receivership Assets"); (2) investigating the business and financial activities of the Receivership Entities, locating any recoverable Receivership Assets, and assessing the viability of pursuing such assets; and (3) employing appropriate professionals to assist with his duties. (*See* concurrently filed Declaration of Michael A. Grassmueck ("Grassmueck Decl."), ¶ 3.)

### B. The Receiver's Activities and Conclusions

Since the Receiver's appointment, the Receiver has (1) taken physical custody and control of all the Receivership Entities' available records and known, reasonably recoverable Receivership Assets, including their business equipment and computers; and (2) investigated and analyzed the assets and operations of the Receivership Entities. (Grassmueck Decl., ¶ 4.) The Receiver's previous filings, including the Receiver Report, detail the work performed by the Receiver and his Professionals. Below is a short summary of the Receiver's work and conclusions:

- The Receiver, with the assistance of counsel, took steps on behalf of Pacific Proton to preserve its status as an approved regional center designated by the United States Citizenship & Immigration Services

("USCIS"), including the preparation of documents to appeal the termination of such status;

- The Receiver's team worked extensively with the Commission and defense counsel to negotiate and document a potential settlement that, if consummated, would have given the Receiver the potential to either (1) complete the project through a new transaction with third parties, or (2) return a substantial portion of investors' funds that had been diverted. Ultimately, Liu and Wang did not fund the settlement;

- In conjunction with the settlement discussions, the Receiver explored potential transactions with Dr. Thropay, a partner of Liu and owner of the property on which the project was to be built, and interested party Delsk Business Co. Ltd. ("Delsk"). The Receiver also assessed the feasibility of completing the project after the settlement failed, including further discussions with representatives of Dr. Thropay and Delsk. Ultimately, the Receiver determined that the difficulties, uncertainties and costs of pursuing completion of the project outweighed the potential financial benefits;

- The Receiver and his counsel addressed a variety of additional legal issues, including addressing Dr. Thropay's state court unlawful detainer action and his efforts to regain possession of the property at issue, as well as the interpleading of funds by a law firm;

- The Receiver sought all accounting records, financial statements, and tax returns for the Receivership Entities. The Receiver has been in communication with the former accountants for the Receivership Entities, Marcum LLP ("Marcum"), and expects to receive prior tax returns and supporting documentation shortly;

- The Receiver took control over the financial assets of the Receivership Entities. To that end, the Receiver contacted banks and other financial

institutions holding funds of the Receivership Entities and took control of the accounts and funds on deposit. As of the date of this filing, after payment of Court-approved expenses related to the monitorship, the aggregate amount of recovered cash in the Receiver's custody is approximately $214,000;

- The Receiver and his team focused their efforts on a closer examination of the costs and the likelihood of success involved in the potential pursuit of several assets, including the potential pursuit of Wang's ownership interest in real property in California; the pursuit of diverted funds that were transferred by Liu and Wang to foreign accounts; a potential claim against Mevion Medical Systems, Inc. for the return of a deposit; and the potential pursuit of recovery from overseas agents who had been paid millions of dollars from investor funds. Considering, among other things, the cost of pursuing the claims and recoveries, the uncertainty of recovery, and the lack of receivership resources to support extended investigation and litigation, the Receiver determined that continuing the receivership to pursue assets presented a significant risk of administrative insolvency.

(Grassmueck Decl., ¶¶ 5-11.)

## III.   FINAL CLOSING TASKS

The Receiver proposes to complete the below Final Closing Tasks in order to terminate and wind-down the receivership:

### A.   Preparation and Filing of the Receivership Entities' Tax Returns

At present, the Receiver has been unable to obtain all accounting records, financial statements, and tax returns for the Receivership Entities needed for the preparation of tax returns. For over two months, the Receiver has sought the turnover of prior tax returns and supporting documents from Marcum, but he has been met with resistance and delay. Marcum recently agreed to provide the

information subject to the execution of certain consents/releases, which are being negotiated. If the Receiver meets further resistance, he will subpoena the records from Marcum. Once the necessary information is obtained, the Receiver's team will prepare and file the appropriate tax returns expeditiously.

### B.  Entry of a Consent Judgment Against the Receivership Entities

In order to resolve their liability for the Commission's claims for relief, the Commission has requested that the Receivership Entities consent to entry of judgment. The Receiver agrees that entry of a consent judgment is appropriate. Counsel for the Commission and the Receiver have met and conferred and agreed on the terms of a proposed consent judgment, which is subject to approval by the full Commission, which is expected to occur within 60-90 days.

### C.  Turnover of Documents and Equipment

The Receiver is in possession of the Receivership Entities' business records and equipment, including electronic data and computers. The Receiver seeks approval to turn over all such business records and equipment to the Commission. Given the Court's entry of summary judgment against Liu and Wang, and such defendants' appeal of the Court's summary judgment order to the Ninth Circuit Court of Appeals, the Receiver believes the business records and equipment of the Receivership Entities should be preserved during the pendency of the appeal. In light of the Receiver's proposed turnover of remaining Receivership Entity funds to the Commission as partial payment of the consent judgment against the Receivership Entities, the Receiver believes that the Commission has the resources to preserve the records and equipment and is the appropriate party to do so.

