# EXHIBIT 1

*Securities and Exchange Commission*

*v.*

*Charles C. Liu, Xin Wang a/k/a Lisa Wang, et al.*

Expert Report of Carlyn Irwin

Carlyn Irwin

Senior Advisor

Cornerstone Research

March 26, 2021

Exhibit 1 Page 9

# Table of Contents

I.     Qualifications ........................................................................................................1

II.    Background and Scope of Assignment ..................................................................2

    A.     Relevant Entities ........................................................................................2

    B.     EB-5 Immigrant Investor Program .............................................................4

    C.     The PPEB5 Fund Offering ..........................................................................4

    D.     Scope of Assignment ..................................................................................5

III.   Bases for Opinion ..................................................................................................6

IV.    Summary of Findings and Conclusions ................................................................8

V.     Represented Flow of Funds ...................................................................................9

VI.    Analysis of Actual Flow of Funds .......................................................................11

    A.     Procedures Performed ...............................................................................12

    B.     Review of General Flow of Investor Deposits ..........................................14

    C.     Analysis of Cash Outflows .......................................................................15

        1.     Offering Expenses .........................................................................15

        2.     Business Expenditures ...................................................................17

        3.     Individual Defendants' Pecuniary Gains .......................................20

VII.   Conclusions ..........................................................................................................24

Exhibit 1 Page 10

## I.      Qualifications

1.      I am a senior advisor with Cornerstone Research, an economic and financial consulting firm specializing in commercial litigation.  As a litigation consultant, I have been retained on hundreds of matters to analyze financial, economic, and accounting issues, prepare valuations and damages claims, and conduct financial forensic analysis.  In doing so, I have worked on matters involving allegations of fraud, breach of contract, unfair business competition, and false advertising, as well as intellectual property disputes, including patents, copyrights, trademarks, and trade secrets.  In addition, I have been retained by clients to analyze data to reconstruct financial records, estimate profitability, and assess the consistency and reliability of data.  In certain of these matters, I have been retained as an expert witness.  Relevant to this matter, I have testified and previously qualified as an expert regarding forensic accounting, fraud investigations, and factors related to alter ego.  I have provided expert witness testimony in federal and state courts, international arbitration, and other venues.

2.      Prior to joining Cornerstone Research, I was employed as a litigation consultant with the accounting firm of PricewaterhouseCoopers (formerly Price Waterhouse) from 1994 to 2002. From 1992 to 1994, I served as the assistant controller for a law firm where I was primarily responsible for, among other things, maintaining the general ledger, producing the firm's financial statements, and assisting the executive committee with strategic analyses.

3.      I hold a Bachelor of Arts degree from the University of California at Santa Barbara where I graduated with honors.  I have an MBA from the University of Southern California.  I am also a Certified Public Accountant ("CPA") and a Certified Fraud Examiner ("CFE"), and I am Certified in Financial Forensics, Accredited in Business Valuation, and Certified in Entity and Intangible Valuations by the American Institute of Certified Public Accountants.  A current copy of my curriculum vitae, including a list of my prior testimony, is attached as **Appendix A.**

4.      With respect to this matter, Cornerstone Research shall be compensated at $800 per hour for my time spent in preparation and support of my opinions, and Cornerstone Research will also be compensated for my colleagues who worked on this matter under my direction.  Neither my compensation nor my colleagues' compensation is contingent or based on the content of my opinions or the outcome of this matter.

Exhibit 1 Page 11

## II.     Background and Scope of Assignment

5.      I have been retained by counsel for the Securities and Exchange Commission ("SEC") to provide expert testimony in the matter *Securities and Exchange Commission v. Charles C. Liu, Xin Wang a/k/a Lisa Wang, et al.*

### A.     Relevant Entities

6.      Relevant parties (collectively the "Defendants") to this matter include the following:

a.   **Pacific Proton EB-5 Fund, LLC ("PPEB5 Fund")**:[1]  a Delaware limited liability company formed in November 2010 to serve as a commercial enterprise in an EB-5 Immigrant Investor Program ("EB-5 Program") project offering.[2]  The PPEB5 Fund was to offer units of limited liability company membership interests to qualified non-U.S. citizens seeking permanent resident status in the United States through the EB-5 Program.[3]  Offering proceeds were to be invested in the construction and operation of a proton therapy center.[4]

b.   **Pacific Proton Therapy Regional Center, LLC ("Pacific Proton Regional Center")**:[5]  the regional center authorized by U.S. Citizenship and Immigration Services ("USCIS") under the EB-5 Program to establish and solicit investment from foreign investors.  Pacific Proton Regional Center was to be the sponsor and manager of the PPEB5 Fund.[6]

c.   **Beverly Proton Center, LLC ("Beverly Proton")**, formerly known as Los Angeles County Proton Therapy, LLC:[7]  the company sponsored by Pacific

---

[1] Complaint, *Securities and Exchange Commission v. Charles C. Liu, Xin Wang a/k/a Lisa Wang, et al.*, May 26, 2016 ("Complaint"), ¶ 12.
[2] Government Exhibit 5, p. 18.
[3] Government Exhibit 5, p. 18.
[4] Government Exhibit 5, p. 18.
[5] Complaint, ¶ 11.
[6] Government Exhibit 5, p. 6.
[7] Complaint, ¶13.  *See also* Deposition Exhibit 120, p. 1.

Exhibit 1 Page 12

Proton Regional Center to build and operate the proton therapy center (I collectively refer to PPEB5 Fund, Pacific Proton Regional Center, and Beverly Proton as the "Corporate Defendants").[8]

d. **Charles Liu**:[9] a member of the Pacific Proton Regional Center and president and one owner of Beverly Proton.  Mr. Liu controlled the PPEB5 Fund, the Pacific Proton Regional Center, and Beverly Proton.

e. **Xin Wang**:[10] Mr. Liu's spouse (I collectively refer to Mr. Liu and Ms. Wang as the "Individual Defendants").[11]

7. Other relevant parties include:

a. **United Damei Group ("UDG"), Delsk, and Overseas Chinese Immigration Corp. ("Overseas Chinese")**:  China-based companies that acted as brokers and helped market the PPEB5 Fund offering to foreign investors.[12]

b. **United MPH Ventures LLC, MP Medical Hotel, SC MPH Management, and SC MPH Fund** (collectively "Liu Affiliates"):  other projects and entities controlled by Mr. Liu.[13]

c. **Beverly Hospital and City of Hope:**  third-parties involved in the projects of the Liu Affiliates.

---

[8] Government Exhibit 5, p. 6.
[9] Complaint, ¶ 9.
[10] Complaint, ¶ 10.
[11] Deposition of Charles Liu, February 24, 2021 ("February 2021 Charles Liu Deposition"), pp. 65:22–68:3; Deposition of Xin Wang, May 4, 2016 ("May 2016 Xin Wang Deposition"), p. 41:9–14.
[12] Deposition of Lorraine Pearson, January 21, 2021 ("January 2021 Lorraine Pearson Deposition"), pp. 29:19–30:4; Deposition of Charles Liu, March 23, 2016 ("March 2016 Charles Liu Deposition"), pp. 85:12–86:12, 140:16–141:5, 145:12–24.
[13] March 2016 Charles Liu Deposition, pp. 12:15–13:15, 14:23–17:16, 18:6–20:25, 22:6–16.

Exhibit 1 Page 13

## B.   EB-5 Immigrant Investor Program

8.    The EB-5 Program was created by Congress in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors.[14]   Under the EB-5 Program, foreign investors may qualify for permanent residence by investing through regional centers designated by USCIS based on proposals for promoting economic growth.[15]   The USCIS requires that a qualifying EB-5 investment place capital "at risk for the purpose of generating a return on the capital placed at risk."[16]   Moreover, an EB-5 applicant must prove to the USCIS that an investment in fact led to the creation of at least ten full-time jobs.[17]

## C.   The PPEB5 Fund Offering

9.    The objectives of the PPEB5 Fund are represented in a private offering memorandum ("POM") dated May 1, 2013 that was distributed to prospective investors as part of Mr. Liu's capital raising efforts.[18]   The PPEB5 Fund offered up to 300 units of membership interest to foreign investors at a price of $500,000 per unit.[19]   According to the POM, the resulting pool of capital contributions was to be loaned to Beverly Proton to finance the development and operation of a proton therapy center at 111 W. Beverly Boulevard, Montebello, CA 90640 (the "EB-5 Project"):

> PPEB5 will pool investor funds and make a loan of up to $150 million to Los
> Angeles County Proton Therapy, LLC ("LAPT").…  LAPT will pay interest on
> the loan at the rate of 0.25% per annum with principal due and owing 5 years
> from the date of the last advance under the loan.  LAPT will use the loan proceeds

---

[14] "About the EB-5 Visa Classification," *United States Citizenship and Immigration Services*, March 25, 2021, available at https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-the-eb-5-visa-classification (accessed March 16, 2021).

[15] "About the EB-5 Visa Classification," *United States Citizenship and Immigration Services*, March 25, 2021, available at https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-the-eb-5-visa-classification (accessed March 16, 2021).

[16] 8 C.F.R. § 204.6(j)(2).

[17] 8 U.S.C. § 1153(b)(5)(A); 8 C.F.R. § 204.6(g)(1); 8 C.F.R. § 216.6(a)(4)(iv).

[18] Government Exhibit 5; March 2016 Charles Liu Deposition, pp. 65:13–17, 69:12–23.

[19] Government Exhibit 5, p. 2.

Exhibit 1 Page 14

to partially finance the construction and operation of a proton therapy center with
commercial office space in Los Angeles County, CA (the "Project").  The proton
therapy center with office space will be located at 111 W. Beverly Boulevard,
Montebello, Los Angeles County, CA.  All Project components will be owned
and operated by LAPT.[20]

Los Angeles County Proton Therapy, LLC ("LAPT"), will develop and operate
the Los Angeles County Proton Center (the "Proton Center") at 111 W. Beverly
Boulevard, Montebello, California 90640.  The Proton Center will provide an
innovative new cancer treatment to oncology patients using proton beam
radiation.[21]

10.     The POM also set forth the manner in which investors' capital contributions were to be
used.  Specifically, the POM stated that the EB-5 Project offering proceeds were expected to be
used to finance not operating expenses, but rather the construction of the EB-5 Project, including
the purchase of equipment, and working capital and other costs.[22]  Profits of Beverly Proton were
to be used first to pay operating expenses and service debts and obligations, second to establish
any reserves required by law or deemed necessary by Beverly Proton, and last, any remaining
profit may be available for distribution to members.[23]

11.     The POM further set forth the manner in which investors' administrative fees were to be
used.  In addition to the $500,000 capital contributions, investors in the PPEB5 Fund were to pay
a $45,000 administrative fee per unit subscribed for, to the Pacific Proton Regional Center.  The
POM represented that this administrative fee would cover all "offering expenses including legal,
accounting, and administration expenses, and commissions and fees related to [the] Offering."[24]

### D.     Scope of Assignment

12.     Counsel for the SEC retained me to analyze information and data produced in this matter
related to the relevant entities and individuals.  Specifically, I have been asked to analyze
financial records and other data, and opine on:

---

[20] Government Exhibit 5, p. 18.
[21] Government Exhibit 5, p. 18.
[22] Government Exhibit 5, p. 20.
[23] Government Exhibit 5, p. 20.
[24] Government Exhibit 5, p. 6.  *See also SEC v. Liu*, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017).

Exhibit 1 Page 15

   a. Represented flow of the $500,000 capital contributions and $45,000 administrative fee by each EB-5 investor based on the POM ("Represented Flow of Funds").

   b. Actual flow of the capital contributions and administrative fee paid by each EB-5 investor, including an analysis of whether portions of the capital contributions and administrative fee differed from the Represented Flow of Funds.

   c. Business purpose and consistency with the POM from a forensic accounting perspective of the expenses incurred by the PPEB5 Fund, Pacific Proton Regional Center, and Beverly Proton.[25]

   d. Reasonable estimate of the net pecuniary gains obtained by Mr. Liu and Ms. Wang.

13.    The opinions expressed in this report and portions of the information presented in the accompanying exhibits are my opinions as of the date of this report. At the request of counsel for the SEC, I may amend or supplement this report and the accompanying exhibits as a result of developments prior to or at evidentiary hearing, including, but not limited to, the discovery of new evidence, and the testimony of other witnesses in deposition or trial.

14.    At evidentiary hearing, I anticipate using demonstratives that may include, but are not limited to, selected exhibits attached to this report, documents reviewed in connection with their preparation, enhanced graphic versions of selected exhibits attached to this report, and additional graphics illustrating concepts described in this report.

### III.    Bases for Opinion

15.    In conducting my analyses and forming my opinions, I have relied upon my education and my own professional judgment and expertise, as well as sources reasonably relied upon by experts in my field. Specifically, I have relied on deposition testimony of relevant individuals, declarations, financial data and documents, bank records, accounting records, memoranda, and

---

[25] I am not offering an opinion on the compliance to the POM from a legal perspective or offering any other legal opinions.

