# EXHIBIT 22

```
1                UNITED STATES DISTRICT COURT
2                CENTRAL DISTRICT OF CALIFORNIA
3                      SOUTHERN DIVISION
4
5   SECURITIES AND EXCHANGE      )
    COMMISSION,                  )
6                                )
                Plaintiff,       )  Case No.
7   v.                           )  8:16-cv-00974-CJC-AGR
                                 )
8   CHARLES C. LIU; XIN WANG     )
    a/k/a LISA WANG; PACIFIC     )
9   PROTON THERAPY REGIONAL      )
    CENTER, LLC; PACIFIC PROTON  )
10  EB-5 FUND, LLC; and BEVERLY  )
    PROTON CENTER, LLC f/k/a     )
11  LOS ANGELES COUNTY PROTON    )
    THERAPY, LLC,                )
12                               )
                Defendants.      )
13  _____)
14
15
16            REMOTE VIDEO DEPOSITION OF
17       THEODORE R. GINSBURG, CPA, JD, MBA
18              Defense Expert Witness
19              Friday, April 16, 2021
20          CONDUCTED VIA VIDEOCONFERENCE
21
22
23
    Stenographically Reported by:
24  Marty E. McArver, RDR, FPR
    CA-Certified Shorthand Reporter #2769
25  Job No. 210416MEM

                                                        1
```

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3                     SOUTHERN DIVISION
 4
 5  SECURITIES AND EXCHANGE      )
    COMMISSION,                  )
 6                               )
                 Plaintiff,      ) Case No.
 7  v.                           ) 8:16-cv-00974-CJC-AGR
                                 )
 8  CHARLES C. LIU; XIN WANG     )
    a/k/a LISA WANG; PACIFIC     )
 9  PROTON THERAPY REGIONAL      )
    CENTER, LLC; PACIFIC PROTON  )
10  EB-5 FUND, LLC; and BEVERLY  )
    PROTON CENTER, LLC f/k/a     )
11  LOS ANGELES COUNTY PROTON    )
    THERAPY, LLC,                )
12                               )
                 Defendants.     )
13  _____)
14
15
16
17
18          Videotaped deposition of THEODORE R.
19  GINSBURG, CPA, JD, MBA taken on behalf of Plaintiff,
20  via Webex internet videoconference, beginning at
21  10:05 a.m. and ending at 1:58 p.m. EDT on Friday,
22  April 16, 2021, before Marty E. McArver, Certified
23  Shorthand Reporter #2769, Registered Diplomate
24  Reporter.
25
                                                       2
```

```
10:06:23   1   officer for this deposition, which is being taken
10:06:23   2   via internet videoconference and is being conducted
10:06:23   3   remotely using Webex.
10:06:23   4           California Senate Bill 1146 was signed into
10:06:23   5   law on September 18, 2020, and specifically provides
10:06:23   6   that a deponent is not required to be physically
10:06:23   7   present with the deposition officer -- that's me --
10:06:23   8   when being sworn in at the time of the deposition.
10:06:23   9           At this time if anyone has an objection to
10:06:23  10   my administering the oath to the deponent remotely
10:06:23  11   or to the taking of this deposition via internet
10:06:23  12   videoconference, please state so now.
10:06:23  13           (No objection heard.)
10:06:23  14           Hearing no objection, I will now swear
10:06:23  15   in the witness.
10:06:23  16           THEODORE R. GINSBURG, CPA, JD, MBA,
10:06:25  17   being first duly sworn remotely, testifies as
10:06:25  18   follows:
10:07:25  19           THE WITNESS:  I so swear.
10:07:27  20           THE REPORTER:  Thank you.
10:07:28  21           Counsel, you may proceed.
10:07:32  22           MR. LEUNG:  Thank you, Ms. McArver.
10:07:34  23           Just to close that out, Herve, do you
10:07:39  24   stipulate on behalf of the individual defendants
10:07:42  25   that the remote administration of the oath complies
```

9

