# EXHIBIT 26

*16(2)*

# EMPLOYMENT AGREEMENT

THIS AGREEMENT is made by and between Beverly Proton Center, LLC, a California Limited Liability Company, formally known as Los Angeles County Proton Therapy, LLC (hereinafter called "Company") and Charles C Liu (hereinafter called "Employee").

## RECITALS

A.  **WHEREAS** Company is in the business of developing Proton Therapy Center and requires the services of a President of the company, and wishes to extend to employee an offer of employment;

B.  **WHEREAS** Employee has represented to Company that he has the skills and experience necessary to perform the duties of such President;

C.  **WHEREAS** Employee desires to accept an offer of employment by Company as its President;

NOW THEREFORE, in consideration of the above, and of the mutual agreements hereinafter set forth, the parties hereto do hereby agree as follows:

## AGREEMENT

1.  **Offer of Employment**:  Company hereby offers employment to Employee as President upon the terms and conditions set forth in this Agreement.

2.  **Acceptance of Employment**:  Employee accepts Company's employment offer upon the terms and conditions set forth in this Agreement.

3.  **Term of Agreement**:

    This Agreement shall have a term of five years and shall be renewable upon the mutual agreement of the parties by separate contract at the expiration of the term of employment.

4.  **Employee Compensation**:

    Employee shall receive as compensation an annual base salary of $550,000.00. The Company agrees to pay the employee since January 2011. In addition to base salary, Employee shall earn bonus on the following basis:

    Eight percent of the total capital, including debt financing raised reached up to $28,000,000.00

5.  **Payment of Salary**:

**EXHIBIT 120**
2-24-2021  C. Liu

Exhibit 26 Page 488

Company shall pay Employee base salary according to the Company's regular payroll schedule.

6. <u>Employee's Employment Duties</u>:

    a. Employee shall be responsible for the day-to-day operation of the corporation and its production facility.

    b. In performing his job duties for Company, Employee shall devote his full time attention and efforts to discharge the responsibilities assigned to him, shall not in any manner work for any other Company, in any business related to or unrelated to the business of Company, or to compete with Company on an independent basis, or otherwise, and shall perform such other duties consistent with his position, as may from time to time be assigned to him by Company. The term "full time", for purposes of this Agreement is agreed to be not less than forty (40) hours per week.

7. <u>Telephone Service</u>:

Company shall provide Employee with one Cellular Telephone and one Cellular Telephone Account, corresponding thereto.

8. <u>Employee's Reimbursement for Expenses</u>:

    a. Employee shall be entitled to the reimbursement of all normal and justified business expenses (reimbursable business expenses) reasonably incurred in connection with the performance of Employee's employment duties with Company.

    b. Company shall provide Employee with a Corporate Credit Card for purposes of payment of business expenses.

    c. For cash disbursements by Employee for reimbursable business expenses, Employee shall submit a monthly itemized business expense report to Company on or about the first (1st) day of each month, along with actual receipts for such expenditures. Such business expenses shall be paid to Employee by Company on or about the fifteenth (15th) day of that month.

9. <u>Vacations, Holidays, and Sick Time</u>:

    a. Employee shall be entitled to fourteen (14) working days paid vacation to be taken within the next 365 calendar days. Vacation time shall be earned and shall accrue to the benefit of Employee on the anniversary date of Employee's employment. Vacation shall be taken at a time mutually convenient to Company and Employee, and shall be upon at least thirty (30) days written notice by Employee to Company. Company and Employee shall be reasonable with each other in the scheduling of vacation

Exhibit 26 Page 489

time, and neither shall be arbitrary or capricious in such scheduling. Vacation time not taken within 365 days of accrual shall be paid to Employee by Employer as bonus.

    b. Employee shall be entitled to fourteen (14) sick or personal days per year in addition to vacation time.

    c. At a minimum, Employee shall be entitled to the following paid holidays:

1. New Year's day
2. Day on Good Friday
3. Memorial Day
4. July 4th official government holiday
5. Labor Day
6. Thanksgiving
7. Day on Christmas Eve
8. Christmas Day

In addition, Employee shall be entitled to any religious holiday of Employee's religion, not exceeding one day, which is normally recognized and celebrated by that religion as a day off work.

10. <u>Insurance Benefits</u>:

    a. Company shall provide to Employee and his family, through a Group Medical Insurance Plan, or otherwise, at Company's sole expense, a policy of medical insurance. Employee shall be responsible for any co-payments to health care providers as required by the insurance policy at Employee's sole expense.

