GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov
JACOB A. REGENSTREIF (Cal. Bar No. 234734)
Email: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy Jane Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Southern Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES C. LIU;<br>XIN WANG a/k/a LISA WANG;<br>PACIFIC PROTON THERAPY REGIONAL CENTER, LLC;<br>PACIFIC PROTON EB-5 FUND, LLC; and BEVERLY PROTON CENTER, LLC f/k/a LOS ANGELES COUNTY PROTON THERAPY, LLC,<br><br>Defendants. | Case No. SACV16-00974-CJC (AGRx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT WANG'S MOTION TO DISMISS CLAIMS AGAINST HER BASED ON EXTRATERRITORIAL CONDUCT**<br><br>Date: July 12, 2021<br>Time: 1:30 p.m.<br>Ctrm: 9B<br>Judge: Hon. Cormac J. Carney |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................1

II. ARGUMENT................................................................................................2

    A. The "Conduct-or-Effects" Test in Dodd-Frank Section 929P(b) Applies and Is Satisfied Here ............................................................2

    B. Wang's Contention that Section 929P(b) "Merely Confers Jurisdiction" and Does Not Abrogate *Morrison* Is Wrong ..................4

    C. Even Under *Morrison*'s Superseded Standard, Wang's Fraud Related to Domestic Offers and Sales of Securities ............................6

III. CONCLUSION.............................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) ............................................................................... 8

*Aifang v. Velocity VII Ltd. P'ship*,
  2015 WL 12747911 (C.D. Cal. Aug. 13, 2015) ................................................ 9

*Bennett v. Spear*,
  520 U.S. 154 (1997) .......................................................................................... 5

*INS v. Nat'l Ctr. For Immigrants' Rights, Inc.*,
  502 U.S. 183 (1991) .......................................................................................... 5

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010) .............................................................................. 2, 6, 7, 9

*SEC v. Fujinaga*,
  696 Fed. Appx. 203 (9th Cir. 2017) .................................................................. 8

*SEC v. Levine*,
  462 Fed. Appx. 717 (9th Cir. 2011) .................................................................. 9

*SEC v. Liu*,
  262 F. Supp. 2d 957 (C.D. Cal. 2017) .............................................................. 4

*SEC v. Scoville*,
  913 F.3d 1204 (10th Cir. 2019) ................................................................ 4, 6, 7

*SEC v. Tourre*,
  2014 WL 61864 (S.D.N.Y. Jan. 7, 2014) ......................................................... 7

*SEC v. Traffic Monsoon, LLC*,
  245 F. Supp. 3d 1275 (D. Utah 2017) ........................................................... 6, 9

*Stone v. INS*,
  514 U. S. 386 (1995) ......................................................................................... 5

*Stoyas v. Toshiba Corp.*,
  896 F.3d 933 (9th Cir. 2018) ............................................................................. 8

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ............................................................................................ 5

*United States v. Coffman*,
  574 Fed. Appx. 541 (6th Cir. 2014) .................................................................. 8

*United States v. Georgiou*,
  777 F.3d 125 (3d Cir. 2015) .............................................................................. 8

*United States v. Sumeru*,
  449 Fed. Appx. 617 (9th Cir. 2011) .................................................................. 7

**FEDERAL STATUTES**

**Securties Act of 1933**

Section 17(a)
  [15 U.S.C. § 77q(a)] ...................................................................................2, 7

Section 17(a)(2)
  [15 U.S.C. § 77q(a)(2)] ....................................................................................7

Section 2(a)(3)
  [15 U.S.C. § 77b(a)(3)] ....................................................................................7

Section 22(c)
  [15 U.S.C. § 77v(c)] .........................................................................................2

**Securities Exchange Act of 1934**

Section 10(b)(5)
  [15 U.S.C. § 78j(b)(5)] .....................................................................................7

**OTHER AUTHORITIES**

H.R. REP. NO. 111-687, pt. 1, at 80 (Dec. 16, 2010) ..........................................3

Section 929P(b) of the Dodd-Frank ........................................................1, 2, 4, 5

Section 929Y(a) of the Dodd-Frank ...................................................................5

## I. INTRODUCTION

Defendant Xin a/k/a Lisa Wang:

- fraudulently offered and sold limited partnership interests in a Delaware limited liability company;
- that Delaware investment fund was created – purportedly – for the purpose of financing a proton cancer therapy clinic in Montebello, California, to be operated by California limited liability companies, and with corporate offices in Laguna Niguel, California; and
- that California medical center was marketed by defendants as a commercial enterprise that would create "over 4,500 permanent, full-time jobs" in the United States and yield a domestic "economic impact of nearly $728 million per year once completed," thus enabling investors to obtain permanent residency in the United States through the EB-5 Immigrant Investor Program administered by the USCIS.