### D.  Payment of Fees and Costs of Receiver and His Professionals

At present, the aggregate amount of recovered cash in the Receiver's custody is approximately $214,000. The Receiver and his Professionals have submitted, as exhibits to the concurrently filed declarations, invoices reflecting their fees and

expenses incurred from February 6, 2017 to June 30, 2017[3] in the total amount of $120,770.38.  The Receiver proposes to pay himself and his Professionals out of the Receivership Assets.  The Receiver further requests authority to pay himself and his Professionals for anticipated costs and expenses they have and will incur in connection with winding down the receivership, including assisting the tax accountants with preparation of tax returns, as well as preparation of the final accounting and report, which costs and expenses the Receiver anticipates totaling approximately $10,000.[4]

### E. Final Accounting

Upon completion of the foregoing tasks, the Receiver will file a Declaration with this Court reflecting his final accounting for the case and confirming the completion of such tasks.  The Receiver requests that upon the Court's review of that filing, and in the event the Court has no questions regarding the same, that an order be entered closing the matter and discharging the Receiver from his duties under the Appointment Order.  Since the Receiver intends to enter into a consent judgment on behalf of the Receivership Entities, he proposes that the discharge order provide that any funds remaining in the receivership at the time of discharge be paid to the Commission or other entity as set forth in the consent judgment.

## IV. THE COURT MAY TERMINATE THE RECEIVERSHIP, DISCHARGE AND RELEASE THE RECEIVER, AND ORDER OTHER EQUITABLE RELIEF

### A. Approval to Terminate the Receivership

Federal district courts presiding over federal equity receiverships have broad power and wide discretion in the supervision of receiverships.  *SEC v. Hardy*, 803

---

[3] The invoices of the Receiver's immigration counsel, Kurzban Kurzban et al., reflect fees and expenses incurred from February 22, 2017 through July 7, 2017.

[4] This estimate reflects the anticipated fees and expenses of the Receiver and his Professionals from July 1, 2017 forward, assuming the relief requested in the Motion is granted and there are no significant disputes with the individual defendants.

1084846.01/LA   -7-   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER TERMINATING RECEIVERSHIP

F.2d 1034, 1037-38 (9th Cir. 1986). Their power and discretion includes the authority to "make rules which are practicable as well as equitable." *Id.* at 1039 (*quoting First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)).

As of the date of this filing, the Receiver has duly fulfilled his responsibilities under the Appointment Order. Specifically, he has diligently investigated and analyzed the assets and operations of the Receivership Entities, and has taken possession and control of all known, reasonably recoverable Receivership Assets.

As reflected above and in the Receiver's previous filings, including the Receiver Report, the Receiver has determined in his reasonable business judgment, and in weighing the cost of additional investigation and litigation against the potential benefit to the Estate, that the benefits of continuing the instant receivership do not outweigh the cost and may render the receivership administratively insolvent.

Therefore, the Receiver respectfully requests that this Court end the receivership and discharge the Receiver and his Professionals upon completion of the Final Closing Tasks.

### B.     Approval of Invoices and Anticipated Fees and Expenses

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver and his Professionals. Decisions regarding the timing and amount of an award of fees and costs to the Receiver and his Professionals are committed to the sound discretion of the Court. *See SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cit. 1993)). In allowing fees, a court should consider "the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receiver[], the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the

1  result obtained." *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir.
2  1966) (internal quotation marks omitted).  In practical terms, receiver and
3  professional compensation thus ultimately rests upon the result of an equitable,
4  multi-factor balancing test involving the "economy of administration, the burden
5  that the estate may be able to bear, the amount of time required, although not
6  necessarily expended, and the overall value of the services to the estate." *In re*
7  *Imperial 400 Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970).  Regardless of how this
8  balancing test is formulated, no single factor is determinative, and "a reasonable fee
9  is based [upon] all circumstances surrounding the receivership." *SEC v. W.L. Moody*
10  *& Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 480 (S.D. Tex. 1974).

11       Here, the Appointment Order specifically authorized the Receiver to carry
12  out, among other things, his duties to conduct such investigation and discovery as
13  necessary to locate and account for all Receivership Assets and liabilities, to
14  monitor and oversee the activities of the Receivership Entities, and to assess the
15  viability of pursuing recovery of additional assets.  As reflected in their invoices
16  attached to the concurrently filed declarations, and as described in more detail in
17  section II.B. above and the declarations, the Receiver and his Professionals have
18  diligently carried out these duties.

19       The Receiver has reviewed his invoices and those of his Professionals and
20  believes the entries therein are fair and reasonable, and that the Estate benefited
21  from the services provided.  (Grassmueck Decl., ¶ 13.)  Therefore, as part of
22  winding down the receivership, the Receiver seeks approval of the fees and
23  expenses of the Receiver and his Professionals, as follows:

|  | Fees | Expenses | Total Award |
|---|---|---|---|
| Michael A. Grassmueck, Receiver | $10,020.50 | $778.05 | $10,798.55 |
| Allen Matkins Leck Gamble Mallory & | $79,466.85 | $1,288.87 | $80,755.72 |

|  | Fees | Expenses | Total Award |
|---|---|---|---|
| Natsis LLP, General Counsel | | | |
| Kurzban Kurzban, et al., Immigration Counsel | $14,814.50 | $1,456.61 | $16,271.11 |
| Peterson Sullivan LLP, Tax Accountant | $12,000 | $0 | $12,000 |
| Financial Forensics, Forensic Accountant | $945.00 | $0 | $945.00 |

The Receiver further requests authority to pay himself and his Professionals for additional fees and expenses they have and will incur in connection with winding down the receivership, which costs and expenses the Receiver anticipates will total approximately $10,000.

## V.   CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that this Court grant the relief requested in the Motion, and for such other relief as the Court deems just and necessary.

Dated: July 11, 2017

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO
MICHAEL R. FARRELL
PETER A. GRIFFIN

By:   *Michael R. Farrell*
    MICHAEL R. FARRELL
    Attorneys for Receiver
    MICHAEL A. GRASSMUECK