Exhibit 1 Page 16

other agreements.  A complete list of the information I considered is attached as **Appendix B**, including an inventory of the bank records made available to me.

16.     The American Institute of Certified Public Accountants publishes professional standards applicable to my work on this engagement.  In general, those standards require CPAs engaged in litigation services to (i) maintain integrity and objectivity; (ii) only undertake engagements that are expected to be completed with professional competence; (iii) exercise due professional care in performing the services; (iv) adequately plan and supervise the performance of the services; and (v) obtain sufficient relevant data to provide a reasonable basis for the conclusions.[26]  I have complied with these professional standards in this engagement.

17.     Similarly, the Association of Certified Fraud Examiners publishes standards of professional conduct that are applicable to this matter.  Those standards recommend that CFEs adhere to the standards of (i) integrity and objectivity; (ii) professional competence; (iii) due professional care; (iv) understanding with client or employer; (v) communication with client or employer; and (vi) confidentiality.[27]  I have also complied with these standards of professional conduct in this matter.

18.     In addition to relying on data and documents, counsel for the SEC has asked me to make the following assumptions related to my analyses and opinions:

   a.   Based on the June 22, 2020 U.S. Supreme Court decision issued in this matter, that Defendants must disgorge their "net profits from wrongdoing after deducting legitimate expenses," and that expenses which are "merely wrongful gains 'under another name'" are not "legitimate expenses."[28]

   b.   The determination of the expenses that may be deducted from the proceeds of the offering as "legitimate business expenses" should be made based on the representations made to investors in the POM.[29]

---

[26] "Statement on Standards of Forensic Service," *Forensic and Valuation Services Executive Committee*, January 1, 2020, https://future.aicpa.org/resources/download/statement-on-standards-for-forensic-services, accessed March 26, 2021.
[27] "CFE Code of Professional Standards, Section III," *Association of Certified Fraud Examiners*, November 1, 2020, https://www.acfe.com/standards/, accessed March 26, 2021.
[28] *Liu v. SEC*, 140 S. Ct. 1936 (2020).
[29] *See SEC v. Liu*, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017) (finding that defendants violated the antifraud provisions of the federal securities laws:  "[T]heir actions contravene the POM's clear delineation between appropriate uses of Capital Contributions (development and operation of the project) and Administrative Fees (commissions, fees, and marketing).").

Exhibit 1 Page 17

c.  At the time he signed Mr. Liu's employment agreement with Beverly Proton, Michael Cogswell was not an employee of Beverly Proton.  As such, the employment agreement is not enforceable.

### IV.  Summary of Findings and Conclusions

19.  As described in more detail in this report, based on my review and analysis of the information provided to me, my opinions are as follows:

a.  The Pacific Proton Regional Center did not transfer investors' capital contributions to Beverly Proton in a manner consistent with the representations made to investors in the POM.

b.  The monies deposited into the PPEB5 Fund, Pacific Proton Regional Center, and Beverly Proton accounts were not used in a manner consistent with the representations made to investors in the POM.  Specifically, I estimate that between October 2014 and April 2016:[30]

   i.  A net total of $10,954,375 was paid by the Corporate Defendants for Offering Expenses.  Of that amount only $2,210,701 may be deducted as Offering Expenses consistent with the POM.

   ii.  A net total amount of $6,105,809 was paid by the Corporate Defendants for Business Expenditures.  Of that amount, only $3,105,809 may be deducted as Business Expenditures.

   iii.  A net total of $6,749,692 was transferred from the Corporate Defendants' accounts to the Individual Defendants.  None of that amount may be deducted from receipts.

   iv.  A total amount of $2,367,167 was withdrawn from the Corporate Defendants' accounts or paid to settle the Individual Defendants' personal expenses on behalf of the Individual Defendants.  None of those outflows may be deducted from receipts.

---

[30] The PPEB5 Fund's Citibank account includes transactions that occurred in September 2013 – October 2014.  Specifically, service fees debits amounting to $1,353, and two deposits totaling $500,450, which appear to be related to an investor subscription.  *See* Citibank Account 9769 Data, SEC-CITIGROUP-E-0000087 (September 10, 2013 – March 8, 2016).

Exhibit 1 Page 18

     v.   A net amount of $210,270 was transferred to the Liu Affiliates.  None of those outflows may be deducted from receipts.

     vi.   For purposes of calculating the net pecuniary gains to the Defendants, I have reduced the $26,733,019 ordered as disgorgement by the U.S. Supreme Court,[31] by the amounts that appear to have been refunded to investors and unknown parties who made deposits and define the resulting amount as "Net Receipts."

   c.   Based on my analysis, I estimate that the net pecuniary gains of the Defendants amount to $20,222,511.

## V.     Represented Flow of Funds

20.     In this section, I describe the flow of investor funds prescribed by the POM.  In **Section VI** below, I compare the Represented Flow of Funds to the actual flow of funds as evidenced by the Defendants' bank and accounting records.

21.     The POM that was presented to investors outlined the manner in which capital contributions were to flow through to the EB-5 Project, from deposit to use.  In summary, and as illustrated in **Exhibit 1**, investment funds were to circulate as follows:

   a.   Investors were to deposit their $500,000 capital contribution per unit subscribed for into an escrow account.[32]  The funds were to be released from the escrow account to the PPEB5 Fund accounts upon the investors' filing of their I-526 petition with USCIS.[33]  I understand that the escrow agent was Atlantic Escrow

---

[31] See SEC v. Liu, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017).
[32] Government Exhibit 5, p. 2.
[33] Government Exhibit 5, p. 7.  Capital contributions were to be refunded by Pacific Proton Regional Center only if an investor's petition was denied by USCIS without possibility of cure.  *See* Government Exhibit 5, p. 7.

Exhibit 1 Page 19

Corporation and that the escrow account was the East West Bank account ending in 9509 (the "Pacific Proton Escrow Account").[34]

    b.    Upon release from the Pacific Proton Escrow Account, the capital contributions were to be transferred to the PPEB5 Fund accounts and lent to Beverly Proton to finance development and operation of the proton therapy center.[35]  I understand the PPEB5 Fund accounts were the JP Morgan Chase account ending in 1028 and the Citibank account ending in 9769 (altogether the PPEB5 Fund Accounts"),[36] and that Beverly Proton's bank account was the JP Morgan Chase account ending in 5152 (the "Beverly Proton Account').[37]

22.    In addition, the POM defined the way the monies paid by investors for administrative fees were to be used.  As illustrated in **Exhibit 2**, investors were to pay a $45,000 administrative fee per unit subscribed for directly to the Pacific Proton Regional Center, which held the JP Morgan Chase account ending in 6428 (the "Pacific Proton Regional Center Account").[38]  The administrative fee was destined "to pay for Offering Expenses, including legal, accounting and administration expenses, and commissions and fees related to [the] [o]ffering,"[39] including commissions or other fees paid to brokers, investment advisors, finders, or other parties in connection with the sale of fund units pursuant to the offering.[40]

---

[34] Declaration of Lorraine Pearson, May 26, 2016 ("May 2016 Lorraine Pearson Declaration"), pp. 1:27–2:2; East West Bank Account 9509 Data, SEC-EWB-E-0000027 (August 25, 2015 – December 9, 2015), SEC-EWB-E-0000028 (November 14, 2014 – December 31, 2015), and SEC-EWB-E-0000058 (March 16, 2016).

[35] Government Exhibit 5, pp. 7, 20.

[36] May 2016 Lorraine Pearson Declaration, p. 2:3–5; JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (October 1, 2014 – January 21, 2016) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); Citibank Account 9769 Data, SEC-CITIGROUP-E-0000087 (September 10, 2013 – March 8, 2016).

[37] May 2016 Lorraine Pearson Declaration, p. 2:6–9; JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (October 1, 2014 – January 29, 2016) and Lorraine Declaration Exhibit 9 - Bev Proton - 5152 SB710008_IR 05feb16-985LLP xls (October 1, 2014 – April 28, 2016).

[38] Government Exhibit 5, p. 6; May 2016 Lorraine Pearson Declaration, p. 2:10–13; JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (October 1, 2014 – January 26, 2016), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Declaration Exhibit 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (October 1, 2014 – April 28, 2016).

[39] Government Exhibit 5, p. 6.

[40] Government Exhibit 5, p. 8 ("PPEB5 may make offers and sales of Units directly to investors through its Manager, agents and affiliates and may engage and pay one or more brokers, investment advisors, finders or other parties commissions or other fees in connection with the sale of Units pursuant to this Offering.  Any such commissions or other fees paid in connection with the sale of Units pursuant to this Offering shall be paid only out of the proceeds of Administrative Fees.").

Exhibit 1 Page 20

## VI.    Analysis of Actual Flow of Funds

23.    Based on my examination of the bank records of the Corporate Defendants' accounts and as explained in this section, the Pacific Proton Regional Center did not transfer investors' capital contributions to Beverly Proton in a manner consistent with the representations made to investors in the POM.  In addition, the monies deposited into the PPEB5 Fund, Pacific Proton Regional Center, and Beverly Proton accounts were not used in a manner consistent with the representations made to investors in the POM.  Specifically, as further explained in this section, I estimate that between October 2014 and April 2016:[41]

    a.    A net total of $10,954,375 was paid by the Corporate Defendants for Offering Expenses.  Of that amount only $2,210,701 may be deducted as Offering Expenses consistent with the POM.

    b.    A net total amount of $6,105,809 was paid by the Corporate Defendants for Business Expenditures.  Of that amount, only $3,105,809 may be deducted as Business Expenditures.

    c.    A net total of $6,749,692 was transferred from the Corporate Defendants' accounts to the Individual Defendants.  None of that amount may be deducted from Net Receipts.

    d.    A total amount of $2,367,167 was withdrawn from the Corporate Defendants' accounts or paid to settle the Individual Defendants' personal expenses on behalf of the Individual Defendants.  None of those outflows may be deducted from Net Receipts.

    e.    A net amount of $210,270 was transferred to the Liu Affiliates.  None of those outflows may be deducted from Net Receipts.

    f.    For purposes of calculating the net pecuniary gains to the Defendants, I have also reduced the $26,733,019 ordered as disgorgement by the U.S. Supreme Court,[42]

---

[41] The PPEB5 Fund's Citibank account includes transactions that occurred in September 2013 – October 2014.  Specifically, service fees debits amounting to $1,354, and two deposits totaling $500,450, which appear to be related to an investor subscription.  *See* Citibank Account 9769 Data, SEC-CITIGROUP-E-0000087 (September 10, 2013 – March 8, 2016).
[42] See SEC v. Liu, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017).

Exhibit 1 Page 21

by the amounts that appear to have been refunded to investors and unknown parties who made deposits and define the resulting amount.

24.     Based on my analysis, I estimate that the net pecuniary gains to the Defendants amount to $20,222,511.

### A.     Procedures Performed

25.     I analyzed the Corporate Defendants' cash flows by conducting the following procedures:

    a.   Identify the deposits made by named foreign investors into the Pacific Proton Escrow Account and/or the Corporate Defendants' bank accounts, along with any refunds these investors might have received.

    b.   Determine whether capital contributions deposited by investors into the Pacific Proton Escrow Account were transferred to the PPEB5 Fund accounts.

    c.   Identify cash inflows to the Corporate Defendants' bank accounts other than from investment deposits, and categorize them based on their nature and/or source.

    d.   Identify and analyze cash outflows from the Corporate Defendants' bank accounts other than for refunds of investments, and categorize them based on their nature as follows:

        i.   Cash outflows representing offering expenses ("Offering Expenses");

        ii.   Cash outflows representing capital and operating expenditures ("Business Expenditures");

        iii.   Payments and transfers benefitting the Individual Defendants, including direct transfers and withdrawals, payments of personal expenses, and transfers to other companies or projects controlled by Mr. Liu (e.g., United MPH Ventures LLC, Beverly Hospital Management, MP Medical Hotel, SC MPH Management, and SC MPH Fund).

    e.   Estimate the portion of these cash outflows, if any, that deviates from the representations made in the POM as follows:

        i.   Identify Offering Expenses in excess of the total administrative fees received from investors, if any.

Exhibit 1 Page 22

    ii.   Identify Business Expenditures that deviate from those provided for in the
POM.

    iii.   Identify pecuniary gains to the Individual Defendants such as transfers to
their personal accounts in excess of compensation provided for in their
employment agreements, withdrawals, payments of personal expenses,
and transfers to the Liu Affiliates.