```
10:50:11   1        A    I would -- I would say no.  If the --
10:50:22   2             When clients ask me to determine what
10:50:27   3   is reasonable compensation, that analysis is done --
10:50:34   4   unless I'm instructed otherwise -- purely on
10:50:41   5   the basis of what would the market say that an
10:50:48   6   individual in this position, in this type of
10:50:51   7   company, perhaps in this industry, in this
10:50:55   8   geography, whatever, what does the market say
10:50:58   9   you would have to pay this person, pay a person,
10:51:02  10   to get them to take the job, to take the position.
10:51:10  11             Whether the person had been -- not been
10:51:16  12   doing a good job or had been stealing from the
10:51:19  13   company or other issues wouldn't bear on what the
10:51:25  14   marketplace would pay a person -- not that person,
10:51:30  15   but a person -- with the right experience, or
10:51:35  16   whatever, to do that job.
10:51:37  17             So I'd have to say that what that person
10:51:41  18   actually did, what that employee actually did, is
10:51:46  19   irrelevant, I guess, to the nature of my study.
10:51:52  20        Q    Okay.  And so stealing on the job is
10:51:56  21   irrelevant to your view of what an employee should
10:51:58  22   be paid?
10:52:00  23        A    I would say yes.  I mean, my proposition
10:52:10  24   surveys that I would use to make these
10:52:33  25   judgments(inaudible)...
```

37

```
10:52:33   1              (Reporter requests clarification.)
10:52:33   2       A      I would say that the issue of whether an
10:52:38   3   employee is stealing from the employer is irrelevant
10:52:45   4   to the studies that I perform.
10:52:48   5              When I look at my survey sources or I do
10:52:54   6   my proxy reviews, there isn't a survey source that
10:53:01   7   says:  Here is compensation for executives who steal
10:53:06   8   and here is compensation for executives who don't.
10:53:11   9   That's not -- That data is not broken out.
10:53:15  10              So I would say that it is irrelevant to
10:53:20  11   my study.
10:53:28  12       Q      Well, beyond your study --
10:53:30  13              I understand the services that you provided
10:53:32  14   in your career to generally be along the lines of:
10:53:36  15   Here's what this person is supposed to do at the
10:53:39  16   company.  Here's what I think is reasonable
10:53:42  17   compensation.
10:53:42  18              Are you saying it's completely irrelevant
10:53:45  19   if you know for a fact that the person is stealing
10:53:48  20   from the company?  That fact is irrelevant to how
10:53:52  21   much that person should be paid?
10:53:55  22              I understand your study.  I'm just
10:53:57  23   wondering, you know --
10:53:57  24       A      Yeah.  I think --
10:53:59  25       Q      -- with respect to --
```

38

```
10:54:00   1        A     I think it is irrelevant.
10:54:03   2              I will, however, say -- I'll give you an
10:54:10   3   example of another situation.  In fact, this one,
10:54:18   4   I'm working on right now, okay, that involves an
10:54:25   5   executive who the company believes has been taking
10:54:36   6   too much money, okay, from the company.
10:54:42   7              Partially, there's an issue of reasonable
10:54:46   8   compensation; but partially there's an issue of the
10:54:48   9   type of expense reports, things that the executive
10:54:53  10   has received reimbursement from the company, for
10:54:58  11   expenses paid on behalf of the company.
10:55:02  12              And I'm asked sometimes -- sometimes, and
10:55:04  13   this is what I'm working on right now -- to opine
10:55:07  14   as to whether or not certain expenses are typically
10:55:12  15   allowed to be reimbursed by an employer or not, what
10:55:16  16   are employers typically allowed to reimburse.
10:55:21  17              So in that regard -- So I never make a
10:55:24  18   conclusion that says, yes, the executive is stealing
10:55:27  19   from the company because they received reimbursement
10:55:30  20   for this expenditure.
10:55:33  21              I merely provide the client -- and in this
10:55:36  22   case it is the board of directors of this company --
10:55:39  23   with a list of, for the expenses that you have told
10:55:43  24   me, here are expenses that are typically reimbursed
10:55:46  25   by companies; here are ones that are not.
```

39