11. <u>Disclosure</u>:

    a. Employee agrees to make available to Company all knowledge possessed by him relating to any methods, developments, invention, and/or improvements, which concern in any way the business of Company, whether acquired by Employee before or during the term of his employment hereunder, provided that nothing herein shall be construed as requiring any disclosure where the method, development, invention and/or improvement is lawfully protected from disclosure as a trade secret of a third party or by any other lawful bar to such disclosure.

    b. Any ideas, methods, developments, inventions and/or improvements which Employee may conceive of or make along the lines of the business of Company, while in Company's employ, shall be and remain the property of Company. Employee agrees to promptly communicate and disclose all such ideas, methods, developments, inventions and/or improvements to Company and to execute and deliver to Company any instruments deemed necessary by Company to effect the disclosure and assignment thereof to it.

Exhibit 26 Page 490

  c. Employee agrees to receive and maintain in confidence and not to disclose to any third party all ideas, methods, developments, client lists, inventions, improvements and business plans and information of Company of which Employee becomes aware during his employment hereunder or which Employee conceives or makes, whether solely or jointly, while in Company's employ.

  d. Confidentiality: Employee acknowledges that during the course of employment with Company, Employee will have access to certain information that is of great value to Company, and which is not readily available to outsiders. Employee understands that such information, including but not limited to trade secrets, clients lists, customer lists, designs, drawings, plans, documents, prototypes, manufacturing techniques, equipment, sales and clilent or customer information, pricing and purchasing plans, business and financial information, work in progress, products, files, reports, memoranda, computer software or programming and budgets or other financial plans or information regarding Company and its business, property and affairs, employees, clients, customers, vendors or suppliers, proposals and projections, included but not limited to long-range plans for Company's growth, expansion, development, and continued fostering of its relationships with its employees, clients, customers, vendors or suppliers (hereinafter referred to as "Confidential Information"), is protected, confidential and proprietary information of Company.

12. Covenant of Confidentiality: Employee agrees to hold in the strictest confidence, and agrees not to publish or disclose to any other person or entity at any time, either during or after employment, any Confidential Information of Company without the prior written consent of Company.

13. Use of Confidential Information: Employee agrees not to use any such Confidential Information to compete with Company in any way, either directly or indirectly, and will not otherwise use or misuse any such Confidential Information for Employee's own benefit, or to the detriment of Company.

14. Delivery of Confidential Information: Employee further agrees to promptly deliver to Company, upon request or upon termination from employment, all correspondence, notes, computer disks, computer data, books, records, memoranda, worksheets, drawings, reports, and other written or computer information or data of any kind, relating to or arising out of business, products, practices, or techniques of Company. It is understood that all work product of Employee while in Company's employ belongs to and is proprietary to Company, and Employee shall not be entitled to take or use any such information, in any form whatsoever for personal use or otherwise.

15. Non-Solicitation of Employees, Clients, Customers, Vendors or Suppliers:

Exhibit 26 Page 491

a. Employee agrees that during the term of his employment under this Agreement and after termination thereof, regardless of however such termination shall be brought about, he will not contact any employee, vendor, client, customer or supplier of Company or any of its affiliates regarding any matter which is likely to disrupt employer's good employment or business relationship with such employees, vendors, clients, customers or suppliers. Further, Employee shall make no statement, whether true, false, deceptive or misleading, to any employee, vendor, client, customer or supplier of Company which is likely to cause such disruption.

b. Employee agrees that for a period of two (2) years after Employee leaves the employ of Company, he will not, directly or indirectly, or through others, approach or solicit any employee of Company for purposes of causing such employee to leave the employ of Company. During said two (2) year period Employee shall not, directly or indirectly, or through others, hire, employ, or contract with any employee or former employee of Company.

c. Employee agrees that during his period of employ with Company he will not authorize his name to be used by any person, partnership, corporation or other business entity without Company's written consent.