In contravention of the investment offering's POM, Wang:

- misappropriated millions in investor funds by means of corporate and personal bank accounts located in the United States,
- all while living in Irvine and Laguna Niguel since 2008.

Accordingly, this case does not require the extraterritorial application of the federal securities laws because Wang's misconduct satisfies the conduct and the effects test codified at Section 929P(b) of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376, 1864-65 (2010) ("Dodd-Frank Act"). And even if this Court were to apply *Morrison*'s superseded standard, there is no impermissible extraterritoriality here since Wang's fraud involved the domestic offer and sale of securities. Her last ditch effort to avoid any legal rebuke for her securities law violations by invoking *Morrison* has no merit.

///

///

## II. ARGUMENT

Wang's argument that she did not participate in the offer or sale of securities in the United States, and thus the securities laws do not apply to her misconduct under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), should be rejected by this Court. She cannot evade liability merely because her fraud touched upon a foreign country. First, the SEC is authorized under Section 929P(b) of the Dodd-Frank Act to bring enforcement actions when either significant conduct by the defendant occurred in the United States or where foreseeable substantial effects of the violation were felt here. Liu and Wang took significant steps within the United States to defraud investors, and the EB-5 investments they sold were designed to attract foreign capital to build a cancer treatment center in the United States and to create U.S. jobs. Second, if this Court were to apply the superseded extraterritoriality test from *Morrison*, Wang's motion would still be denied because this case implicates a domestic offer and sale of securities.

### A. The "Conduct-or-Effects" Test in Dodd-Frank Section 929P(b) Applies and Is Satisfied Here

Wang is incorrect that *Morrison*'s "domestic transaction" test is the operative standard. Following the Dodd-Frank amendments to the Securities Act enacted in July 2010 – legislative action taken in direct response to the *Morrison* decision – Section 17(a) of the Securities Act now applies when the SEC's allegations concern: "(1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States." 15 U.S.C. § 77v(c); Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376, 1864-65 (2010). The amendment reinstates the disjunctive "conduct test" and "effects test" that governed before *Morrison*, giving the SEC authority to pursue violations where either significant conduct by the defendant

occurred in the United States, or foreseeable substantial effects of the violation were felt here. H.R. REP. NO. 111-687, pt. 1, at 80 (Dec. 16, 2010) ("this section would codify the SEC's authority to bring proceedings under both the conduct and the effects tests developed by the courts regardless of the jurisdiction of the proceedings."). The SEC's action against Wang meets either part of the disjunctive test.

While living and working in the United States, Wang offered and sold limited-partnership interests in a Delaware limited liability company to finance a project physically located in California that was related to an immigration program run by the United States government. Dkt. No. 7-4 at p. 35 (POM at 18); Dkt. No. 7-4 at p. 23 (POM at 6); Dkt. No. 7 at ¶¶ 9-10; Leung Decl. at ¶ 3, Ex. 1 (2/25/21 Wang Depo. Tr.) at 77:3-80:12; Dkt. No. 163 at p. 25 (Wang background questionnaire). Investors in the PPEB5 Fund were required by defendants to sign a subscription agreement governed by U.S. and Delaware law that made express reference to compliance "with the securities laws of the United States of America," and that vested California courts with jurisdiction over any related disputes. Dkt. No. 7-3 at p. 44 (PPEB5 Fund subscription agreement). And both Liu and Wang misappropriated investor funds through illicit transfers from the corporate defendants' U.S. bank accounts to their personal U.S. bank accounts. Dkt. No. 320 at ¶ 3, Ex. 1 (Irwin Report) at ¶¶ 43-50, Ex. 7.

Most significantly, Wang's assertion that she assiduously avoided conducting any Pacific Proton business while in the United States, and that her actions in marketing and selling the fraudulent EB-5 investments at issue occurred without exception in China, *see* Mot. at 2-3, not only strains credulity, it's refuted by Wang's own testimony. When confronted with the fact that she had continuously resided in Orange County since 2008 while ostensibly engaged in the same "very hard work" that entitled her to millions in compensation from Beverly Proton and Pacific Proton, Wang insisted that she "had never stopped working." She explained that while living in California, her "way of doing things" was to accomplish her Pacific Proton marketing work over the phone. Leung Decl. at ¶ 3, Ex. 1 (2/25/21 Wang Depo. Tr.) at 77:18-80:12.