26.      In performing the aforementioned procedures, I relied on three main sources.  First, I
compiled available bank records for the Corporate Defendants and the Pacific Proton Escrow
Account and examined the transaction descriptions included therein.[43]  Second, I considered the
payee information compiled from bank records.[44]  Third, I examined the general ledger and
QuickBooks reports prepared by Marcum LLP ("Marcum"), the Defendants' accountant, as part
of a bookkeeping engagement,[45] to identify payee information and obtain an understanding of
how Mr. Liu told Marcum to classify cash outlays, particularly when the information contained
in the bank records was insufficient to determine the nature of the cash outflows.  Generally, I
have assumed, for purposes of the calculations set forth above, that Marcum's classification of
cash outlays was accurate.  I note that Marcum prepared the general ledger and QuickBooks
reports based on Mr. Liu's directions and the notes featuring on the records and "check stubs"
provided to it,[46] and did not exercise any judgment as to the appropriateness of the
classification.[47]  As such, I assume that the accuracy and reliability of Marcum LLP's general

---

[43] I was provided the following bank statement data spanning September 2013 through April 2016:  JP Morgan Chase Account
1028 Data, SEC-JPMC-E-0000002 (October 1, 2014 – January 21, 2016) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP
Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (October 1, 2014 – January 29, 2016) and Lorraine Declaration
Exhibit 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP xls (October 1, 2014 – April 28, 2016); JP Morgan Chase
Account 6428 Data,  SEC-JPMC-E-0000001 (October 1, 2014 – January 26, 2016), SEC-JPMCB-P-0000771–807 (2/1/16–
3/29/16), and Lorraine Declaration Exhibit 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-
980LLP.xls (October 1, 2014 – April 28, 2016); Citibank Account 9769 Data, SEC-CITIGROUP-E-0000087 (September 10,
2013 – March 8, 2016); East West Bank Account 9509 Data, SEC-EWB-E-0000027 (August 25, 2015  – December 9, 2015),
SEC-EWB-E-0000028 (November 14, 2014 – December 31, 2015), and SEC-EWB-E-0000058 (March 16, 2016).
[44] In addition to payee information obtained from analysis provided by Marcum LLP, payee information was compared to the
exhibits to the May 2016 Lorraine Pearson Declaration.  I understand that Ms. Lorraine Pearson performed work in this matter on
behalf of counsel for SEC to "review and summarize the Defendants' business records, including bank records, to trace cash
flows to and from various…bank accounts."  See January 2021 Lorraine Pearson Deposition, p. 17:17–22.  See also May 2016
Lorraine Pearson Declaration, p. 1:21–26.
[45] Deposition of Trang Lam, March 9, 2021 ("March 2021 Trang Lam Deposition"), pp. 22:23–23:5; February 2021 Charles Liu
Deposition, p. 129:5–10; Deposition Exhibit 60.
[46] March 2021 Trang Lam Deposition, pp. 38:14–39:12.
[47] March 2021 Trang Lam Deposition, pp. 27:25–28:16, 29:21–30:1, 33:25–34:20.

Exhibit 1 Page 23

ledger were dependent on information provided by Mr. Liu.  I therefore reserve the right to revise my analysis and conclusions should additional information become available to me.

### B.      Review of General Flow of Investor Deposits

27.      As detailed in **Exhibits 3 and 4**, in summary, the Corporate Defendants' bank records exhibit the following general fund flows:

28.      Between October 2014 and April 2016, at least 50 investors made deposits for capital contributions either into the Pacific Proton Escrow Account or directly into the PPEB5 Fund. Two investors received a refund of their capital contributions.  The net total amount of capital contributions received from at least 50 investors observed in the bank statement data amounted to $24,212,467.

> a. Net total capital contributions made into the Pacific Proton Escrow Account amounted to $24,012,387.  This entire amount was transferred from the Pacific Proton Escrow Account to the PPEB5 Fund Accounts.[48]
>
> b. Net capital contributions made directly into the PPEB5 Fund account amounted to $200,080.

29.      Between October 2014 and April 2016, at least 50 investors made deposits for the administrative fee into the Pacific Proton Regional Center Account.  At least one of those investors received a refund of his/her administrative fee payment.  Net total administrative fees received amounted to $2,210,701.[49]

30.      Only $21,210,200 was transferred from the PPEB5 Fund Accounts to Beverly Proton between October 2014 and April 2016.  Thus, approximately $3,002,267 of capital contributions were not loaned to Beverly Proton.[50]

---

[48] East West Bank Account 9509 Data, SEC-EWB-E-0000027 (August 25, 2015 – December 9, 2015), SEC-EWB-E-0000028 (November 14, 2014 – December 31, 2015), and SEC-EWB-E-0000058 (March 16, 2016).
[49] See **Exhibit 4**.
[50] $24,212,467 – 21,210,200 = $3,002,267.  *See* **Exhibits 3 and 4**.

Exhibit 1 Page 24

31.     Excluding transfers between Corporate Defendant bank accounts, investor deposits, and transfers from unknown payees, a net total of $26,387,312 was paid out of the Corporate Defendants' accounts.[51]  Of that amount and as explained further in **Section VI**, only a total of $5,316,510 was used to pay for expenditures that are consistent with the terms of the POM.

### C.     Analysis of Cash Outflows

32.     I understand that Defendants have claimed total deductible business expenses amounting to $25,278,622.[52]  In this section, I analyze the business purpose of the various types of payments made from Corporate Defendants' accounts and assess their consistency with the terms of the POM from a forensic accounting perspective.  As I show below, a significant portion of the Offering Expenses and Business Expenditures paid for by the Corporate Defendants may not be deducted because they deviate from the provisions of the POM.  In addition, a significant portion of the disbursements from the Corporate Defendants was made for purposes other than the financing and operation of Beverly Proton, and were therefore not expended in a manner consistent with the POM.

### 1.     Offering Expenses

33.     The POM states that the $45,000 administrative fee should be used "for payments of expenses incurred in connection with th[e] Offering."[53]  The POM states that the Offering Expenses include "legal, accounting and administrative expenses, and commissions and fees related to this Offering,"[54] and that Offering Expenses shall not be paid from EB-5 capital

---

[51] Calculated as the sum of the net total cash outflows made for Offering Expenses, Business Expenditures, Transfers from/to Liu/Wang, Personal Expenses, and Transfers from/to Liu Affiliates listed in **Exhibit 3.**
[52] Deposition Exhibit 61.  I have not seen the details of the amounts listed in this document and note that the document bears the mention "Incomplete."
[53] Government Exhibit 5, p. 2.
[54] Government Exhibit 5, p. 6 ("Administrative Fees[:] PPEB5 will charge an Administrative Fee of $45,000 ('Administrative Fee') to pay for Offering Expenses, including legal, accounting and administration expenses, and commissions and fees related to this Offering.  Investors will pay the Administrative Fee directly to the Regional Center.  The Regional Center will refund the Administrative Fee if (a) an Investor's subscription is not accepted, or (b) if an Investor's I-526 application is denied without

Exhibit 1 Page 25

contributions.[55]  Further, "PPEB5…may engage and pay one or more brokers, investment advisors, finders or other parties [sic] commissions or other fees in connection with the sale of Units pursuant to this Offering.  Any such commissions or other fees paid in connection with the sale of Units pursuant to this Offering shall be paid only out of the proceeds of Administrative Fees."[56]

34.     The POM also mentions that specific professional service providers were retained in connection with the offering and project:

> Pacific Proton Therapy Regional Center, LLC has engaged Miller Mayer, LLP to administer the regional center in accordance with USCIS rules and regulations relating to the Pilot Program….[57]  Miller Mayer, LLP represents the Regional Center and LAPT in connection with this Offering and the Project.[58]

> Evans Carroll & Associates is an economic consultant firm retained by LAPT to assist in the preparation of the Borrower's business plan, and the Economic Analysis….[59]

35.     In addition to these professional service providers, I understand that the work performed by various other parties was related to the offering and should therefore be considered as part of the Offering Expenses.  Those parties include Marcum, which assisted with accounting,[60] Steve Yale who provided legal services,[61] Michael Hunn who provided consulting services in connection with the business plan,[62] and Antonio Villaraigosa who assisted with the marketing of

---

possibility of cure.  The Regional Center will not refund all or any part of the Administrative Fee for any other reason.  The Administrative Fee will not be held in escrow.").

[55] Government Exhibit 5, p. 20 ("Proceeds of this Offering do not include Administrative Fees.  Offering Expenses, commissions and fees incurred in connection with this Offering shall be paid from the proceeds of Administrative Fees and not from EB-5 Capital Contributions.").

[56] Government Exhibit 5, p. 8.

[57] Government Exhibit 5, p. 22.

[58] Government Exhibit 5, p. 23.

[59] Government Exhibit 5, p. 23.

[60] February 2021 Charles Liu Deposition, p. 129:2–10.

[61] February 2021 Charles Liu Deposition, pp. 79:21–80:10.

[62] February 2021 Charles Liu Deposition, p. 128:4–6.

Exhibit 1 Page 26

the offering.[63]  Furthermore, the Corporate Defendants engaged the services of UDG, Delsk, and Overseas Chinese to help market and broker the offering to foreign investors.[64]

36.    Based on the foregoing, for the purposes of my analysis, I preliminarily classify the following expenses as Offering Expenses:

      a.    Broker fees paid to UDG, Delsk, and Overseas Chinese;[65]

      b.    Payments made to professional service providers such as Miller Mayer LLP, Marcum, and Evans Carroll & Associates, among others;

      c.    Payments made for marketing services such as fees paid to Mr. Villaraigosa.

37.    Accordingly, as shown in **Exhibit 5**, I estimate that the net amount paid by the Corporate Defendants for Offering Expenses amounts to $10,954,375.  The POM stipulates that Offering Expenses were to be paid from administrative fees and not from EB-5 capital contributions.[66] Therefore, I have assumed that the amount of Offering Expenses that may be deducted from Net Receipts is limited to $45,000 per investor.  The total net amount of administrative fees received from investors was equal to $2,210,701.[67]  Thus, as shown in **Exhibit 5**, $8,743,674 of the total payments made for Offering Expenses may not be deducted from Net Receipts.

## 2.    Business Expenditures

38.    The POM made specific representations regarding the use of proceeds by the EB-5 Project.  Indeed, Beverly Proton disclosed its intent to use the capital contributions to pay for direct and indirect construction costs, proton center equipment, and other costs including construction financing, architectural and other professional fees, working capital, and fees for

---

[63] Mr. Villaraigosa assisted with marketing of the offering.  *See* Deposition of Ruth Novodor, February 22, 2021 ("February 2021 Ruth Novodor Deposition"), pp. 29:12–21, 170:19–171:1.

[64] January 2021 Lorraine Pearson Deposition, pp. 29:19–30:4; March 2016 Charles Liu Deposition, pp. 85:12–86:12, 140:16–141:5, 145:12–24.

[65] The bank records reflect cash inflows from the accounts associated with UDG, Delsk, and Overseas Chinese.  Thus, for purposes of calculating Offering Expenses, payments to these three firms were reduced by the monies received from them.

[66] Government Exhibit 5, p. 20.

[67] See **Exhibit 4.**

Exhibit 1 Page 27

services or required to obtain permits and satisfy regulatory requirements.[68]  For example, the POM disclosed:

> LAPT will use the loan proceeds to partially finance the construction and operation of a proton therapy center with commercial office space in Los Angeles County, CA (the "Project").  The proton therapy center with office space will be located at 111 W. Beverly Boulevard, Montebello, Los Angeles County, CA.[69]

> [Beverly Proton] intends to use the proceeds from this Offering to finance development and operation of the Los Angeles Proton Therapy Center described in Borrower's business plan....[70]

> [Beverly Proton]'s Estimated Use of Proceeds

| Use of Funds | Amount |
|---|---|
| Hard Construction Costs (Direct): | $77,722,156 |
| Soft Costs (Indirect): | $16,814,726 |
| Proton Center Equipment: | $100,000,000 |
| Working Capital & Other Costs: | $5,463,118 |
| TOTAL: | $200,000,000 |

> ...Other expected uses of proceeds include construction financing, architectural and other professional fees, working capital and fees for services required to obtain permits and satisfy regulatory requirements related to the Project.[71]

39.    In addition, the POM disclosed the following material contracts, specifically identifying Dr. Thropay as landlord, and Optivus as supplier of proton therapy equipment:

> Borrower entered into a lease agreement ("111 Lease") with Dr. John P. Thropay for lease of real property located and known as 111 W. Beverly Blvd., Montebello, CA on September 14, 2011 for development and operation of the Proton Therapy Center...[72]

---

[68] Government Exhibit 5, p. 20.
[69] Government Exhibit 5, p. 18.
[70] Government Exhibit 5, p. 20.
[71] Government Exhibit 5, p. 20.
[72] Government Exhibit 5, p. 14.