```
10:55:49   1             But I never make -- But I never make the
10:55:52   2   decision that says, yes, this expenditure, this
10:55:56   3   was stealing or this was inappropriate.  I just
10:55:59   4   give them market data and my view of the market
10:56:03   5   data.
10:56:04   6             (Screen-sharing stopped.)
10:56:04   7   BY MR. LEUNG:
10:56:05   8       Q     Okay.  Let's --
10:56:07   9       A     And I'm sorry I went off on a tangent
10:56:09  10   there.
10:56:11  11       Q     No, that was helpful.
10:56:17  12             Let's talk about your analysis in this
10:56:19  13   case.
10:56:20  14       A     Uh-huh.
10:56:20  15       Q     Whether or not Mr. Liu engaged in
10:56:23  16   securities fraud is irrelevant to your analysis
10:56:26  17   in this case.
10:56:27  18             Correct?
10:56:27  19       A     That is correct.
10:56:28  20       Q     Whether or not Ms. Wang engaged in
10:56:32  21   securities fraud is irrelevant to your analysis
10:56:34  22   in this case.
10:56:35  23             Correct?
10:56:36  24       A     That is correct.
10:56:38  25       Q     Whether or not Mr. Liu actually performed
```

40

```
10:56:40   1  his duties for the corporate entities is irrelevant
10:56:44   2  to your analysis in this case.
10:56:45   3          Correct?
10:56:47   4      A   That is correct.
10:56:49   5      Q   Whether or not Ms. Wang performed her
10:56:51   6  stated duties for the corporate entities is
10:56:55   7  irrelevant to your analysis in this case.
10:56:58   8          Fair?
10:56:58   9      A   That is correct.
10:57:00  10      Q   And would you agree that whether or
10:57:02  11  not Mr. Liu misappropriated corporate funds is
10:57:07  12  irrelevant to your analysis in this case?
10:57:10  13      A   That is correct.  It is irrelevant.
10:57:13  14      Q   Am I also correct that whether or not
10:57:15  15  Ms. Wang misappropriated corporate funds is
10:57:19  16  irrelevant to your analysis in this case, of what
10:57:22  17  reasonable compensation she should be entitled to?
10:57:26  18      A   That is correct.  It is irrelevant.
10:57:29  19      Q   Whether or not Mr. Liu conducted his duties
10:57:33  20  in a negligent way is irrelevant to your analysis
10:57:37  21  in this case on what he's entitled to in the form
10:57:40  22  of reasonable compensation?
10:57:42  23      A   That is correct.
10:57:43  24          As I said -- As I said before, the -- what
10:57:48  25  my analysis provides is, what does the market say
```

41

```
10:57:56   1   an employer should pay to an executive to perform
10:57:59   2   the duties of that job title.  It's what the market
10:58:03   3   would say, this is what should be paid to that
10:58:06   4   person.
10:58:08   5        Q    Okay.  And whether or not Ms. Wang
10:58:12   6   performed her job in a negligent way is also
10:58:16   7   irrelevant to your assessment in this case of how
10:58:19   8   much reasonable compensation she should have been
10:58:23   9   paid?
10:58:23  10        A    That is correct.  It is irrelevant.
10:58:27  11        Q    Whether or not Mr. Liu conducted company
10:58:30  12   business with a fraudulent intent is likewise
10:58:34  13   irrelevant to your executive compensation analysis
10:58:38  14   in this case.
10:58:39  15             Is that correct, sir?
10:58:40  16        A    That is correct.
10:58:42  17        Q    Whether or not Ms. Wang acted with a high
10:58:45  18   degree of scienter in conducting company business,
10:58:49  19   also irrelevant to your assessment in this case
10:58:52  20   of the executive compensation she is reasonably
10:58:56  21   entitled to.
10:58:57  22             Is that correct?
10:58:58  23        A    That is correct.
10:59:02  24        Q    Whether or not Mr. Liu actually showed
10:59:06  25   up for work in the course of many years under
```

42