16. Covenants Not to Compete:

a. Employee covenants and agrees that for a period of two (2) years from and after the termination of Employee's employment with Company, regardless of however such termination shall be brought about, he will not either individually, or on behalf of any other person, firm, company or entity as an employee, agent, contractor, owner, partner, shareholder, or joint venturer, which directly or indirectly, solicit or perform any services with regard to any client, customer, vendor or supplier of Company, or which has been a client, customer, vendor or supplier of Company in the two (2) years preceeding Employee's termination, or which Company is actively engaged in soliciting as such while Employee is in the employ of Company.

b. Employee covenants and agrees that for a period of two (2) years from and after the termination of Employee's employment with Company, regardless of however such termination shall be brought about, he will not directly or indirectly or through any scheme, trick or device or otherwise, become an employee of any client, customer, vendor or supplier of Company, or which has been a client, customer, vendor or supplier of Company in the two (2) years preceeding Employee's termination, or which Company is actively engaged in soliciting as such while Employee is in the employ of Company.

c. Employee covenants and agrees that for a period of two (2) years from and after the termination of Employee's employment with Company, regardless of however such termination shall be brought about, he will not directly or indirectly or through any scheme, trick or device or otherwise, become an owner or principal in any business

Exhibit 26 Page 492

which does business with any client, customer, vendor or supplier of Company, or which has been a client, customer, vendor or supplier of Company in the two (2) years preceeding Employee's termination, or which Company is actively engaged in soliciting as such while Employee is in the employ of Company.

17. <u>Definition of "Client, Customer, Vendor, or Supplier"</u>: The term "client, customer, vendor or supplier" as used herein singularly and conjunctively, shall mean and include any person, firm, corporation or entity of whatever description, for whom Company shall have performed or been engaged to perform sales or services, or for whom such client, customer, vendor or supplier has been engaged to perform any sales or services to Company, at any time within the two (2) year period preceding the date employment is terminated.

18. <u>Definition of "Services"</u>: The term "services" shall mean and include all services of the nature and type customarily offered and furnished by Company or by the client, customer, vendor or supplier.

19. <u>Consideration for Covenants</u>: It is agreed by and between Company and Employee that the confidentiality agreement and covenant not to compete set forth herein are necessary for the protection of the business of Company, and that as consideration for Employee's agreement thereto, Employee will receive access to Company's confidential business information, as well as special training in Company's manner of doing business. Were it not for this agreement, Company would not release such confidential information to Employee.

20. <u>Liquidated Damages Clause</u>: The parties hereto recognize that it would be difficult if not impossible to formulate and offer proof as to the damages that will be sustained by Company upon breach of the covenants and agreements above expressed, and in recognition thereof the parities hereby agree that a fair and reasonable stipulation of the damages that will be suffered by Company as to each breach of the Covenant herein made binding upon employee, are as hereinafter described, and therefore Employee hereby agrees:

If Employee should breach any covenant of confidentiality or competition heretofore expressed, Employee shall be obligated to pay to Company, as to each such vendor, client or customer regarding whom a breach a occurred, as liquidated damages for breach of the covenants herein expressed, an amount equal to the greater of the following amounts:

a. the aggregate gross billings to or from each such client, customer, vendor or supplier for sales or services performed by Company or for Company by such client, customer, vendor or supplier during the twelve (12) months immediately preceding the month in which termination of employment occurred; or

b. one half (1/2) of the aggregate gross billings of Company to such

Exhibit 26 Page 493

client, customer, vendor or supplier for sales or services performed by Company for such client, customer, vendor or supplier, and net profit to Company for all sales or services to such client, customer, vendor or supplier during the twenty-four (24) months immediately preceding the month in which termination of employment occurred; or

    c. the aggregate gross billings of Employee to or from each such client, customer, vendor or supplier for sales or services performed by Employee or for Employee by such client, customer, vendor or supplier during the twenty-four (24) months immediately after the date of Employee's termination of employment.

    d. Such liquidated damages shall be due and payable when written demand for same has been made by Company. If not paid in full within thirty (30) days after such demand is made, it is hereby agreed that all amounts due Company shall bear interest at the maximum legal rate permitted by law from the date any such demand for payment has been made until all amounts due Company hereunder have been paid in full.

    e. Each breach of the Covenants and agreements herein expressed shall give rise to a separate and independent cause of action.

    f. Company shall be authorized to deduct any amounts owing to it hereunder from any salary or other payments owing by Company to Employee.

    g. This damage provision shall not be construed as precluding Company, at its sole option, from seeking any type of injunctive relief for enforcement of the covenants herein contained, or any other type of relief which Company deems advisable or appropriate.