More than this, a substantial part of defendants' fraudulent scheme was to bring investors and potential investors on a tour of the Montebello project site in the United States to falsely convey the façade of developmental progress. *Id.* at ¶ 4, Ex. 2 (Novodor Depo. Tr.) at 181:3-11, 182:19-183:20, 184:15-185:11 (Liu "wanted to personally show them around, go meet the hospital, look at his nice office up in the other building. And, you know, he gave them the royal treatment."); ¶ 5, Ex. 3 (Dr. Thropay Depo. Tr.) at 107:3-16, 117:20-118:22. As Beverly Proton's putative vice president of marketing, Wang participated in these efforts and met with investors in the U.S. as well. *Id.*

As to the second part of the test, defendants' offer and sale of securities had a foreseeable substantial effect within the United States. An EB-5 investment is designed to attract foreign capital to the United States and to create jobs. Those who invest in the EB-5 program do so, in part, to qualify for U.S. residency and perhaps ultimately citizenship. *SEC v. Liu*, 262 F. Supp. 2d 957, 962 (C.D. Cal. 2017). The very purpose of the EB-5 program is to produce a "substantial effect" in the United States, which is sufficient to satisfy the "conduct" *and* "effects" test. *See SEC v. Scoville*, 913 F.3d 1204, 1219 (10th Cir. 2019) (conduct and effects tests each satisfied where defendant created the entity offering investments in the United States, and created and promoted the investments over the internet while residing in the United States).

Because Wang's fraudulent securities offering involved significant steps taken within the United States, and because that offering had a substantial effect in the United States, her misconduct is squarely within the reach of the federal securities laws' antifraud provisions.

### B. Wang's Contention that Section 929P(b) "Merely Confers Jurisdiction" and Does Not Abrogate *Morrison* Is Wrong

Wang waves away the import of Section 929P(b) in a footnote, asserting that "*Morrison* was a merits-based ruling about the scope (and therefore prohibitions) of the securities laws, and section 929P(b) is a procedural law that expands (already possessed, as *Morrison* held) federal court subject matter jurisdiction." Mot. at p. 5,

fn. 1. However, having acknowledged that the securities laws' existing jurisdictional provisions already afforded broad subject-matter jurisdiction prior to Dodd-Frank, Wang erroneously invites this Court to treat Section 929P(b) as a nullity.

Her construction renders Section 929P(b) a redundant grant of jurisdiction, thus violating "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). That "cardinal principle has particularly strong force where, as here, the statutory language is not a stray word or phrase, but rather an entire provision enacted as a deliberate and express amendment to an existing statutory scheme. *See id.*; *Bennett v. Spear*, 520 U.S. 154, 173 (1997) (refusing to "emasculate an entire section"); *Stone v. INS*, 514 U. S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

Moreover, Congress's intent that Section 929P(b) extends the SEC's extraterritorial authority to pursue violations of the antifraud provisions of the securities laws is evident for multiple reasons. First, Section 929P(b) is included under a heading entitled "STRENGTHENING ENFORCEMENT BY THE COMMISSION." *See generally INS v. Nat'l Ctr. For Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a . . . section can aid in resolving an ambiguity in the legislation's text."). Second, Section 929Y(a) of Dodd-Frank required the Commission to "conduct a study to determine the extent to which private rights of action under the antifraud provisions . . . should be extended" extraterritorially using the same conduct-or-effects test set forth in Section 929P(b). This provision's exclusive focus on private actions makes no sense unless Congress believed that it had already "extended" the "antifraud provisions" in actions brought by the Commission. Third, amendments to the antifraud provisions of the Securities Act and the Investment Advisers Act, which similarly expressly adopted the conduct-or-effects test as a requirement of subject-matter jurisdiction, reference the specific antifraud provisions of those statutes. Taken

together, these amended provisions indicate that Congress acted deliberately to ensure that the SEC's various antifraud enforcement authorities would reach transnational frauds that satisfy the conduct-or-effects test. *See Scoville*, 913 F.3d at 1218) ("we conclude that Congress has 'affirmatively and unmistakably' indicated that the antifraud provisions of the federal securities acts apply extraterritorially when the statutory conduct-and-effects test is met").