Exhibit 1 Page 28

Borrower's business plan requires that it negotiate and enter into certain agreements for equipment and services, among other things, for operation of the Proton Center. Such Agreements include agreements for the purchase of proton beam equipment, license, and maintenance services with Optivus or another provider, real property lease for the Proton Center location, construction contracts, employment agreements with key personnel and agreements with various Individual Practice Associates.[73]

Borrower intends to engage Optivus Proton Beam Therapy, Inc. ("Optivus"), a proton beam technology developer in California, to provide all necessary proton beam treatment technology and related maintenance, under a service contract for the proton center. Optivus is the only U.S. company with U.S. Food and Drug Administration (FDA) clearance to provide proton therapy systems. Borrower has not commenced discussions with Optivus or negotiation of the terms for provision of such services at this time. The terms of engagement of Optivus, or any other service provider, will include costs for the provision of maintenance services, licensing fees, equipment upgrades and related services. Any change in the Borrower's estimate of these costs, or its failure or inability to engage Optivus, could negatively affect the profitability of the Borrower and its ability to repay the Loan.[74]

40.    Based on the terms of the POM, I reviewed the Corporate Defendants' bank statements and accounting records to identify payments that may be considered as deductible Business Expenditures. Specifically, I have assumed that the following types of payments constituted Business Expenditures:

a.   Construction-related costs such as architectural design fees;

b.   Rent payments to Dr. Thropay's account;[75]

c.   Proton equipment purchases provided for in the POM (i.e., equipment purchases from Optivus) and other capital expenditures;

d.   Operating expenses such as insurance costs, travel to China and Singapore to recruit patients, consulting fees, permit and license fees, and taxes, among others (see **Exhibit 6**).

---

[73] Government Exhibit 5, p. 14.

[74] Government Exhibit 5, p. 15.

[75] I understand that after Mr. Liu and Mr. Thropay ceased to collaborate in early 2016, Mr. Liu decided to relocate the project to a different physical address (i.e., 105 W. Beverly Boulevard) even though the POM had disclosed 111 W. Beverly Boulevard as the address of the project. *See* February 2021 Ruth Novodor Deposition, pp. 166:19–167:11; February 2021 Charles Liu Deposition, pp. 96:20–97:6. Based on the information available to me, I was unable to identify whether specific expenses related to the 105 W. Beverly Boulevard location occurred. I reserve the right to revise my analysis should additional information related to expenses from the change in location be provided to me.

Exhibit 1 Page 29

41.     As part of my review, I identified certain payments that do not fall within the aforementioned four categories and do not meet the provisions of the POM surrounding the use of proceeds, and therefore may not be deductible as Business Expenditures.  Those are addressed separately in **Section VI.C.3** below and include withdrawals from Corporate Defendants' accounts, transfers to entities controlled by Mr. Liu that are not directly related to the EB-5 Project, and other payments made on behalf of the Individual Defendants.[76]

42.     As shown in **Exhibit 6**, I estimate that the net total amount paid by the Corporate Defendants for Business Expenditures amounts to $6,105,809.  Based on the aforementioned assumptions and my analysis of the bank statements and accounting records, I identified $3,105,809 of deductible Business Expenditures in total.  Thus, as shown in **Exhibit 6**, $3,000,000 of the total payments made for Business Expenditures may not be deducted from Net Receipts.[77]  Specifically, I exclude the $3 million payment to an equipment manufacturer other than Optivus, Mevion.  The POM only provided for proton equipment purchases from Optivus.  Moreover, Dr. Thropay testified that he was not involved in the negotiation with Mevion.[78]  Email communications also indicate that the payment to Mevion was made for the benefit of United MPH Ventures, a company other than Beverly Proton.[79]  Therefore, payments to Mevion are not considered to be deductible.

### 3.     Individual Defendants' Pecuniary Gains

43.     The Corporate Defendants' financial records display numerous transfers to the Individual Defendants that well exceeded the amounts that may be considered as deductible compensation, as well as withdrawals and other payments directly or indirectly benefitting them.

---

[76] I understand that Mr. Liu has argued that some of the transfers to him were reimbursement of expenses incurred before his employment agreement was signed.  The POM does not provide for the payment of expenditures that predate the period in which fundraising began using offering proceeds.  Therefore, I expect outflows incurred prior to October 2014 not to be deductible.
[77] $6,105,809 – $3,000,000 = $3,105,809.
[78] Deposition of John Thropay, MD, March 5, 2021 ("March 2021 John Thropay Deposition"), pp. 49:16–50:4, 76:22–77:6.
[79] Deposition Exhibit 109; March 2021 John Thropay Deposition, pp. 129:3–130:7.

Exhibit 1 Page 30

### a)      Transfers to Individual Defendants

44.      Between October 2014 and April 2016, a total of $6,858,092 was transferred to the
Individual Defendants.  Those distributions were classified in Pacific Proton Regional Center's
2015 financial statements as "management fees or distributions" regardless of their underlying
nature.[80]  Per the POM, the amount of money that the PPEB5 Fund managers may receive in the
form of a management fee was limited to 3% of PPEB5 Fund's gross revenues (if any).[81]  In
addition to the fact that the Pacific Proton Regional Center was the sole manager provided for in
the POM and that Mr. Liu and Ms. Wang were not identified as managers therein,[82] I do not
expect Mr. Liu and Ms. Wang to have earned any management fees.  Indeed, I have not seen
evidence that the PPEB5 Fund earned any revenues during the period at issue since the
construction was never completed and the proton center was never constructed nor operational.[83]
Therefore, based on the POM, no amount should be deducted from Net Receipts as management
fees.

45.      I understand that the Individual Defendants pointed to their employment agreements with
the Corporate Defendants as basis for the transfers made to them.[84]  However, such an argument
is fundamentally flawed.  Specifically, the employment agreements between the Individual
Defendants and Beverly Proton, which were signed in 2016, provide that annual salaries of
$550,000 and $280,000 should be paid to Mr. Liu and Ms. Wang respectively, "since January
2011."[85]  I note that Mr. Liu has argued that some of the transfers to him were reimbursement of
expenses incurred before his employment agreement was signed.[86]  However, the POM does not
provide for salaries or expense reimbursement to be paid retroactively using offering proceeds.
As such, the maximum amount of compensation that may be deducted from Net Receipts would

---

[80] March 2021 Trang Lam Deposition, pp. 54:24–56:7, 80:21–81:8.
[81] Government Exhibit 5, p. 26 ("The Manager shall receive a management fee equal to three (3.0%) percent of the gross
revenues, if any, of the Company, payable on the first day of each month for the preceding period.").
[82] Government Exhibit 5, p. 6.
[83] February 2021 Charles Liu Deposition, p. 100:7–9.
[84] February 2021 Charles Liu Deposition, pp. 76:15–78:11.
[85] Deposition Exhibit 120, p. 1; Deposition Exhibit 123, p. 1.
[86] February 2021 Charles Liu Deposition, p. 78:4–11.

Exhibit 1 Page 31

be limited to the total amount of salaries earned based on employment agreements after October 2014.  Nevertheless, the Memorandum of Understanding of the Pacific Proton Therapy Project between Mr. Liu and Dr. Thropay asserted that compensation would only be earned "[s]ubject to the Project successfully raising the minimum amount of agreed upon capital."[87]  The Beverly Proton project, however, did not raise the funds to complete the project.  Therefore, I have not seen evidence that Mr. Liu and Ms. Wang should have been paid a salary by Beverly Proton.

46.      In addition to a base salary, Mr. Liu's employment agreement with Beverly Proton entitles him to a bonus amounting to "8 percent of the total capital raised, including debt financing raised."[88]  His employment agreement with the Pacific Proton Regional Center also includes a bonus of 8% of the amount raised "when [the number of] total investors reaches 20."[89]  However, the POM does not provide for such bonuses to be paid to Mr. Liu.  Even if the bonuses were allowed under the POM, they are in substance a commission expense and would constitute an Offering Expense.[90]  Given that the maximum amount that may be deducted as Offering Expenses has already been reached as described in **Section VI.C.1** above, no bonuses may be claimed by Mr. Liu.

47.      I understand Mr. Liu also claims that he had employment agreements with Pacific Proton Regional Center and PPEB5 Fund.[91]  To the extent those agreements provided for a salary to be paid to Mr. Liu, they are not deductible.  As discussed in **Section VI.C.1** above, any salary paid by Pacific Proton Regional Center would be limited to administrative fees of $45,000 per investor for which the maximum amount deductible has been reached.  The salary related to PPEB5 Fund would similarly be not deductible since the project did not generate revenue to render a management fee or salary payable to Mr. Liu.  Moreover, the POM does not disclose any salary other than the management fee.

48.      Based on the analysis above and the information available to me, I estimate that the portion of the transfers made to the Individual Defendants that may be deducted from Net Receipts is $0 (see **Exhibit 7**).  This represents a difference of $6,749,692 from the actual

---

[87] SEC-GRASSMUECK-E-000804–811, at 806.
[88] Deposition Exhibit 120, p. 1.
[89] Deposition Exhibit 140, p. 133.
[90] Government Exhibit 5, p. 2.
[91] February 2021 Charles Liu Deposition, p. 104:7–13.

Exhibit 1 Page 32

payments made by the Corporate Defendants to Mr. Liu and Ms. Wang.  I reserve the right to
modify my calculations should additional documents be provided in connection with Mr. Liu's
and Ms. Wang's compensation.

### b)    Withdrawals and Payments of Personal Expenses

49.    In addition to direct transfers to the Individual Defendants, the Corporate Defendants'
bank records show numerous withdrawals and transactions that appear to be unrelated to the
financing, development, or operation of the EB-5 Project, and may therefore not be deducted
from the Net Receipts based on the terms of the POM.[92]  A detailed list of the transactions I have
classified as personal expenses is included in **Exhibit 8**.  Based on their bank transaction data
and financial records, approximately $1,427,180 was withdrawn from the Corporate Defendants'
accounts (see **Exhibit 8**).  In addition, the Corporate Defendants paid several expenses on behalf
of Mr. Liu and Ms. Wang, such as credit card payments, luxury vehicle purchases, school tuition
fees, and ATM card purchases.[93]  Some of the ATM card purchases occurred in places other than
the primary locations where the EB-5 Project was marketed to potential investors, including Las
Vegas.[94]  Those various expenses and payments appear to be personal expenses and may
therefore not be deducted from Gross Receipts because they deviate from the use of proceeds
represented in the POM.  As shown in **Exhibit 7**, the $2,367,167 of personal expenses paid using
Corporate Defendants' funds may not be deducted from Net Receipts.

### c)    Other Transfers

50.    Finally, as shown in **Exhibit 3**, between October 2014 and April 2016 a net amount of
$210,270 was transferred to the Liu Affiliates.  As Mr. Liu testified, those affiliates were
engaged in projects unrelated to the EB-5 Project that was presented to investors in the POM.[95]
Therefore, this amount may not be deducted from Net Receipts.

---

[92] Government Exhibit 5, p. 20.
[93] JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (October 1, 2014 – January 26, 2016), SEC-JPMCB-P-
0000771–807 (2/1/16–3/29/16), and Lorraine Declaration Exhibit 11 - Pac Proton Regional Center - May 2016 Acct 6428
SB710008_IR 05feb16-980LLP xls (October 1, 2014 – April 28, 2016).
[94] May 2016 Xin Wang Deposition, p. 42:6–11; February 2021 Charles Liu Deposition, p. 84:16–24.
[95] March 2016 Charles Liu Deposition, pp. 23:1–24:8.

Exhibit 1 Page 33

VII.    **Conclusions**

51.     In summary, based on my review of the available financial records, my analysis of the flow of funds in light of the POM, and my determination that a significant amount of the investor funds were expended on non-deductible Business Expenditures, I estimate that the total amount that may be deducted from Net Receipts is $5,316,510.  Based on my analysis, I estimate that the net pecuniary gains to the Defendants amount to $20,222,511.  See **Exhibit 9**.

Executed this 26th of March, 2021

_Carlyn Irwin_

_____

Carlyn Irwin

Exhibit 1 Page 34

## Appendix A

### CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE
### Senior Advisor

**Cornerstone Research**
555 W. 5th Street, 38th Floor • Los Angeles, CA 90013
213.553.2533 • fax 213.553.2699
cirwin@cornerstone.com

**ACADEMIC BACKGROUND**

| | | |
|---|---|---|
| 1992 | **University of Southern California** | Los Angeles, California |
| | *M.B.A., Accounting and Finance* | |
| 1989 | **University of California, Santa Barbara** | Santa Barbara, California |
| | *B.A., Organizational Psychology, Cum Laude* | |

**RANGE OF EXPERIENCE**

More than twenty-five years of litigation consulting and expert witness experience, including analyzing economic, financial, causation, and accounting issues in context of damages claims, valuing businesses, and conducting financial forensic analysis in a wide variety of commercial disputes. Has experience in broad range of industries including real estate, medical devices, technology, entertainment, consumer products, and financial and professional services. Has worked with clients and counsel throughout the litigation process during all phases of the litigation process. Examples of testimony and casework experience include:

- Financial Forensic Analysis—Reconstructing financial records, tracing transactions through corporate reporting systems, and reviewing financial records (including tax returns) to assess consistency and reliability as part of corporate investigation, complex civil and criminal litigation involving white collar matters, as well as allegations of fraudulent conveyances, breach of contract, money laundering, and fraud. Has provided expert testimony regarding solvency, financial misstatements, fraudulent/preferential transfers, indications of fraudulent transactions and schemes, and misappropriation of assets.