```
10:59:09   1    analysis, that's irrelevant to your analysis in
10:59:12   2    this case on the appropriate amount of executive
10:59:14   3    compensation Mr. Liu should have been entitled to?
10:59:17   4        A     That is correct.  It is irrelevant.
10:59:21   5        Q     Whether or not Ms. Wang ever performed
10:59:24   6    a single hour, a single minute of work on behalf
10:59:27   7    of the corporate entities in the United States is
10:59:30   8    irrelevant to your analysis, in this case of the
10:59:34   9    executive compensation that she might be reasonably
10:59:38  10    entitled to.
10:59:38  11              Is that fair?
10:59:39  12        A     That -- That is a fair statement.  It's
10:59:42  13    irrelevant.
10:59:44  14        Q     Okay.  And whether or not Mr. Liu engaged
10:59:47  15    in self-dealing to the detriment of his business
10:59:51  16    partners is irrelevant to your executive
10:59:54  17    compensation analysis in this case.
10:59:56  18              Correct?
10:59:57  19        A     That is irrelevant to my -- to my analysis.
11:00:04  20              All of the things -- You know, in my mind,
11:00:08  21    if any or all of those things occurred, then it was
11:00:13  22    really the responsibility of the company's board of
11:00:21  23    directors, or whatever, perhaps, to deal with those
11:00:24  24    issues.
11:00:24  25              It is not an issue of -- It's not an issue
```

43

```
11:00:28   1   of, because you acted badly, however you define
11:00:33   2   that, you should not be paid, as far as my services
11:00:41   3   go, as far as my work is concerned.
11:00:46   4               MR. LEUNG:  Ms. McArver, can you read
11:00:48   5   back that answer for me, please.
11:00:49   6               THE REPORTER:  Sure.  Just a moment.
11:00:49   7               "A   That is irrelevant to my -- to
11:00:02   8          my analysis.
11:00:03   9               "All of the things -- You know,
11:00:06  10          in my mind, if any and all of those
11:00:10  11          things occurred, then it was really
11:00:14  12          the responsibility of the company's
11:00:21  13          board of directors, or whatever,
11:00:21  14          perhaps, to deal with those issues.
11:00:24  15               "It is not an issue of -- It's
11:00:28  16          not an issue of, because you acted
11:00:31  17          badly, however you define that, you
11:00:36  18          should not be paid, as far as my
11:00:41  19          services go, as far as my work is
11:00:45  20          concerned."
11:00:49  21   BY MR. LEUNG:
11:01:32  22       Q    Mr. Ginsburg, when were you first contacted
11:01:34  23   by the defense to perform work on this case?
11:01:37  24       A    I would -- I could probably go on my
11:01:48  25   e-mails and look that up.  I would say perhaps six
```

44

```
01:42:22   1   the survey.
01:42:27   2        Q    Your opinions assume that Liu did not
01:42:31   3   commit securities fraud?
01:42:32   4        A    My opinion has -- ignores that fact.  What
01:42:36   5   Liu did or Wang did is not relevant to my opinion.
01:42:43   6             My opinion is what will the market say.
01:42:48   7   We're hiring somebody.  What do we need to pay that
01:42:51   8   person to do the job denoted in the title that they
01:42:55   9   were hired to do.
01:42:58  10             MR. GOURAIGE:  I would add an
01:43:00  11   objection.  Here again, I don't know why we're
01:43:03  12   spending the time on this.  This witness is
01:43:05  13   not brought forth as an expert on whether or
01:43:08  14   not Liu or Wang violated the securities laws.
01:43:13  15             He's brought here as an expert who
01:43:15  16   has done a reasonable compensation study.
01:43:19  17             None of this examination about the
01:43:21  18   judge's summary judgment ruling has anything
01:43:26  19   to do with his expert testimony.
01:43:29  20   BY MR. LEUNG:
01:43:30  21        Q    Turning to page 22 of Exhibit 158, the
01:43:33  22   court found:
01:43:33  23                "Liu and Wang's receipt of
01:43:37  24             millions of dollars of investor
01:43:39  25             funds was unequivocally negligent.
```

140

```
01:43:42   1              No reasonable party managing the
01:43:44   2         development of an EB-5-compliant
01:43:47   3         proton therapy center in accordance
01:43:49   4         with the representations made to
01:43:50   5         investors would allow construction
01:43:52   6         to languish while funneling millions
01:43:55   7         of dollars to themselves, to foreign
01:43:57   8         entities they controlled, and to
01:43:59   9         foreign entities tasked with enticing
01:44:01  10         more investors."
01:44:03  11              Do you disagree with that factual finding
01:44:05  12  of the court?
01:44:08  13              MR. GOURAIGE:  Objection.  Again, this
01:44:09  14  has nothing to do with the witness' designation
01:44:14  15  as an expert witness under his reasonable
01:44:19  16  compensation study.  It is absolutely irrelevant
01:44:22  17  to his testimony.  And it's just basically,
01:44:25  18  frankly, a waste of time.
01:44:29  19  BY MR. LEUNG:
01:44:30  20       Q    Answer the question.
01:44:31  21       A    My -- My response is, I have no basis
01:44:34  22  to determine whether or not the receipt was
01:44:41  23  negligent, whether what they did was reasonable
01:44:44  24  or unreasonable.
01:44:46  25              I actually have no understanding of what
```

141