21. **Right to Injunction**: Company and Employee agree that Company will be irreparably damaged in the event of a breach of any of Employee's covenants or agreements relating to "Disclosure", "Confidentiality", or "Competition" above. Accordingly, Employee hereby agrees that such covenants and agreements shall be specifically enforceable and that, in addition to any other remedies, any breach or threatened breach thereof may be enjoined by any court of competent jurisdiction. It is further agreed that any breach or evasion of any of the terms of this Agreement by either party hereto will result in immediate and irreparable injury to the other party and will authorize recourse to injunction and/or specific performance as well as to all other legal or equitable remedies to which such injured party may be entitled.

22. **Benefit of Agreement**: This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective legal representatives, administrators, executors, successors, subsidiaries and affiliates, partnerships, corporations, and other business entities, and upon other persons or business entities with whom the parties hereafter have a business affiliation.

Exhibit 26 Page 494

23. <u>Litigation Expenses</u>: If Company is forced to seek the services of an attorney concerning the interpretation of this Agreement, or any provision of this Agreement, or the enforcement of this Agreement, or any portion of this Agreement, by any action at law or equity, Company shall be entitled to reasonable attorneys fees, costs and necessary disbursements and shall be due and payable by Employee to Company within fourteen (14) days after invoice date. Any legal action to recover attorneys fees provided herein may be brought within any legal action brought to enforce or interpret the terms of this Agreement, or in a separate action brought solely for payment of attorneys fees and costs.

24. <u>Applicable Law; Jurisdiction; Captions; Time of Essence</u>: It is stipulated by Company and Employee that this Agreement is entered into in the State of California, and shall be governed and construed in accordance with the law of the State of California. Jurisdiction is deemed by Company and Employee to be the appropriate court of jurisdiction in Orange County, California.

25. <u>Captions</u>: The captions at the beginning of each paragraph of this Agreement are solely for the convenience of the parties and are not part of this Agreement. Time is of the essence in this Agreement.

26. <u>Waiver</u>: The waiver by either party of a breach of a provision of this Agreement shall not operate or be construed as a waiver of a subsequent breach thereof.

27. <u>Severability</u>: Each provision of this Agreement is intended to be severable from the others so that if any provision or term hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remaining provisions and terms hereof.

28. <u>Assignment</u>: This Agreement and all rights hereunder are personal to Employee and shall not be assignable, and any purported assignment thereof shall not be valid and binding upon Company. Company may assign all of its rights hereunder to any person, firm or corporation succeeding to the business of Company.

29. <u>Modification of Agreement</u>: This Agreement may be modified only by a writing signed by the parties, or their respective authorized agents. Any modification of this Agreement will be effective only if it is in writing and signed by the party to be charged.

30. <u>Survival of Agreements and Covenants</u>: It is the intent of the parties to this Agreement that the confidentiality agreements and covenants not to compete will survive the termination of Employee's employment with Company unless the contrary is set forth in writing and signed by Company and Employee.

31. <u>Scope of Validity</u>: This Agreement and all covenants herein shall be valid in, and shall extend worldwide, and not withstanding any provision of this Agreement

Exhibit 26 Page 495

regarding Jurisdiction, may at the sole option of Company, be enforced by Company in any jurisdiction where any violation takes place.

32. <u>No Conflicts</u>: Employee represents and warrants to Company that he is not now under any obligation of a contractual or other nature to any person, firm or entity which is inconsistent or in conflict with this Agreement, or which would prevent, limit, impair, or conflict with in any way, the performance by him of his obligations and covenants made hereunder.

33. <u>Entire Agreement</u>: The execution of this Agreement by Company and Employee alike is free and voluntary. No inducement to enter into this Agreement except as expressly stated herein, is made by either Company or Employee. This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto and contains all of the covenants and agreements
between them. Each party acknowledges that no representation,
inducement, promise or agreement, orally or otherwise, has been made by any party or anyone acting on behalf of any party which is not embodied herein.

WHEREFORE, this Agreement is executed by the parties, in duplicate original, on the dates hereinbelow written.

NOTE: THIS IS A LEGAL DOCUMENT. DO NOT SIGN IT UNLESS
YOU HAVE READ AND UNDERSTOOD THE ENTIRE AGREEMENT, AND AGREE WITH ALL OF THE PROVISIONS HEREIN.

Dated: April 5, 2016

Dated: April 5, 2016

BEVERLY PROTON CENTER, LLC
AKA, Los Angeles County
Proton Therapy LLC

CHARLES C LIU

By: *[signature]*

By: *[signature]*

Exhibit 26 Page 496