Consequently, "[n]otwithstanding the placement of the Dodd-Frank amendments in the jurisdictional provisions of the securities act, given the context and historical background surrounding Congress's enactment of those amendments, it is clear … that Congress undoubtedly intended that the substantive antifraud provisions should apply extraterritorially when the statutory conducts-and-effects test is satisfied." *Id.* (quoting *SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1292 (D. Utah 2017) ("Although courts generally presume that Congress is familiar with the precedents of the Supreme Court when it enacts legislation, the close proximity between the date when *Morrison* was issued and the date when the language of Dodd-Frank was finalized, greatly undermines this presumption. It strains credulity to assume that legislators read *Morrison* on the last day that they met to negotiate the final version of a massive 850-page omnibus bill designed to overhaul large swaths of the United States financial regulations and consciously chose to enact Section 929P(b) against the background of the fundamental shift in securities law brought about by *Morrison*. Given this timing, the more reasonable assumption is that *Morrison* was issued too late in the legislative process to reasonably permit Congress to react to it.")).

C. **Even Under *Morrison*'s Superseded Standard, Wang's Fraud Related to Domestic Offers and Sales of Securities**

The *Morrison* decision is not the escape hatch that Wang wishes it were in any event. Even if this Court were to apply *Morrison*'s superseded standard, Wang's motion should be denied because she obtained money by means of material

1 misstatements and omissions related to domestic offers and sales of U.S.-based
2 securities. 561 U.S. at 268. *Morrison* concerned Exchange Act Section 10(b)(5), in
3 contrast, Wang has been found liable for violating Securities Act Section 17(a)(2).
4 Section 17(a)(2) differs from Section 10(b)(5) – whereas Section 10(b)(5) requires a
5 sale, Section 17(a)(2) also covers offers. Assuming *Morrison* applies to Section 17(a)
6 claims, there is no impermissible extraterritoriality where there is a domestic "offer or
7 sale of any securities." 15 U.S.C. § 77q(a); *see id.* § 77b(a)(3) (defining "offer" to
8 "include every attempt or offer to dispose of, or solicitation of an offer to buy, a
9 security or interest in a security, for value").

10 Much of the same evidence establishing that defendants engaged in significant
11 conduct in the United States also points to a domestic offer and sale. Again, Wang
12 made her home in California from 2008 until spring 2016, conceded under oath that she
13 worked to market the EB-5 offering from the United States, and most significantly,
14 participated in meetings with investors in California. When individuals make offers
15 from the United States and meet with investors in country, courts have deemed offers to
16 be domestic. *United States v. Sumeru*, 449 Fed. Appx. 617, 621 (9th Cir. 2011)
17 (defendants made numerous domestic offers where they met with potential investors in
18 the United States and solicited investors through U.S. mail); *SEC v. Tourre*, 2014 WL
19 61864, at *7-8 (S.D.N.Y. Jan. 7, 2014) (evidence of domestic offers where defendant
20 emailed and called potential investors from New York).

21 Moreover, the Pacific Proton offering was marketed on the corporate
22 defendants' website, Leung Decl. at ¶ 6, Ex. 4 (11/10/16 Liu Depo. Tr.) at 148:22-
23 149:1; Dkt. No. 7-7 at pp. 15-25 (Pacific Proton website), a website housed on
24 servers operated in the United States. *Id.* at ¶ 6, Ex. 4 (11/10/16 Liu Depo. Tr.) at
25 151:22-152:3; ¶ 7, Ex. 5 (web hosting agreement). These facts separately establish a
26 domestic offer. *See Scoville*, 913 F. 3d at 1227 (concurring op.) (applying Ninth
27 Circuit "irrevocable liability" and finding domestic offer – "Traffic Monsoon sold
28 AdPacks via the internet, and the record further demonstrates that Traffic Monsoon

7

made its sales through computer servers based solely in the United States").

Finally, there was also a domestic sale because both investors and defendants incurred irrevocable liability in the United States. *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 948 (9th Cir. 2018) (a domestic transaction occurs when "the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security."); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67-68 (2d Cir. 2012); *United States v. Georgiou*, 777 F.3d 125, 135-36 (3d Cir. 2015).