- Contract and Tort Claims—Analyzing loss causation and damages issues and performing business valuations in breach of contract and tort causes of action, including breach of fiduciary duty, alter ego, Lanham Act violations, false advertising, and unfair business competition. Has analyzed compensatory damages as well as claims for statutory and restitution or disgorgement damages.

- Intellectual Property Disputes—Addressing damages issues in patent, copyright, and trademark infringement as well as trade secret misappropriation disputes. Specific expertise in estimating lost profits, unjust enrichment, and reasonable royalty damages, including analysis of loss causation and apportionment issues as well as the application of "Most Favored Licensee" clauses.

- Valuation Services – Providing opinions of value for businesses, intellectual property, and other intangible assets in the context of litigation, economic loss analyses, and partnership disputes.

# CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE
## Senior Advisor

---

## PROFESSIONAL ACCREDITATIONS

- Certified Public Accountant (CPA), California, State Board of Accountancy, April 2001

- Certified in Financial Forensics (CFF), American Institute of Certified Public Accountants, July 2008 (inception of credential)

- Certified Fraud Examiner (CFE), Association of Certified Fraud Examiners, March 2011

- Accredited in Business Valuation (ABV), American Institute of Certified Public Accountants, August 2015

- Certified in Entity and Intangible Valuations (CEIV), American Institute of Certified Public Accountants, January 2018

## PROFESSIONAL AND BUSINESS HISTORY

| 2002–Present | **Cornerstone Research, Inc.** | Los Angeles, California |
| | *Senior Advisor (2015-present)* | |
| | *Principal (2002-2015)* | |
| 1994–2002 | **PricewaterhouseCoopers** | Los Angeles, California |
| | *Director (2000-2002)* | |
| | *Manager/Principal (1997-2000)* | |
| | *Senior Consultant (1994-1997)* | |
| 1992–1994 | **Mitchell Silberberg & Knupp** | Los Angeles, California |
| | *Assistant Controller* | |
| 1991–1992 | **University of Southern California School of Business** | Los Angeles, California |
| | *Professor's Assistant, Finance Department* | |

## TESTIMONY EXPERIENCE:

- Testified in deposition (February 2021) in a breach of contract and misappropriation of trade secrets matter involving the issuance of a medical marijuana/cannabis license in Florida filed in the Superior Court of the State of Washington.  Calculated damages in the form of the fair market value of the medical marijuana license, the development costs of the trade secrets, and a reasonable royalty for the trade secrets.  (*Left Coast Ventures, Inc. v. Bill's Nursery, Inc., et al.*)

- Provided deposition testimony (January 2021) in a fraud matter involving the offer and sale of securities, issuance of cryptocurrency, and operating a pyramid scheme as part of a multi-level marketing company filed in the United States District Court, Central District of California.  Offered opinions regarding the flow of funds, the underpayment of compensation to distributors, the ability of the company to continue operations, and the pecuniary gain of the defendant.  (*Securities and Exchange Commission v. Daniel Pacheco, et al*)

**CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE**
**Senior Advisor**

---

**TESTIMONY EXPERIENCE (CONTINUED)**

- Testified in deposition (April 2020) in a class action matter alleging violations of the Equal Pay Act and Title VII of the Civil Rights Act of 1964 filed in the United States District Court, Central District of California, Western Division.  Conducted forensic accounting analysis of revenue earned by and payments made to members of the US Soccer Men's and Women's national teams.  (*Alex Morgan, et al. v. United States Soccer Federation, Inc.*)

- Provided deposition testimony (January 2020) in a litigation filed in the United States District Court, Central District of California involving allegations of violation of the Lanham Act and interference with prospective economic advantage.  Analyzed damages and provided rebuttal opinions regarding opposing expert's calculations of lost profits and unjust enrichment. (*Multiple Energy Technologies v. Hologenix, LLC*)

- Testified in deposition (January 2020) in a matter filed in Superior Court of the State of California, County of Los Angeles involving the breach of partnership/participation agreements and allegations of fraud.  Performed an accounting of payments due under the participation agreement and provided rebuttal analyses under the terms of the asserted partnership.  (*RadioSurgery Solutions, LLC, et al. v. Select Healthcare Solutions Fund II, LLC, et al.*)

- Provided testimony in deposition (January 2020) in a matter involving claims of theft of trade secrets, tortious interference, and conspiracy filed in the Circuit Court of Cook County, Illinois.  Analyzed damages and provided rebuttal opinions regarding opposing expert's calculations of lost profits, unjust enrichment, and reasonable royalties.  (*Newmark Group, Inc., et al. v. Avison Young (Canada) Inc., et al.*)

- Provided testimony in arbitration (November 2019) in a breach of contract matter involving the rights to distribute the film *American Made* in mainland China.  Analysis included reasonableness of estimated foreign box office revenue, structure of "waterfall" payments to interested parties, as well as providing rebuttal testimony regarding Claimant's damages claim.  (*Beijing Galloping Horse Film Co. v. CCP Film Holdings, LLC, et al.*)

- Testified in depositions (August 2019, October 2019) and at trial (October 2019) in a matter involving claims of breach of fiduciary duty, breach of oral contract, fraud, etc. against the co-founder of a privately-held, e-commerce firm which sells women's and children's footwear filed in the Superior Court of the State of California, County of Los Angeles.  Scope included investment analysis of funds misappropriated and expected damages associated with unpaid taxes.  (*Dikla Gavrieli Unatin v. Kfir Gavrieli*, and associated cross-claims on behalf of Dean K. Unatin)

**CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE**
**Senior Advisor**

---

**TESTIMONY EXPERIENCE (CONTINUED)**

- Testified in matters (August 2019) for Ford Motor Company alleging fraud, negligence, and violation of the Song-Beverly Act against an automaker.  Reviewed and commented on opposing expert's analysis, observations, and calculation of compensatory and punitive damages associated with Ford's PowerShift/DPS6 transmission.

  - Deposition (August 2019):  *Mark Pendante v. Ford Motor Company,* United States District Court, Central District of California

  - Deposition (August 2019):  *Yvonne and Salvador Quintero v. Ford Motor Company,* United States District Court, Central District of California

- Provided deposition testimony (August 2019) in a Lanham Act matter involving country of origin claims for radio-frequency prevention loss labels for a matter filed in the United States District Court, Southern District of Florida.  Analysis included an assessment of the materiality of the allegedly false statement as well as calculation of revenue associated with the sales of the relevant labels.  (*ALL-Tag Corporation v. Checkpoint Systems, Inc.* and associated counterclaim)

- Testified in deposition (April 2019) and arbitration (July 2019) in a breach of sub-license matter involving patents for compact florescent light technology filed with the American Arbitration Association.  Analyzed the economic consequences of a "Most Favored Licensee" provision to amounts owed by licensee.  (*Beacon Point Capital, LLC v. Philips Electronics North America Corporation*)

- Provided deposition testimony (June 2019) in a fraud and breach of fiduciary duty matter filed in the United States Bankruptcy Court, Central District of California, Riverside Division.  Affirmative analysis and testimony included assessing solvency of land development and home building operations, as well as evaluating the companies' compliance with debt covenants.  Rebuttal testimony addressed reasonableness of Trustee's experts' opinions regarding the valuations of the assets, methodology for consolidating intercompany transactions, and calculations of damages in the form of deepening insolvency, wasteful disbursements, and unjust enrichment.  *Richard K. Diamond, Chapter 7 Trustee v. Empire Partners, Inc. et al.*)

- Testified in deposition (May 2019) as part of proceedings related to a motion for preliminary injunction filed in the Circuit Court of Jackson County, Missouri Kansas City Division and in the Court of Chancery for the State of Delaware.  Analysis and opinions related to the ability to calculate damages assuming breach of contract, tortious interference, etc. and provide rebuttal analysis regarding opposing expert's opinions regarding irreparable harm.  (*Mountain West Series of Lockton Companies, LLC, et al. v. Alliant Insurance Services, Inc., and related matters)*

- Provided testimony in deposition (May 2019) in a matter involving claims of theft of trade secrets, tortious interference, and conspiracy filed in the Superior Court for the District of Columbia.  Analyzed damages and provided rebuttal opinions regarding opposing expert's calculations of lost profits, unjust enrichment, and reasonable royalties.  (*BGC Partners, Inc. et al. v. Avison Young (Canada) Inc., et al.*)

**CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE**
**Senior Advisor**

---

**TESTIMONY EXPERIENCE (CONTINUED)**

- Testified in deposition (October 2018) and arbitration (February 2019) in a matter involving claims of breach of contract, breach of confidentiality, and fraud, etc. filed before the Judicial Arbitration and Mediation Society in Los Angeles. Estimated damages and provided rebuttal opinions regarding opposing expert's calculations of lost profits. (*DAS Group Professionals, Inc. v. Tesla, Inc., and related counterclaims*)

- Provided deposition testimony (October 2018) in a breach of contract and fraud matter filed in the Superior Court of the State of California, County of Los Angeles. Offered opinions regarding indicators of an allegedly fraudulent transaction and scheme, including related-party transactions, adequate disclosures, and potential economic benefit to defendants. (<u>*ITV Gurney Holdings, Inc., et al. v. Scott and Deirdre Gurney*</u>)

- Provided deposition (September 2018) and arbitration testimony (December 2018) in a dispute alleging misappropriation of trade secrets, unfair trade practices, false advertising, and fraud filed before the Judicial Arbitration and Mediation Society in Los Angeles. Testified regarding reasonableness of opposing expert's calculation of lost profits, valuation of trade secrets, and unjust enrichment. (*Colorado Seasons, Inc., et al. v. <u>Art Brand Studios, LLC, et al.</u>*)

- Testified in deposition (June 2018) in a breach of contract, fraud, and trade secrets dispute filed in the Circuit Court of Jackson County, Missouri. Reviewed and commented on opposing expert's analysis and opinions regarding lost profits and unjust enrichment. (*Marathon Reprographics, Inc. v. <u>J.E. Dunn Construction Company, et al.</u>*)

- Provided deposition (May 2018) and arbitration (June 2018) testimony in a breach of partnership agreement and fraud matter filed before the American Arbitration Association. Reviewed and commented on opposing expert's analysis and opinions regarding Claimants' treatment as partners for tax purposes. (*Daniel Alexander, et al. v. <u>Nicholas R. Halaris, et al.</u>*)

- Testified in a series of matters (January 2018 – March 2019) for Ford Motor Company alleging fraud, negligence, and violation of the Song-Beverly Act against an automaker. Reviewed and commented on opposing expert's "fraud examination," analysis of indicia of fraud, other observations, and calculation of compensatory and punitive damages associated with Ford's 6.0L Navistar engine.

  o Deposition (March 2019): *Corey McKinnon v. <u>Ford Motor Company</u>*, Superior Court of the State of California, County of Riverside

  o Deposition (March 2019): *Evelia Arroyo v. <u>Ford Motor Company,</u>* Superior Court of the State of California, County of Riverside

  o Deposition (October 2018): *Richard Melton v. <u>Ford Motor Company,</u>* Superior Court of California, County of San Diego

  o Deposition (August 2018): *Richard R. Guinn v. <u>Ford Motor Company,</u>* Superior Court of California, County of Orange

**CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE**
**Senior Advisor**

---

**TESTIMONY EXPERIENCE (CONTINUED)**

- Ford 6.0L Navistar Cases Continued

  - Deposition (July 2018):  *Shelby Anderson, et al. v. Ford Motor Company*, Superior Court of California, County of San Joaquin

  - Deposition (April 2018):  *Timothy Berg v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (April 2018):  *Gary Skillman v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (April 2018):  *Mark Hemric, et al. v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (April 2018):  *Donna Watkins v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (April 2018):  *Cleveland Watts, et al. v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (April 2018):  *Marc Siegel v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (April 2018):  *Robert Brown, et al. v. Ford Motor Company*, Superior Court of California, County of Butte

  - Deposition (April 2018):  *Raul Berroteran II v. Ford Motor Company*, Superior Court of California, County of Los Angeles

  - Deposition (March 2018):  *Gregory Scott Misner, et al. v. Ford Motor Company*, Superior Court of California, County of Orange

  - Deposition (January 2018):  *Jeff Ettleman v. Ford Motor Company*, Superior Court of California, County of Riverside

- Testified at deposition (January 2018) in a breach of contract and misappropriation of trade secrets matter filed in the Eastern District of Virginia, Alexandria Division.  Analyzed and commented on opposing expert's estimation of damages under the DTSA and Virginia Uniform Trade Secrets Act.  (*Peraton, Inc. v. Raytheon Company*)