```
01:44:50   1   it was that Liu and Wang did or did not do with
01:44:55   2   any funds that were raised for this program.
01:45:12   3         Q    Well, were you asked to give consideration
01:45:14   4   to those facts, the adjudication of securities fraud
01:45:20   5   and the actual findings of the court?
01:45:22   6              Did counsel direct you to consider those
01:45:26   7   exigent -- that exigent information in forming
01:45:28   8   your opinions?
01:45:30   9         A    He did not.  And everything --
01:45:34  10         Q    Did you ask him about it?
01:45:36  11         A    Pardon me?
01:45:37  12         Q    Did you ask about it?
01:45:38  13         A    I did not.  I did not because, again, it
01:45:41  14   is irrelevant to the study that I had done, which
01:45:46  15   is what would the marketplace pay people to fill
01:45:50  16   these positions.
01:45:52  17              So what happened, what actually happened,
01:45:54  18   is irrelevant to my determination.
01:45:57  19              And as I said before, this is the first
01:45:59  20   time I've seen this summary judgment report or any
01:46:04  21   other report related -- any legal report related
01:46:09  22   to this entire matter aside from the SEC original
01:46:14  23   complaint.
01:46:17  24         Q    And, Mr. Ginsburg, if what actually
01:46:19  25   happened is irrelevant to the opinions you formed
```

142

```
01:46:22   1   in this case, how do your opinions fit the facts
01:46:26   2   of this case?
01:46:35   3        A    I guess I'm not quite following what
01:46:39   4   you're -- what you're asking.
01:46:43   5        Q    We can move on.
01:46:45   6             In your report you opine that -- this
01:46:47   7   is a quote:
01:46:47   8             "...our calculation of
01:46:48   9             reasonable total compensation
01:46:50  10             to Liu for the 2011-2016 period
01:46:54  11             (including all commissions) is
01:46:55  12             $7,211,692..."
01:46:57  13             Now, that $7.2 million is more than the
01:47:00  14   $6.7 million in money referenced by Judge Carney
01:47:07  15   in his order.  He described that compensation as
01:47:10  16   exorbitant and contrary to the representations
01:47:13  17   made in the private offering memorandum.
01:47:15  18             Is "reasonable," as you use the term in
01:47:18  19   your report, synonymous with "exorbitant"?
01:47:25  20             MR. GOURAIGE:  Objection to the
01:47:26  21   question.  The judge's opinion was not conducting
01:47:31  22   a reasonable compensation study to determine
01:47:35  23   what the market would pay anyone performing the
01:47:39  24   functions that Liu and Wang were performing.  So
01:47:44  25   this is like two ships passing each other in the
```

143

```
 1                  REPORTER'S CERTIFICATION
 2        I, Marty E. McArver, Registered Diplomate
 3   Reporter and Certified Shorthand Reporter #2769 in
 4   and for the State of California, do hereby certify:
 5        That the witness was administered the oath
 6   remotely by me pursuant to California Senate Bill
 7   1146, signed into law on September 18, 2020,
 8   allowing the witness to be sworn remotely;
 9        That the deposition was then taken via Webex
10   internet videoconference before me at the time herein
11   set forth; that the testimony and proceedings were
12   reported stenographically by me and later transcribed
13   into typewriting under my direction; that the foregoing
14   is a true record of the testimony and proceedings heard
15   and understood by me at that time; and that counsel
16   requested that the witness read and sign the deposition
17   transcript.
18        I further certify that I am not interested in
19   the outcome of said action, nor am I connected with
20   nor related to any of the parties in said action, nor
21   to their respective counsel.
22        IN WITNESS WHEREOF, I have hereunto set my hand
23   this 21st day of April, 2021.
24                          _____
25                          MARTY E. McARVER, CA CSR #2769
```

Exhibit 22 Page 430