To complete their purchase of the limited-partnership interests, investors wired funds to U.S. bank accounts and delivered a signed subscription agreement to PPEB5 Fund's office in Laguna Niguel, California. Dkt. No. 7-3 at pp. 40-46 (PPEB5 Fund subscription agreement); Dkt. No. 7-4 at pp. 45-46 (POM, "Subscription Procedure and Plan of Distribution"); Leung Decl. at ¶ 8, Ex. 6 (3/23/16 Liu Inv. Tr.) at 77:3-20; Dkt. No. 6 at p. 12 (escrow account in U.S.); Dkt. No. 163 at pp. 54-55 (escrow agent in U.S.); *see SEC v. Fujinaga*, 696 Fed. Appx. 203, 206 (9th Cir. 2017) (holding that sales of securities were "'made' in the United States" where investors wired funds to defendants' U.S. bank account and forwarded paperwork to their Nevada offices); *United States v. Coffman*, 574 Fed. Appx. 541, 557 (6th Cir. 2014) (transactions were domestic where "investors wired and mailed money to [defendant] in the United States").

For their part, defendants became bound to deliver the securities when the U.S.-based escrow agent transferred investor funds to PPEB5 Fund's U.S. bank account upon USCIS's approval of the investor's visa application. Leung Decl. at ¶ 8, Ex. 6 (3/23/16 Liu Inv. Tr.) at 101:9-103:24; Dkt. No. 7 at p. 151 (11/19/10 Pacific Proton ltr. to USCIS); Dkt. No. 37-3 at p. 2 (CA secretary of state record re: corporate defendants' business addresses). The funds could be returned only if USCIS were to deny the investor's application, Dkt. No. 7-4 at p. 24 (POM at 7), but not for any other reason. Dkt. No. 7 at p. 152 (11/19/10 Pacific Proton ltr. to USCIS);

*see SEC v. Levine*, 462 Fed. Appx. 717, 719 (9th Cir. 2011) (securities transactions were domestic where "the actual sales closed in Nevada, when [the defendant] received completed stock purchase agreements and payments"); *Traffic Monsoon*, 245 F. Supp. 3d at 1294 (holding, in the alternative, that the Morrison test was satisfied where the "seller of these securities, a Utah LLC, incurred irrevocable liability in the United States to deliver this security").

These facts contrast sharply with those in *Morrison*, where the investors were Australian citizens who purchased shares on an Australian exchange and where "all aspects of the purchases complained of . . . occurred outside the United States." 561 U.S. at 273; *see Aifang v. Velocity VII Ltd. P'ship*, 2015 WL 12747911, at *4 (C.D. Cal. Aug. 13, 2015) (distinguishing Morrison and holding that "domestic transaction" standard was met where the general partner in an EB-5 offering "was a domestic issuer who offered security interests in a California partnership whose purpose was to manage a California property" and "myriad components of the investment agreements [we]re causally linked to California" including the location of the "the attorney trust account, where the investment funds were held until there was approval for the visas"). The transactions here were domestic even under *Morrison*, and the SEC's claims against Wang therefore do not require extraterritorial application of the securities laws.

### III. CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court deny defendant Wang's motion in its entirety.

Dated:  June 21, 2021

Respectfully submitted,

*/s/ Gary Y. Leung*
Gary Y. Leung
Jacob A. Regenstreif
Attorneys for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On June 21, 2021, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT WANG'S MOTION TO DISMISS CLAIMS AGAINST HER BASED ON EXTRATERRITORIAL CONDUCT** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 21, 2021            */s/ Gary Y. Leung*
                               GARY Y. LEUNG

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*SEC v. Liu et al.*
United States District Court—Central District of California
Case No. SACV16-00974-CJC (AGRx)

**SERVICE LIST**

*Counsel for Defendants Charles C. Liu and Xin Wang a/k/a Lisa Wang*:

Hervé Gouraige, Esq. (by CM/ECF)
Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Email: hgouraige@sillscummis.com

Lawrence B. Steinberg, Esq. (by CM/ECF)
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: LSteinberg@buchalter.com

*Defendants Pacific Proton Therapy Regional Center, LLC and Beverly Proton Center, LLC:*

(*on counsel for Charles C. Liu, the controlling shareholder of each*)
    Hervé Gouraige, Esq. (by CM/ECF)
    Sills Cummis & Gross P.C.
    The Legal Center
    One Riverfront Plaza
    Newark, New Jersey 07102
    Email: hgouraige@sillscummis.com

    Lawrence B. Steinberg, Esq. (by CM/ECF)
    Buchalter Nemer, P.C.
    1000 Wilshire Boulevard, Suite 1500
    Los Angeles, CA 90017-1730
    Email: LSteinberg@buchalter.com