- Provided deposition testimony (October 2017) in a breach of contract and fiduciary duty case filed in the Northern District of California, San Jose Division.  Reviewed and commented on opposing expert analysis of plaintiff's damages and underlying assumptions.  Analyzed historical financial performance of business to assess reasonableness of projections.  (*Kelly Brezoczky v. Domtar Corporation, et al.*)

**CARLYN IRWIN, MBA, CPA/CFF/ABV/CEIV, CFE**
**Senior Advisor**

---

**PROFESSIONAL MEMBERSHIPS**

- Member, California Society of Certified Public Accountants, including Forensic Services Section

- Member, American Institute of Certified Public Accountants, including Forensic and Valuation Services Section

- Member, Association of Certified Fraud Examiners

**SPEAKING ENGAGEMENTS**

- University of California, Los Angeles, UCLA School of Law, Accounting and Financial Skills for Lawyers (Law 434), Guest Lecturer, November 2020

- University of Southern California, Leventhal School of Accounting, PACT Luncheon, Guest Speaker, Fall 2018

- Lost Profits and Damages Calculation: Everything You Need to Know in 2018, The Knowledge Group, Panelist, January 2018

- Cornerstone Research, Consumer Finance Class Actions and Enforcements, Moderator, November 2016

- University of Southern California, Leventhal School of Accounting, Accounting Ethics, Guest Speaker, Spring 2016 and Fall 2016

**FIRM-WIDE SERVICE**

- Cornerstone Research, Analyst Compensation Committee, 2007 to 2014

- Cornerstone Research, Risk Management Committee, 2002 to 2007

**AWARDS & RECOGNITION**

- Who's Who Legal: Investigations – Forensic Accountants, 2020, Global Investigations Review

- Who's Who Legal: Investigations – Forensic Accountants, 2019, Global Investigations Review

# Appendix B

# Documents Considered List

**Legal Pleadings**

- Complaint, *Securities and Exchange Commission v. Charles C. Liu, Xin Wang a/k/a Lisa Wang, et al.*, May 26, 2016

- Plaintiff Securities and Exchange Commission's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment Against Defendants Charles C. Liu and Xin (Lisa) Wang, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 4, 2017

- Plaintiff Securities and Exchange Commission's Uncontroverted Facts and Conclusions of Law in Support of Its Motion for Summary Judgment, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 4, 2017

- Defendant Charles C. Liu and Xin Wang's Memorandum of Points and Authorities and Declaration of Hervé Gouraige in Opposition to Plaintiff Securities and Exchange Commission's Motion for Summary Judgment, with Exhibits 1–2, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 17, 2017

- Defendant Charles C. Liu and Xin Wang's Statement of Genuine Disputes of Material Facts and Counter-Statement of Uncontroverted Facts in Opposition to Plaintiff Securities and Exchange Commission's Motion for Summary Judgment, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 17, 2017

- Plaintiff Securities and Exchange Commission's Reply in Support of Its Motion for Summary Judgment Against Defendants Charles C. Liu and Xin (Lisa) Wang, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 23, 2017

- Plaintiff Securities and Exchange Commission's Response to Defendants' Counter-Statement of Uncontroverted Facts, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 23, 2017

- Defendant Charles C. Liu and Xin Wang's Objection to Plaintiff Securities and Exchange Commission's Responses to Defendants' Counter-Statement of Uncontroverted Facts; Declaration of Hervé Gouraige, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 26, 2017

- Defendant Charles C. Liu and Xin (Lisa) Wang's Memorandum of Points and Authorities in Opposition to the Plaintiff's Supplemental Brief Regarding Civil Penalties; Declaration of Hervé Gouraige, with Exhibit 1, *Securities and Exchange Commission v. Charles C. Liu, et al.*, February 15, 2017

Exhibit 1 Page 42

# Appendix B

## Rulings

- *Liu v. SEC*, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020)

- *SEC v. Liu*, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017)

## Declarations

- Declaration of Lorraine Pearson in Support of Plaintiff Securities and Exchange Commission's Ex Parte Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents, with Exhibits 9–13, *Securities and Exchange Commission v. Charles C. Liu, et al.*, May 26, 2016

- Supplemental Declaration of Lorraine Pearson in Support of Plaintiff Securities and Exchange Commission's Motion for Orders Requiring the Repatriation of Assets and Accountings, with Exhibits 1–9, *Securities and Exchange Commission v. Charles C. Liu, et al.*, June 3, 2016

- Second Supplemental Declaration of Lorraine Pearson in Support of Plaintiff Securities and Exchange Commission's Surreply in Opposition to Defendants' Motion for Relief from Sections VIII and IX of Preliminary Injunction, *Securities and Exchange Commission v. Charles C. Liu, et al.*, September 20, 2016

- Third Supplemental Declaration of Lorraine Pearson, *Securities and Exchange Commission v. Charles C. Liu, et al.,* September 28, 2016

- Declaration of Gary Y. Leung in Support of Plaintiff Securities and Exchange Commission's Motion for Summary Judgment Against Defendants Liu and Wang, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 4, 2017

- Supplemental Declaration of Gary Y. Leung in Support of Plaintiff Securities and Exchange Commission's Motion for Summary Judgment Against Defendants Liu and Wang, *Securities and Exchange Commission v. Charles C. Liu, et al.*, January 23, 2017

## Depositions and Exhibits

- Deposition Exhibits 29, 35, 45–48, 51–88, 101, 103–110, 114–143

- Deposition of Charles C. Liu, March 23, 2016

- Deposition of Charles C. Liu, November 10, 2016

- Deposition of Charles C. Liu, February 24, 2021

2

Exhibit 1 Page 43

# Appendix B

- Deposition of John Thropay, M.D., March 5, 2021

- Deposition of Lorraine Pearson, January 21, 2021

- Deposition of Ruth Novodor, February 22, 2021

- Deposition of Trang Lam, March 9, 2021

- Deposition of Xin Wang, May 4, 2016

- Deposition of Xin Wang, November 9, 2016

- Deposition of Xin Wang (aka Lisa Wang), February 25, 2021

**Testimonies and Exhibits**

- Government Exhibits 1–43

- Testimony of Charles C. Liu, March 23, 2016

- Testimony Errata for Charles C. Liu, May 16, 2016

- Testimony of Wenli Yao, May 12, 2016

- Testimony of Xin Wang, May 4, 2016

**Other Materials**

- "About the EB-5 Visa Classification," *United States Citizenship and Immigration Services*, March 25, 2021, available at https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-the-eb-5-visa-classification, accessed March 25, 2021

- 8 CFR § 204.6 – Petitions for Employment Creation Aliens

- 8 CFR § 216.6 – Petition by Entrepreneur to Remove Conditional Basis of Lawful Permanent Resident Status

- 8 U.S. Code § 1153 – Allocation of Immigrant Visas

- "CFE Code of Professional Standards, Section III," *Association of Certified Fraud Examiners*, November 1, 2020, https://www.acfe.com/standards/, accessed March 26, 2021.

- Lorraine Declaration Exhibits 7 and 8 - PPEB5 Fund and Investor List - Acct 1028 SB710008_IR 05Feb16-983LLP.xls

- Lorraine Declaration Exhibit 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls

Exhibit 1 Page 44

# Appendix B

- Lorraine Declaration Exhibit 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls

- "Statement on Standards of Forensic Service," *Forensic and Valuation Services Executive Committee*, January 1, 2020, https://future.aicpa.org/resources/download/statement-on-standards-for-forensic-services, accessed March 26, 2021.

**Produced Documents**

- JPM000143

- JPM000146

- Marcum_Cliu_00002501

- Marcum_Cliu_00002503

- Marcum_Cliu_00002639

- Marcum_Cliu_00002911

- Marcum_Cliu_00005273

- Marcum_Cliu_00005725

- Marcum_Cliu_00005730

- Marcum_Cliu_00006774

- Marcum_Cliu_00006962

- Marcum_Cliu_00007299

- Marcum_Cliu_00007351

- Marcum_Cliu_00007409

- Marcum_Cliu_00007485

- Marcum_Cliu_00007529

- Marcum_Cliu_00007619

- Marcum_Cliu_00007701

- Marcum_Cliu_00007885

- Marcum_Cliu_00008077

- Marcum_Cliu_00008312

# Appendix B

- Marcum_Cliu_00009464
- Marcum_Cliu_00010948
- Marcum_Cliu_00010982
- Marcum_Cliu_00013229
- Marcum_Cliu_00013231
- Marcum_Cliu_00013234
- Marcum_Cliu_00013286
- Marcum_Cliu_00013344
- Marcum_Cliu_00013420
- Marcum_Cliu_00013594
- Marcum_Cliu_00013604
- Marcum_Cliu_00013606
- Marcum_Cliu_00013609
- Marcum_Cliu_00013621
- Marcum_Cliu_00013641
- Marcum_Cliu_00014049
- Marcum_Cliu_00014721
- Marcum_Cliu_00014765
- Marcum_Cliu_00014824
- Marcum_Cliu_00014907
- Marcum_Cliu_00014909
- Marcum_Cliu_00015037
- Marcum_Cliu_00015216
- Marcum_Cliu_00015298
- Marcum_Cliu_00015482
- Marcum_Cliu_00015674
- Marcum_Cliu_00015909

5

Exhibit 1 Page 46

# Appendix B

- Marcum_Cliu_00015910
- Marcum_CLiu_0001864
- Marcum_CLiu_0002147
- Marcum_CLiu_0006103
- SEC-BOA-E-0000195
- SEC-BOA-E-0000291
- SEC-BOA-E-0000298
- SEC-BOA-E-0000374
- SEC-CITIBANK-E-0000001
- SEC-CITIBANK-E-0000087
- SEC-CITIGROUP-E-0000087
- SEC-EWB-E-0000027
- SEC-EWB-E-0000028
- SEC-EWB-E-0000058
- SEC-GRASSMUECK-E-000804–811
- SEC-HSBC-E-0000025
- SEC-JPMCB-E-0000001
- SEC-JPMCB-E-0000018
- SEC-JPMCB-E-0000019
- SEC-JPMCB-P-0000763
- SEC-JPMCB-P-0000764–65
- SEC-JPMCB-P-0000769–70
- SEC-JPMCB-P-0000771–807
- SEC-JPMCB-P-0000808–13
- SEC-JPMC-E-0000001
- SEC-JPMC-E-0000002
- SEC-JPMC-E-0000003

6

Exhibit 1 Page 47

# Appendix B

- SEC-JPMC-E-0000004

- SEC-JPMC-E-0000005

- SEC-JPMC-E-0000006

- SEC-LiuC-E-0000319

- SEC-LiuC-E-0000337

- SEC-LiuC-E-0000342

**Note: In addition to the documents on this list, I considered any other document cited in my report and exhibits to form my opinions.**

7

Exhibit 1 Page 48

# Exhibit 1
# Represented Flow of Capital Contributions



Source: Government Exhibit 5 (Private Offering Memorandum, 300 Limited Liability Company Membership Units of Pacific Proton EB-5 Fund, LLC, May 1, 2013)

Note:
[1]  For first five year Beverly Proton was to pay a 0.25% interest-only repayment.  The loan was to be repaid after 5 years.
[2]  Total funding planned from PPEB5 fund and outside sources were approximately $200,000,000.
[3]  Estimated use of proceeds were $77,722,156 Hard Construction Costs (Direct), $16,814,726 Soft Costs (Indirect), $100,000,000 Proton Center Equipment, and $5,463,118 Working Capital & Other Costs.

Exhibit 1 Page 49

# Exhibit 2
# Represented Flow of Administrative Fees



Source: Government Exhibit 5 (Private Offering Memorandum, 300 Limited Liability Company Membership Units of Pacific Proton EB-5 Fund, LLC, May 1, 2013)

Note:
[1]  Funds to be refunded if investor I-526 petition is denied without possibility of cure.
[2]  Offering expenses are to include legal, accounting and administration expenses, and commissions and fees related to the Offering.

Exhibit 1 Page 50

# Exhibit 3
## Summary of Cash Flows
## PPEB5 Fund, Pacific Proton Regional Center, Pacific Proton
### 9/10/13 – 4/28/16

| Category | Inflows [a] | Outflows [b] | Net (Inflows) Outflows [c] = [b] - [a] |
|---|---|---|---|
| *Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428* | | | |
| Transfers from/to Defendants | | | |
|    Pacific Proton Therapy Regional Center | $0 | $0 | $0 |
|    Pacific Proton EB-5 Fund | $0 | $1,000 | $1,000 |
|    Beverly Proton Center[1] | $891,100 | $42,000 | ($849,100) |
| Investor Deposit - Administrative Fee | $2,255,701 | $45,000 | ($2,210,701) |
| Offering Expenses[2] | $34,500 | $1,149,746 | $1,115,246 |
| Business Expenditures[3] | $0 | $852,205 | $852,205 |
| Transfers from/to Liu & Wang | $108,400 | $138,092 | $29,692 |
| Personal Expense[4] | $0 | $1,304,911 | $1,304,911 |
| Transfers from/to Liu Affiliates | | | |
|    Beverly Hospital | $0 | $12,500 | $12,500 |
|    MP Hotel | $0 | $14,700 | $14,700 |
|    United MPH Ventures LLC | $22,000 | $5,070 | ($16,930) |
| Transfers from/to Unknown Payees | $403,852 | $109,498 | ($294,354) |
| **Total** | **$3,715,553** | **$3,674,723** | **($40,830)** |

Exhibit 1 Page 51

# Exhibit 3
# Summary of Cash Flows
# PPEB5 Fund, Pacific Proton Regional Center, Pacific Proton
9/10/13 – 4/28/16

| Category | Inflows | Outflows | Net (Inflows) Outflows |
|---|---|---|---|
| | [a] | [b] | [c] = [b] - [a] |
| _Pacific Proton EB-5 Fund JP Morgan Chase Account 528951028 and Citibank Account 000000000000204719769_ [5] | | | |
| Transfers from/to Defendants | | | |
| Pacific Proton Therapy Regional Center | $1,000 | $0 | ($1,000) |
| Pacific Proton EB-5 Fund | $0 | $0 | $0 |
| Beverly Proton Center[1] | $9,960 | $21,210,200 | $21,200,240 |
| Investor Deposit - Capital Contributions: Direct | $700,080 | $500,000 | ($200,080) |
| Investor Deposit - Capital Contributions: Pacific Proton Escrow Account #9509 | $24,012,387 | $0 | ($24,012,387) |
| Offering Expenses[2] | $1,500,200 | $2,500,000 | $999,800 |
| Business Expenditures[3] | $0 | $14,228 | $14,228 |
| Transfers from/to Liu & Wang | $0 | $1,000,000 | $1,000,000 |
| Personal Expense[4] | $0 | $500,000 | $500,000 |
| Transfers from/to Liu Affiliates | | | |
| Beverly Hospital | $0 | $0 | $0 |
| MP Hotel | $0 | $0 | $0 |
| United MPH Ventures LLC | $0 | $0 | $0 |
| Transfers from/to Unknown Payees | $500,450 | $500,000 | ($450) |
| **Total** | **$26,724,077** | **$26,224,428** | **($499,649)** |

Exhibit 1 Page 52

# Exhibit 3
## Summary of Cash Flows
### PPEB5 Fund, Pacific Proton Regional Center, Pacific Proton
9/10/13 – 4/28/16

| Category | Inflows | Outflows | Net (Inflows) Outflows |
|---|---|---|---|
| | [a] | [b] | [c] = [b] - [a] |
| *Beverly Proton Center JP Morgaon Chase Account 427395152* [1] | | | |
| Transfers from/to Defendants | | | |
|    Pacific Proton Therapy Regional Center | $42,000 | $891,100 | $849,100 |
|    Pacific Proton EB-5 Fund | $21,210,200 | $9,960 | ($21,200,240) |
|    Beverly Proton Center[1] | $0 | $0 | $0 |
| Investor Deposit | $0 | $0 | $0 |
| Offering Expenses[2] | $559,930 | $9,399,259 | $8,839,329 |
| Business Expenditures[3] | $0 | $5,239,375 | $5,239,375 |
| Transfers from/to Liu & Wang | $0 | $5,720,000 | $5,720,000 |
| Personal Expense[4] | $0 | $562,255 | $562,255 |
| Transfers from/to Liu Affiliates | | | |
|    Beverly Hospital | $0 | $0 | $0 |
|    MP Hotel | $0 | $200,000 | $200,000 |
|    United MPH Ventures LLC | $0 | $0 | $0 |
| Transfers from/to Unknown Payees | $500,000 | $39,500 | ($460,500) |
| **Total** | **$22,312,130** | **$22,061,449** | **($250,681)** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMC-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16); Citibank Account 9769 Data, SEC-CITIBANK-E-0000087 (9/10/13–3/8/16)

Note:
[1] Beverly Proton Center, LLC, was formally known as Los Angeles County Proton Therapy, LLC.
[2] Offering Expenses include broker fees paid to Overseas Chinese Immigration Consulting Ltd., United Damei Group (United Damei Investment Company, Ltd. & Be jing Pacific Damei Consulting Co., Ltd), and Hang Seng Bank (Delsk), and other professional fees related to the offering.  See **Exhibit 5**.
[3] See **Exhibit 6** for a list of Business Expenditures.
[4] Reflects cash flows that were deemed to be of a personal nature such as withdrawals by Liu or Wang, personal credit card payments, payments to schools, and personal purchases, among others.  See detailed list in **Exhibit 8.**
[5] Transfers between the two accounts of Pacific Proton EB-5 Fund are not shown.

Exhibit 1 Page 53

**Exhibit 4**
**Summary of Investor Deposits**
10/1/14 – 4/28/16

| | Capital Contributions | | | | | Administrative Fees | | | |
| | Pacific Proton Escrow Account #9509 | | PPEB5 Fund Account #1028 | | Combined | Pacific Proton Therapy Regional Center Account #6428 | | | |
| Investor | Deposits | Refunds | Deposits | Refunds | Net Total | Deposits | Refunds | Net Total | Grand Net Total |
|---|---|---|---|---|---|---|---|---|---|
| | [a] | [b] | [c] | [d] | [e] = [a] - [b] + [c] - [d] | [f] | [g] | [h] = [f] - [g] | [i] = [e] + [h] |
| Cao, Xiang | $500,250 | $0 | $0 | $0 | $500,250 | $44,975 | $0 | $44,975 | $545,225 |
| Chen, Guichan | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Chen, Lian | $500,230 | $0 | $0 | $0 | $500,230 | $44,980 | $0 | $44,980 | $545,210 |
| Chen, Quan[1] | $500,257 | $0 | $0 | $0 | $500,257 | $45,000 | $0 | $45,000 | $545,250 |
| Chen, Xiangchun | $500,257 | $0 | $0 | $0 | $500,257 | $45,007 | $0 | $45,007 | $545,264 |
| Chen, Zhong | $500,275 | $0 | $0 | $0 | $500,275 | $45,025 | $0 | $45,025 | $545,300 |
| Dai, Lixia | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Ding, Liang | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Fei, Jia | $500,224 | $0 | $0 | $0 | $500,224 | $45,024 | $0 | $45,024 | $545,248 |
| He, He | $500,230 | $0 | $0 | $0 | $500,230 | $44,980 | $0 | $44,980 | $545,210 |
| Hu, Runyi | $500,350 | $0 | $0 | $0 | $500,350 | $45,100 | $0 | $45,100 | $545,450 |
| Lan, Jie | $500,224 | $0 | $0 | $0 | $500,224 | $44,974 | $0 | $44,974 | $545,198 |
| Li, Chunbo | $500,317 | $0 | $0 | $0 | $500,317 | $45,007 | $0 | $45,007 | $545,324 |
| Li, Li | $500,400 | $0 | $0 | $0 | $500,400 | $45,085 | $0 | $45,085 | $545,485 |
| Li, Longwen | $500,250 | $500,000 | $0 | $0 | $250 [2] | $45,000 | $45,000 | $0 | $250 [2] |
| Li, Zengwei | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Li, Zezhou | $500,255 | $0 | $0 | $0 | $500,255 | $45,005 | $0 | $45,005 | $545,260 |
| Lin, Weiping | $500,275 | $0 | $0 | $0 | $500,275 | $45,027 | $0 | $45,027 | $545,302 |
| Lin, Wen | $500,274 | $0 | $0 | $0 | $500,274 | $45,024 | $0 | $45,024 | $545,298 |
| Liu, Feng | $500,275 | $0 | $0 | $0 | $500,275 | $45,025 | $0 | $45,025 | $545,300 |
| Liu, Genlan | $500,290 | $0 | $0 | $0 | $500,290 | $45,040 | $0 | $45,040 | $545,330 |
| Liu, Jingzhong | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Liu, Rui | $500,275 | $0 | $0 | $0 | $500,275 | $45,025 | $0 | $45,025 | $545,300 |
| Liu, Yimin | $500,020 | $0 | $0 | $0 | $500,020 | $45,020 | $0 | $45,020 | $545,040 |
| Lu, Xueying | $500,275 | $0 | $0 | $0 | $500,275 | $45,025 | $0 | $45,025 | $545,300 |
| Ma, Chaoqi | $500,225 | $0 | $0 | $0 | $500,225 | $44,980 | $0 | $44,980 | $545,205 |
| Qian, Yu | $500,280 | $0 | $0 | $0 | $500,280 | $45,030 | $0 | $45,030 | $545,310 |
| Shan, Yuhan | $500,300 | $0 | $0 | $0 | $500,300 | $45,020 | $0 | $45,020 | $545,320 |
| Shao, Xiaojing | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Shen, Juan | $500,280 | $0 | $0 | $0 | $500,280 | $45,030 | $0 | $45,030 | $545,310 |
| Tang, Xiaomin | $500,350 | $0 | $0 | $0 | $500,350 | $45,000 | $0 | $45,000 | $545,350 |
| Wang, Kexin | $0 | $0 | $0 | $500,000 | ($500,000) | $0 | $0 | $0 | ($500,000) |

Exhibit 1 Page 54

**Exhibit 4**
**Summary of Investor Deposits**
10/1/14 – 4/28/16

| Investor | Capital Contributions | | | | | Administrative Fees | | | Grand Net Total |
| | Pacific Proton Escrow Account #9509 | | PPEB5 Fund Account #1028 | | Combined | Pacific Proton Therapy Regional Center Account #6428 | | | |
| | Deposits | Refunds | Deposits | Refunds | Net Total | Deposits | Refunds | Net Total | |
| | [a] | [b] | [c] | [d] | [e] = [a] - [b] + [c] - [d] | [f] | [g] | [h] = [f] - [g] | [i] = [e] + [h] |
| Wang, Wang | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Wang, Zhongsheng | $0 | $0 | $700,080 | $0 | $700,080 | $49,948 | $0 | $49,948 | $750,028 |
| Wang, Zihao | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Wu, Dong | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Xiang, Dong | $500,250 | $0 | $0 | $0 | $500,250 | $45,030 | $0 | $45,030 | $545,280 |
| Xu, Faxiao | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Xu, Guanghe | $500,272 | $0 | $0 | $0 | $500,272 | $45,024 | $0 | $45,024 | $545,296 |
| Yan, Chenglong | $500,224 | $0 | $0 | $0 | $500,224 | $45,004 | $0 | $45,004 | $545,228 |
| Yang, Jianqiang | $500,225 | $0 | $0 | $0 | $500,225 | $45,025 | $0 | $45,025 | $545,250 |
| Yang, Yong | $500,250 | $0 | $0 | $0 | $500,250 | $45,030 | $0 | $45,030 | $545,280 |
| Yu, Lifang | $500,030 | $0 | $0 | $0 | $500,030 | $45,020 | $0 | $45,020 | $545,050 |
| Zhang, Fan | $500,250 | $0 | $0 | $0 | $500,250 | $45,050 | $0 | $45,050 | $545,300 |
| Zhang, Haixia | $500,225 | $0 | $0 | $0 | $500,225 | $45,027 | $0 | $45,027 | $545,252 |
| Zhang, Jiahao | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Zhang, Lu | $500,250 | $0 | $0 | $0 | $500,250 | $45,000 | $0 | $45,000 | $545,250 |
| Zhao, Jian | $500,300 | $0 | $0 | $0 | $500,300 | $45,025 | $0 | $45,025 | $545,325 |
| Zhao, Wei | $500,250 | $0 | $0 | $0 | $500,250 | $45,050 | $0 | $45,050 | $545,300 |
| Zhou, Changgang | $500,250 | $0 | $0 | $0 | $500,250 | $45,050 | $0 | $45,050 | $545,300 |
| Zhou, Yitian | $500,230 | $0 | $0 | $0 | $500,230 | $45,010 | $0 | $45,010 | $545,240 |
| **Total Named Investors** | **$24,512,387** | **$500,000** | **$700,080** | **$500,000** | **$24,212,467** | **$2,255,701** | **$45,000** | **$2,210,701** | **$26,423,168** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP xls (10/1/14–4/28/16); East West Bank Account 9509 Data, SEC-EWB-E-0000027 (8/25/15–12/9/15), SEC-EWB-E-0000028 (11/14/14–12/31/15), and SEC-EWB-E-0000058 (3/16/16)

Note:
[1] For this investor, the Escrow Account data reflects a transfer of $500,250 from the Pacific Proton Escrow Account #9509 to the EB-5 Fund Account #1028, but does not reflect the corresponding deposit.  This discrepancy appears to be due to the fact that the deposit preceded the period captured by the Escrow Account data under review.  For purposes of this analysis, it was assumed that a deposit of $500,250 did occur in a prior period.
[2] $250 service fee was retained in the EB-5 Fund Account #1028 after funds were returned to this investor.

Exhibit 1 Page 55

# Exhibit 5
## Summary of Offering Expenses
### 10/1/14 – 4/28/16

| Category | Net Cash Outflow |
|---|---|
| Broker Fees[1] | $10,829,870 |
| Legal Miller Mayer LLP | $498 |
| Evans, Carroll & Associates Inc. | $10,000 |
| Accounting Marcum LLP | $63,435 |
| Antonio Ramon Villaraigosa | $50,572 |
| **Total** | **$10,954,375** |
| Adjustment[2] | ($8,743,674) |
| **Deductible Amount** | **$2,210,701** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16)

Note:
[1]  Represents total amounts paid to UDG, Delsk, Overseas Chinese, net of any deposits received from these firms.
[2]  Per the PPEB5 Fund private offering memorandum, expenses incurred in connection with the offering should be paid using proceeds from administrative fees.  The adjustment reflects the amount by which observed offering expenses should be reduced to limit them to the actual net amount of administrative fees received from PPEB5 investors.  See **Exhibit 4**.

Exhibit 1 Page 56

# Exhibit 6
## Summary of Business Expenditures
### 9/10/13 – 4/28/16

| Category | Total Cash Outflows | Adjustments | Deductible Amount |
|---|---|---|---|
| | [a] | [b] | [c] = [a] - [b] |
| *Proton Therapy Expenses* | | | |
| Land Lease payments Dr. Thropay | $524,000 | $0 | $524,000 |
| Land remediation - R. Alan Construction | $466,487 | $0 | $466,487 |
| Construction Design - X Science Studio | $535,292 | $0 | $535,292 |
| Equipment Purchase - Mevion Medical Systems, Inc. | $3,000,000 | ($3,000,000)[1] | $0 |
| Equipment Purchase - Optivus Proton Beam Therapy, Inc. | $368,100 | $0 | $368,100 |
| Furnitures & Fixtures | $78,532 | $0 | $78,532 |
| Office Equipment | $9,311 | $0 | $9,311 |
| **Total** | **$4,981,722** | **($3,000,000)** | **$1,981,722** |
| *State & Federal Taxes* | | | |
| CA State Franchise Tax | $10,900 | $0 | $10,900 |
| **Total** | **$10,900** | **$0** | **$10,900** |
| *Miscellaneous Expenses* | | | |
| Employee salaries | $167,680 | $0 | $167,680 |
| Office rent | $120,901 | $0 | $120,901 |
| Office expenses | $2,707 | $0 | $2,707 |
| Bank service charges | $19,843 | $0 | $19,843 |
| Travel expense | $20,394 | $0 | $20,394 |
| Telephone expense | $7,764 | $0 | $7,764 |
| Consulting fees | $233,761 | $0 | $233,761 |
| Health Insurance | $14,922 | $0 | $14,922 |
| Vehicle Insurance | $3,027 | $0 | $3,027 |
| Other Insurance | $3,625 | $0 | $3,625 |
| Postage and delivery | $11,730 | $0 | $11,730 |
| Licenses and permits | $2,721 | $0 | $2,721 |
| Miscellaneous | $687 | $0 | $687 |
| **Total** | **$609,763** | **$0** | **$609,763** |
| *Professional Fees* | | | |
| Others | $503,425 | $0 | $503,425 |
| **Total** | **$503,425** | **$0** | **$503,425** |
| **Total Business Expenditures** | **$6,105,809** | **($3,000,000)** | **$3,105,809** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16); Citibank Account 9769 Data, SEC-CITIBANK-E-0000087 (9/10/13–3/8/16)

Note:
[1] The PPEB5 Fund private offering memorandum only provided for proton equipment purchases from Optivus. Therefore Mevion equipment purchases are not considered to be deductible.

Exhibit 1 Page 57

# Exhibit 7
# Summary of Transfers to Liu/Wang and Personal Expenses
## 10/1/14 – 4/28/16

| Category | Net Cash Outflow [a] | Adjustments [b] | Deductible Amount [c] = [a] - [b] |
|---|---|---|---|
| *Transfers to Liu/Wang* | | | |
| Charles Liu | $5,320,092 | ($5,320,092) [1] | $0 |
| Xin Wang | $1,429,600 | ($1,429,600) [1] | $0 |
| **Total** | **$6,749,692** | **($6,749,692)** | **$0** |
| | | | |
| *Personal Expenses* | | | |
| Liu & Wang personal expenses[2] | $2,367,167 | ($2,367,167) [3] | $0 |
| **Total** | **$2,367,167** | **($2,367,167)** | **$0** |
| | | | |
| **Total Transfers and Personal Expenses** | **$9,116,859** | **($9,116,859)** | **$0** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16)

Note:
[1]  Transfers to Liu and Wang are deemed non-deductible.  To the extent they may be considered as reimbursement for expenses incurred before fundraising began, they would also not be deductible since the actual net amount of administrative fees received from PPEB5 investors is less than the observed offering expenses, see **Exhibit 5**.
[2]  Reflects cash flows that were deemed to be of a personal nature such as withdrawals by Liu or Wang, personal credit card payments, payments to schools, personal purchases, and payments to vendors for personal or residential services, among others.  See **Exhibit 8**.
[3]  The PPEB5 Fund private offering memorandum does not provide for the payment of personal expenses using investment proceeds.  Thus, personal expenses are deemed not to be deductible. To the extent they may be considered as reimbuseement for expenses incurred before fundraising began, they would also not be deductible since the actual net amount of administrative fees received from PPEB5 investors is less than the observed offering expenses, see **Exhibit 5**.

Exhibit 1 Page 58

# Exhibit 8
# Detailed Summary of Personal Expenses Paid on Behalf of Charles Liu and Xin Wang
## 10/1/14 – 4/28/16

| Paying Entity | Receiving Entity | Cash Outflow |
|---|---|---|
| Pacific Proton EB-5 Fund JP Morgan Chase Account 528951028 | Other Withdrawal | $500,000 |
| Beverly Proton Center JP Morgan Chase Account 427395152 | Other Withdrawal | $465,000 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Other Withdrawal | $462,180 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Chase Credit Card Payment 3763 | $219,326 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Amex Credit Card Payment | $124,010 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Chase Credit Card Payment 0571 | $110,526 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Chase Credit Card Payment 8187 | $70,173 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ALLY Payment | $67,765 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Caesar Palace Las Vegas | $56,173 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Mercedes Benz | $47,828 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Barclay Credit Card Payment | $35,458 |
| Beverly Proton Center JP Morgan Chase Account 427395152 | Chase Card Payment | $33,063 |
| Beverly Proton Center JP Morgan Chase Account 427395152 | IBA Dosimetry America | $31,506 |
| Beverly Proton Center JP Morgan Chase Account 427395152 | Chase Credit Card Payment 9114 | $29,736 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Chase Card Payment | $24,383 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | County of Orange Tax/Fee | $22,409 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | US Best Repair Services | $9,850 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Bear Brand | $7,912 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Nassau | $4,225 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Laguna Niguel | $4,083 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Trinity Foundation Marianapolis Preparatory School | $3,195 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Columbus Data Las Vegas | $3,122 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Rohan Heating & Cooling | $3,040 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Allusions Glass & Mirror | $2,500 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Laguna Niguel Rolling Hills | $2,468 |
| Beverly Proton Center JP Morgan Chase Account 427395152 | Chase Epay Onus Card Purchase | $2,450 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | myschoolaccount | $2,446 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Host Office Right Las Vegas | $2,024 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | West's Pool & Spa Supply | $1,716 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | San Diego Gas & Electric | $1,601 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Miguel Avian Gardening | $1,515 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Ignacio Isas Tree Trimming | $1,150 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase New York | $1,000 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Bahamas Air Nassau | $950 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Hawthorne Radiology | $925 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Benito Rodriguez | $800 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Department of Motor Vehicles | $800 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Aidan's Landscaping | $770 |

Exhibit 1 Page 59

# Exhibit 8
# Detailed Summary of Personal Expenses Paid on Behalf of Charles Liu and Xin Wang
## 10/1/14 – 4/28/16

| Paying Entity | Receiving Entity | Cash Outflow |
|---|---|---|
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Mission Viejo | $753 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Kerzner International Paradise Island Nassau | $706 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Pathology Medical Services | $600 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Metlife Ins. Co. | $569 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Takashimaya Singapore | $536 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Kahului Aipport Kahului Hawaii | $503 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Ocean Ranch Dana Point | $503 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Miami | $502 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Irvine | $500 |
| Beverly Proton Center JP Morgan Chase Account 427395152 | ATM/Card Purchase Miami | $500 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Moulton Laguna Niguel Water Bill | $500 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | The Gas Co. | $408 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Henry Tsai | $336 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Sirius XM | $334 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Mauricio Rosas | $320 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | MVEP Medical Group | $292 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Windowmasters | $200 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | CR&R Inc. Enviromental Services | $194 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Choya Japanese Cuisine Dana Point | $168 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Quest Diagnositcs | $144 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase CLB Cage Right Las Vegas | $106 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Arco Mission Viejo Gas | $90 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Los Angeles | $65 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Chevron Barstow Gas | $63 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Aliso Viejo | $60 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | American Bio-Clinical Laboratories | $60 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Texaco Primm Nevada Gas | $53 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | Court of California | $25 |
| Pacific Proton Therapy Regional Center JP Morgan Chase Account 934026428 | ATM/Card Purchase Arco Paypoint Victorville | $3 |
| **Total** | | **$2,367,167** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16)

Exhibit 1 Page 60

# Exhibit 9
# Calculation of Defendants' Pecuniary Gains
## 9/10/13 – 4/28/16

|  | Amount |
|---|---|
| Receipts Disgorgement[1] | $26,733,019 |
| *Less:* |  |
| Refunds[2] | $1,193,998 |
| **Net Receipts** | **$25,539,021** |
|  |  |
| Deductible Expenditures |  |
| Offering Expenses | $2,210,701 |
| Business Expenditures | $3,105,809 |
| Transfers to Liu/Wang | $0 |
| **Total Deductible Expenditures** | **$5,316,510** |
|  |  |
| **Defendant's Pecuniary Gains** | **$20,222,511** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16); Citibank Account 9769 Data, SEC-CITIBANK-E-0000087 (9/10/13–3/8/16); SEC v. Liu, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017)

Note:
[1]  Disgorgement per the Supreme Court's June 22, 2020 Final Judgment.
[2]  Reflects total refunds of capital contributions and administrative fees to named investors, and transfers to unknown payees.

Exhibit 1 Page 61

# Exhibit 9A
# Calculation of Defendants' Pecuniary Gains
## 9/10/13 – 4/28/16

|  | Amount |
|---|---|
| Net Investor Deposits Received[1] | $26,423,168 |
| *Less:* |  |
| Fund Remaining in the Corporate Defendants' Accounts[2] | $234,899 |
| **Net Receipts** | **$26,188,269** |
|  |  |
| Deductible Expenditures |  |
| Offering Expenses | $2,210,701 |
| Business Expenditures | $3,105,809 |
| Transfers to Liu/Wang | $0 |
| **Total Deductible Expenditures** | **$5,316,510** |
|  |  |
| **Defendant's Pecuniary Gains** | **$20,871,759** |

Source: JP Morgan Chase Account 1028 Data, SEC-JPMC-E-0000002 (10/1/14–1/21/16) and SEC-JPMCB-P-0000808–13 (2/11/16–3/21/16); JP Morgan Chase Account 5152 Data, SEC-JPMC-E-0000004 (10/1/14–1/29/16) and Lorraine Decl. Ex. 9 - Bev Proton - 5152 SB710008_IR 05Feb16-985LLP.xls (10/1/14–4/28/16); JP Morgan Chase Account 6428 Data, SEC-JPMC-E-0000001 (10/1/14–1/26/16), SEC-JPMCB-P-0000771–807 (2/1/16–3/29/16), and Lorraine Decl. Ex. 11 - Pac Proton Regional Center - May 2016 Acct 6428 SB710008_IR 05feb16-980LLP.xls (10/1/14–4/28/16); Citibank Account 9769 Data, SEC-CITIBANK-E-0000087 (9/10/13–3/8/16); SEC v. Liu, 262 F. Supp. 3d 957, 970–972 (C.D. Cal. 2017); East West Bank Account 9509 Data, SEC-EWB-E-0000027 (8/25/15–12/9/15), SEC-EWB-E-0000028 (11/14/14–12/31/15), and SEC-EWB-E-0000058 (3/16/16).

Note:
[1]  Net investor funds deposited into the PPEB5 Fund and Pacific Proton Regional Center bank accounts.
[2]  Reflects the amount of fund that remained in the corporate accounts for the project.

Exhibit 1 Page 62